# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN CHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MISSFRESH LIMITED, ZHENG XU, JUN WANG, YUAN SUN, ZHAOHUI LI, COLLEEN A. DE VRIES, HANSONG ZHU, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, AMTD GLOBAL MARKETS LIMITED, ICBC INTERNATIONAL SECURITIES LIMITED, NEEDHAM & COMPANY, LLC, CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, ABCI SECURITIES COMPANY LIMITED, GF SECURITIES (HONG KONG) BROKERAGE LIMITED, FUTU INC., TIGER BROKERS (NZ) LIMITED, and COGENCY GLOBAL, INC.,<br><br>Defendants. | Case No. 1:22-cv-09836-JSR |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT..................................................................................... 1

II.  FACTS........................................................................................................................ 4

    A.   The IPO.............................................................................................................. 4

    B.   The Offering Documents Materially Overstated Sales of Products Through Online Platforms and Net Revenue and Failed to Disclose the Unsustainability of Those Revenues .......................................................................................................... 4

    C.   The Offering Documents Omitted Material Internal Control Weakness................. 5

III. ARGUMENT ............................................................................................................. 6

    A.   The Complaint Meets the "Relatively Minimal" Burden of Alleging the Offering Documents Contained Materially False Statements........................................... 6

        i.    The Registration Statement Materially Overstated Sales of Products Through Online Platforms and Net Revenue...................................... 7

        ii.   The Offering Documents Omitted Material Internal Control Weakness...... 14

        iii.  The Offering Documents Failed to Disclose the Company's Unsustainability .................................................................................................. 17

    B.   Defendants' Negative Causation Argument Fails....................................... 21

    C.   Plaintiffs Have Sufficiently Pled Their Section 12(A)(2) Claim .............................. 25

    D.   The Complaint Adequately Pleads Control Person Liability Under Section 15.... 25

IV.  CONCLUSION......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ........................................................................................... 25

*Adair v. Kay Kotts Assocs. Inc.*,
  1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) ............................................... 21, 22, 24

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ..................................................................................................... 1

*Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*,
  2020 WL 3318029 (S.D.N.Y. June 18, 2020) ............................................................ 17

*Asay v. Pinduoduo Inc.*,
  2021 WL 3871269 (2d Cir. Aug. 31, 2021) ............................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 6

*Bauer v. Prudential Fin., Inc.*,
  2010 WL 2710443 (D.N.J. Jun. 29, 2010) ................................................................ 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 6

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
  2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .............................................................. 22

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020) ....................................................................... 11

*City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011) ....................................................................... 19

*Conn. Bar Ass'n v. United States*,
  620 F.3d 81 (2d Cir. 2010) ........................................................................................ 25

*Dura Pharms. Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................... 21

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
  2015 WL 685159 (S.D.N.Y. Feb. 18, 2015) ............................................................. 22

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..................................................................... 8, 9

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ........................................................ 13, 19, 23

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000) ...................................................................................... 12

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
  422 F. Supp. 3d 821 (S.D.N.Y. 2019) .................................................................. 16, 17

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ................................................................................. 1, 6, 18, 25

*Hildes v. Arthur Andersen LLP*,
  734 F.3d 854 (9th Cir. 2013) ...................................................................................... 21

*Horowitz v. Sunlands Tech. Grp.*,
  2021 WL 1224517 (E.D.N.Y. Mar. 31, 2021) ......................................................... 16

*Hutchison v. Deutsche Bank Sec. Inc.*,
  647 F.3d 479 (2d Cir. 2011) ......................................................................................... 8

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) .......................................................................... 7

*In re BioScrip, Inc. Sec. Litig.*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015) .......................................................................... 11

*In re BISYS Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) ........................................................................... 9

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) .......................................................... 16

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
  665 F. Supp. 2d 404 (S.D.N.Y. 2009) ........................................................................ 21

*In re CPI Card Grp. Inc. Sec. Litig.*,
  2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) ........................................................... 20

*In re Duke Energy Corp. Sec. Litig.*,
  282 F. Supp. 2d 158 (S.D.N.Y. 2003) ..................................................................... 8, 12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013)................................................................................ 24, 25

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ..................................................................................................... 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   643 F. Supp. 2d 562 (S.D.N.Y. 2009) ................................................................................... 13

*In re Hain Celestial Grp., Inc. Sec. Litig.*,
   20 F.4th 131 (2d Cir. 2021)..................................................................................................... 19

*In re Insys Therapeutics, Inc. Sec. Litig.*,
   2018 WL 2943746 (S.D.N.Y. June 12, 2008)........................................................................ 7

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001).................................................................................. 7, 11

*In re MBIA, Inc., Sec. Litig.*,
   700 F. Supp. 2d 566 (S.D.N.Y. 2010).................................................................................... 23

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
   982 F. Supp. 2d 277 (S.D.N.Y. 2013).................................................................................... 21

*In re Moody's Corp. Sec. Litig.*,
   2013 WL 4516788 (S.D.N.Y. Aug. 23, 2013) ....................................................................... 10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010).......................................................................................... 6, 7, 25

*In re Openwave Sys. Sec. Litig.*,
   528 F. Supp. 2d 236 (S.D.N.Y. 2007).................................................................................... 23

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
   774 F. Supp 2d 584 (S.D.N.Y. 2011)..................................................................................... 21

*In re The Honest Co. Sec. Litig.*,
   2022 WL 2856024 (C.D. Cal. July 18, 2022) ........................................................................ 20

*In re Van der Moolen Holding N.V. Sec. Litig.*,
   405 F. Supp. 2d 388 (S.D.N.Y. 2005).................................................................................... 19

*In re WorldCom, Inc. Sec. Litig.*,
   346 F. Supp. 2d 628 (S.D.N.Y. 2004)..................................................................................... 18

*In re WRT Energy Sec. Litig.*,
   2005 WL 2088406 (S.D.N.Y. Aug. 30, 2005) ................................................................. 24

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007) ........................................................................... 24

*Lin v. Interactive Brokers Grp., Inc.*,
   574 F. Supp. 2d 408 (S.D.N.Y. 2008) ........................................................................... 14

*Litwin v. Blackstone Grp., L.P.*,
   634 F.3d 706 (2d Cir. 2011) .................................................................................... 7, 11

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) ......................................................................................... 3

*McMahan & Co. v. Wherehouse Ent., Inc.*,
   65 F.3d 1044 (2d Cir. 1995) ......................................................................................... 22

*Meyer v. Jinkosolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014) ................................................................................... 15, 16

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
   2022 WL 17815767 (2d Cir. Dec. 20, 2022) ............................................................... 19

*P. Stolz Fam. P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) ........................................................................................... 13

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   347 F. App'x 617 (2d Cir. 2009) .................................................................................. 15

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
   2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ....................................................... 19, 21

*Peifa Xu v. Gridsum Holding Inc.*,
   2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) ..................................................... 8, 9, 13

*Pinter v. Dahl*,
   486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988) ......................................... 25

*Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance
   Corp. I*,
   2012 WL 601448 (E.D.N.Y. Feb. 23, 2012) ............................................................... 25

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ....................................................................... 7, 13, 14, 21

v

*S.E.C. v. DCI Telecommunications, Inc.*,
 122 F. Supp. 2d 495 (S.D.N.Y. 2000) ................................................................. 10

*S.E.C. v. Penthouse Int'l, Inc.*,
 390 F. Supp. 2d 344 (S.D.N.Y. 2005) ................................................................. 12

*SEC v. Monterrosso*,
 768 F. Supp. 2d 1244 (S.D. Fla. 2011) ............................................................... 12

*Sec. & Exch. Comm'n v. AT&T, Inc.*,
 2022 WL 4110466 (S.D.N.Y. Sept. 8, 2022) ....................................................... 12

*Sec. & Exch. Comm'n v. MiMedx Grp., Inc.*,
 2022 WL 902784 (S.D.N.Y. Mar. 28, 2022) ...................................................... 7, 8

*Slayton v. Am. Exp. Co.*,
 604 F.3d 758 (2d Cir. 2010) ............................................................................... 15

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991) ............................................................................. 12

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
 672 F. Supp. 2d 596 (S.D.N.Y. 2009) ................................................................... 8

*Yaroni v. Pintec Tech. Holdings Ltd.*,
 600 F. Supp. 3d 385 (S.D.N.Y. 2022) ............................................................ 11, 15

**Regulations**

17 C.F.R. § 229.105 ............................................................................................... 19

**Other Authorities**

SEC STAFF ACCOUNTING BULLETIN NO. 99,
 64 Fed. Reg. 45 (Aug. 12, 1999) ....................................................... 8, 10, 11, 12

E.G. Fox, M.B. Fox, et al., *Economic Crisis and the Integration of Law and Finance: The Impact
 of Volatility Spikes*, 116 COLUM. L. REV. 325 (2016) ........................................ 24

Madge S. Thorsen, Richard A. Kaplan, Scott Hakala, *Rediscovering the Economics of Loss
 Causation*, 6 J. Bus. & Sec. L. 93 (2006) ........................................................... 23

Lead Plaintiffs, Chelsea Fan, Maso Capital Investments Limited, Blackwell Partners LLC – Series A, and Star V Partners LLC, and named plaintiff James Sannito ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants Missfresh Limited, Colleen A. Devries and Cogency Global, Inc.'s Motion to Dismiss the Amended Class Action Complaint (the "Motion"). ECF No. 42.[1]

## I.    PRELIMINARY STATEMENT[2]

This is a simple case. The Securities Act was enacted "to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972). Under that law, plaintiffs "need only show a material misstatement or omission [in the registration statement] to establish [their] *prima facie* case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). "Liability against the issuer [, i.e., Missfresh,] of a security is virtually absolute, even for innocent misstatements" while the other Defendants can only escape liability if they prove their affirmative defense of due diligence. *Id.*

The Complaint sufficiently alleges that the registration statement and the prospectus (the "Offering Documents") for the Company's June 2021 initial public offering of ADSs (the "Offering"), through which it raised $313.95 million from the investing public, contained material misstatements and omissions. Defendants have admitted as much: they later told investors that the

---

[1] According to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters or the "Hague Service Convention", Plaintiffs sent the requests to serve summonses on Defendants Xu, Wang, Sun, and Li, who reside in China, to the Chinese government on November 4, 2022, and on Defendant Zhu on January 23, 2023. To date, the Chinese government has yet to return proof of service to Plaintiffs.

[2] "¶_" are citations to paragraphs of the Amended Class Action Complaint (the "Complaint"). ECF No. 34. "Def. Br. __" are citations to pages of the memorandum of law submitted in support of the Motion.  ECF No. 43. "Def. Ex __" are exhibits to the declaration of filed in support of the Motion. ECF No. 44. Unless otherwise noted, all emphases are added and all internal citations and quotation marks are omitted.

financial statements contained in the Offering Documents overstated the "sales of products through online platforms" for the first quarter of 2021—the period leading up to the IPO—by 11.7% and "net revenues" for the same period by 11.4%. These material misstatements are all Plaintiffs need to adequately plead a claim under Section 11.

Defendants' argument that an 11.4% overstatement of the revenue immediately prior to the Offering is immaterial is nonsense. Preliminarily, materiality is a question of fact not appropriate for resolution on a motion to dismiss. That said, the overstatements in sales of products or net revenue here are quantitively and qualitatively material under SEC regulations, GAAP, and to a reasonable investor. Knowing as much, Defendants fall back on the contention that the risk factors contained in the Offering Documents regarding its internal controls diminish the materiality of the overstatements. But it is well established that cautionary words about future risk cannot insulate liability for misstatements of historical facts or the failure to disclose present facts.

Furthermore, the Offering Documents failed to disclose a material weakness in those very internal controls. This undisclosed weakness not only existed at the time of the Offering but was the cause of the admitted "questionable transactions" in Missfresh's next-day delivery business—a principal activity of Missfresh and the material financial overstatements in that business. As a result, nearly 80% of the reported net revenue from the next-day delivery business was fictious at the time of the Offering. While Defendants purportedly warned in the Offering Documents that it had not conducted a full review of its internal controls, it did disclose a different internal control weakness concerning lack of financial and accounting personnel. Given that Defendants chose to speak on internal controls, Defendants were duty bound to disclose all internal control deficiencies and turning a blind eye is not a shield to strict liability.

Relatedly, the Offering Documents prominently touted the Company's business as also being driven by on-demand online sales through its Distributed Mini Warehouses ("DMW") retail business. However, unbeknownst to investors, this business was unsustainable—as admitted by the Company after the Offering—and was completely shut down by July 2022. This had the effect of practically eliminating all of Missfresh's previously inflated net revenues from sales of products through online platforms going forward. The unsustainability of the Company's business model did not materialize overnight and was not sufficiently disclosed or warned of at the time of the Offering. The argument Defendants primarily rely upon—that the events subsequent to the Offering prevented the Company from making an unsustainable business sustainable—is a red herring. The fact the Company was unable to plug the holes in a sinking ship does nothing to lessen the fact that the holes existed and were undisclosed when the boat was sold to investors. As Judge Posner has famously noted, "[t]he fact that a gamble—concealing bad news in the hope that it will be overtaken by good news—fails is not inconsistent with its having been considered, though because of the risk a reckless, gamble. It is like embezzling in the hope that winning at the track will enable the embezzled funds to be replaced before they are discovered to be missing." *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008).

In connection with each of these arguments raised in the Motion, the Defendants have also improperly put before the Court a specter of an unproved, affirmative defense of negative causation. These arguments, in particular, must fail on a motion to dismiss because Defendants' contentions fall well short of the heavy burden they will bare at summary judgment or trial to disprove the Congressionally mandated presumption that all price declines following the issuance of securities under a false and misleading registration statement and prospectus are caused by the material false statements and omissions contained therein.

3

Finally, because the Complaint adequately alleges a violation of Section 11 and the Defendants do not contest any independent element of Section 12(a)(2) or the control allegations plead in support of the Complaint's Section 15 claim, these causes of action must also be sustained.

## II.    FACTS

### A.  The IPO

Missfresh sells groceries to customers in China through online portals. It went public in the United States on June 8, 2021 through the Offering, selling 24,150,000 ADSs for $13.00/ADS pursuant to the Offering Documents, raising gross proceeds of $314 million. ¶61.

At the time of the IPO, Missfresh touted itself as having "experienced rapid growth since we commenced our business in 2014." ¶74. Its revenues had grown from RMB 3.5 billion in 2018 to RMB 6.1 billion in 2020. ¶68. The last quarter reported in its Offering Documents was the quarter ended March 31, 2021 ("Q1 2021"), during which, the Offering Documents reported, Missfresh had earned RMB 1.53 billion. ¶72.

### B.  The Offering Documents Materially Overstated Sales of Products Through Online Platforms and Net Revenue and Failed to Disclose the Unsustainability of Those Revenues

On April 29, 2022, Missfresh announced that it would not be able to file its report for the year ended December 31, 2021 ("2021 Annual Report") on time because it was "in the process of conducting an internal review of certain matters, including those relating to transactions between the Company and certain third-party enterprise." ¶80. On May 24, 2022, Missfresh announced that it had received a non-compliance notification from Nasdaq because of the late filing. ¶81.

On July 1, 2022, Missfresh announced that its investigation was "substantially complete." Based on the investigation, the Company disclosed that due to the Company's "questionable transactions," it "***inaccurately recorded***" and overstated RMB156 million sales of products through online platforms for Q1 2021, which resulted in 11.7% overstatement in sales of products

4

through online platforms and 11.4% overstatement in Q1 2021 net revenue. ¶¶69, 82-83. The Company explained that examples of the "questionable transactions" included "undisclosed relationships between suppliers and customers," "different customers or suppliers sharing the same contact information," and "lack of supporting logistics information." ¶82. The Company also disclosed that the practices had continued through the end of 2021 and, as a result, Missfresh's Q2 and Q3 2021 sales of products through online platforms were also overstated. ¶83. As a result, Missfresh restated the aforementioned line items for Q1 to Q3 of 2021, which represented nearly 80% of the next-day delivery business, and indefinitely shut down that business segment. Under GAAP, a "restatement" is required for correcting material errors. By the restatement, Missfresh admitted that the sales of products through online platforms and the net revenue reported in the Offering Documents were materially false when made. ¶¶69-71. For the same reasons, Defendants' representations in the Offering Documents that financial statements therein were prepared in accordance with GAAP were false when made. ¶¶70-71. Several days later, the Company further announced that it was required to make additional significant changes in its business strategy, which included shutting down all of its unsustainable on-demand online sales, including sales through its DMWs, effectively eliminating all of the Company's net revenues from sales of products through online platforms. ¶85. The Company was forced to admit that these "significant adjustments [would] have a material and adverse impact on the Company's financial performance." *Id.*

C.  **The Offering Documents Omitted Material Internal Control Weakness**

On November 14, 2022, Missfresh finally filed its 2021 Annual Report. The 2021 Annual Report reiterated that Missfresh had misstated its Q1-Q3 financial statements and added that there was substantial doubt concerning Missfresh's ability to continue as a going concern. ¶¶90-91.

The 2021 Annual Report also stated that there had been a "material weakness" in Missfresh's internal controls which lead to the restatement. ¶92. The material weakness consisted of a "combination of control deficiencies," as confirmed by the Company, including lack of "personnel" and "policies" in monitoring and reviewing sales, suppliers, and risk assessment, lack of control over "revenue recogni[tion] relat[ing] to valid sales order," lack of monitoring by "internal audit" in the next-day delivery segment (the "Omitted Material Weakness"). *Id*. They had permeated virtually every aspect of the operational and financial functions of the next-day delivery business unit and resulted in Missfresh's failure to "prevent and detect misstatements related to" the above-referenced "questionable transactions." By restating the Q1 2021 financial figures contained in the Offering documents resulting from the Omitted Material Weakness and the questionable transactions, Missfresh admitted the Omitted Material Weakness existed at the time of the IPO. *Id*. But Defendants failed to disclose the Omitted Material Weakness in the Offering Documents.

## III.   ARGUMENT

### A. The Complaint Meets the "Relatively Minimal" Burden of Alleging the Offering Documents Contained Materially False Statements

A complaint only needs to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint survives if the facts alleged "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

Section 11 imposes "virtually absolute" liability for material misstatements, "even for innocent misstatements." *Huddleston*, 459 U.S. at 381-82. "Section 11 places a relatively minimal burden on [the] plaintiff." *Id.* at 382. Plaintiffs need not allege scienter, reliance, or loss causation. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (citing

*Rombach v. Chang,* 355 F.3d 164, 169 n. 4 (2d Cir. 2004)) "Fraud is not an element" and Plaintiffs "need allege no more than negligence." *Rombach*, 355 F.3d at 171. Defendants do not dispute that the claims here do not sound in fraud and therefore need only meet Rule 8's short and plain statement standard. *Id.* at 171. A defendant is liable under the Securities Act if a plaintiff pleads one of "(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing disclosures from being misleading." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715-16 (2d Cir. 2011).

Materiality is a mixed question of law and fact. "Because materiality is generally a question of fact, it is unlikely that a cause of action turning on materiality would be dismissed as a matter of law." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 408 (S.D.N.Y. 2001). "Issues of materiality 'will rarely be dispositive in a motion to dismiss,' unless 'they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Sec. & Exch. Comm'n v. MiMedx Grp., Inc.*, 2022 WL 902784, at *9 (S.D.N.Y. Mar. 28, 2022) (quoting *Morgan Stanley*, 592 F.3d at 360).

### i.    The Registration Statement Materially Overstated Sales of Products Through Online Platforms and Net Revenue

Missfresh conceded that its sales of products through online platforms and net revenue for Q1 2021 were "***inaccurately recorded***" in the Offering Documents, thus establishing Plaintiffs' prima facie case. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("[T]he mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made").[3]

---

[3] *In re Insys Therapeutics, Inc. Sec. Litig.*, 2018 WL 2943746, at *3 (S.D.N.Y. June 12, 2008) ("It is undisputed that Insys's financial statements . . . were false at the time they were released. As

7

Furthermore, these errors were plainly quantitatively and qualitatively material. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 485 (2d Cir. 2011) (adopting the quantitative and qualitative analyses for assessing materiality of a misstatement as expressed in SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45,150 (Aug. 12, 1999) ("SAB No. 99")).

Quantitatively, Defendants do not dispute that Missfresh overstated the Q1 2021 sales of products through online platforms by 11.7% and the Q1 2021 net revenue by 11.4%, or twice the 5% threshold recognized by the SEC, which therefore is quantitatively material. *Peifa Xu v. Gridsum Holding Inc.*, 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020) ("[T]he unit of analysis in SAB 99's five percent quantitative materiality is the particular item on the registrant's financial statements," recognizing each of the alleged overstated line items, including the 11% overstated net revenues, was quantitatively material.); *see also Hutchison*, 647 F.3d at 487 (quantitative materiality typically rests on a numerical threshold of 5%).[4]

Qualitatively, Q1 2021 sales of products through online platforms and Q1 2021 net revenue were material information under the law, SEC rules and GAAP, and to a reasonable investor.

First, net revenue (including sales of products through online platforms) are "the exact type of information that would be important to a reasonable investor." *MiMedx*, 2022 WL 902784, at *9. The SEC requires a registrant, such as Missfresh, to explain the net revenues for the interim period before the IPO, here for Q1 2021, as part of the registrant's operating and financial review

---

Insys admitted …, these statements had certain errors when made."); *see also Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544-45 (S.D.N.Y. 2017) (similar) (collecting cases); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009) ("Misreported financial information clearly amounts to a false statement of fact.").

[4] *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 161-62 (S.D.N.Y. 2003), *aff'd,* 113 F. App'x 427 (2d Cir. 2004) is inapposite. There, the "minuscule 0.3% inflation of revenues" was so immaterial a percentage "as a matter of law" that the illegality of the underlying transactions causing the 0.3% overstatement and a stock price drop upon the corrective disclosure could not cure the immateriality.

and prospects because it is one of the "factors that have ***materially*** affected the company's financial condition and results of operations for the historical periods covered by the financial statements." Part I, Item 5 of Form F-1[5].

Second, under GAAP, a restatement is the process to correct a ***material error*** "resulting from mathematical mistakes, mistakes in the application of … GAAP, or ***oversight*** or misuse ***of facts that existed at the time the financial statements were prepared***." ASC 250-10-20; ASC 250-10-45-27; ASC 105-10-05-6. Defendants concede that "Missfresh restated its financial results for Q1 through Q3 2021." Def. Br. at 11; *see also id*. at 23-24. By restatement (¶¶ 69–71), Defendants admitted the material overstatements in the Q1 2021 sales of products and the Q1 2021 net revenue "result[ed] from … oversight … of [the questionable transactions] that existed at the time the [Offering Documents] were prepared", violating GAAP. ASC 250-10-20; *see also In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 437 (S.D.N.Y. 2005); *Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017) Citing no authorities, Defendants' baseless no-GAAP violation argument fails. Def. Br. at 24. Defendants' discovery, purportedly "a year after the IPO" (Def. Br. at 21-22), of the questionable transactions causing the overstatements does not change the facts that those transactions existed at the time of the IPO and Defendants overlooked them, violating GAAP.

Third, Missfresh itself recognized that the "net revenue" and the "sales of products through online platforms", particularly those for Q1 2021, were material information "in the context of the company's total operations." *See Peifa Xu*, 2020 WL 1508748, at *9; Def. Br. at 22. In the Offering Documents, Missfresh listed the "net revenues", including "sales of products through online platforms", as the first and foremost among the three "key components" for Missfresh's "results

---

[5] Part I, Item 4(a) of Form F-1, a form on which Missfresh filed its Registration Statement, requires registrants to furnish the information required by Part I of Form 20-F. ¶66.

9

of operations." ¶68; Def. Ex. A at 93-94.[6] When explaining the Company's results of operations, the first matter the Company discussed was the net revenue and the sales of products through online platforms for the "three months ended March 31, 2021 compared to three months ended march 31, 2020." Def. Ex. A at 98. It shows that Missfresh recognized the Q1 2021 net revenues and Q1 2021 sales of products through online platforms as the most significant factor for evaluating the Company's "total operations." *Peifa Xu*, at *9. It also annihilates Defendants' argument that the sales of products through online platforms and the net revenue were merely some "line item[s]", immaterial to "the total mix of information" to the Company. Def. Br. at 22-23; *see also In re Moody's Corp. Sec. Litig.*, 2013 WL 4516788, at *7 (S.D.N.Y. Aug. 23, 2013) (finding materiality, noting that "[i]n light of the great lengths to which Moody's has gone to tout its independence and integrity, it is inconsistent for Moody's to simultaneously argue that a reasonable investor would not find such statements to be material.").[7] Additionally, the next-day delivery business was one of the only two "principal activities" of Missfresh and contributed approximately 14.6% of Missfresh's total net revenues.[8] Def. Ex. A at F-10. The "questionable transactions" underlying the 11.7% overstated sales of products and the 11.4% overstated net revenue show that nearly 80% of the revenue from next-day delivery was fictitious. The restatement, which virtually wipes out the entire business's operations, further supports the qualitative materiality of the overstated sales of products through online platforms and the net revenue given their significance to an important segment. *See* SAB No. 99 (Qualitative factors include "[w]hether the misstatement

---

[6] The other two key components are Cost or Revenues and Operating Expenses. Def. Ex. A at 94-96.

[7] *See also S.E.C. v. DCI Telecommunications, Inc.*, 122 F. Supp. 2d 495, 499 (S.D.N.Y. 2000) (defendants' emphasis on revenues shows that they "not obviously unimportant to the investing public.").

[8] See Def. Ex. A 94 (sales of products through online platforms (including next-day delivery and DMW) generated 97.6% of the total net revenue for Q1 2021); ¶85 (DMW contributed approximately 85% of the Company's total net revenue.)

concerns a segment … that has been identified as playing a significant role in the registrant's operations or profitability."); *see also Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 720 (2d Cir. 2011) (overturning district court's immateriality conclusion, noting that "a misstatement['s] … significance to a particularly important segment of a registrant's business tends to show its materiality."); *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 737–38 (S.D.N.Y. 2015) (finding the misstatements concerning 4.7% of defendant's quarterly revenue material because the misstatements concerned a particularly noteworthy segment of defendant's overall business.)[9]

Citing *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 401-02, 404 (S.D.N.Y. 2022), Defendants contend that a company's top-line revenue figures are not material, independent of their associated impact on the company's bottom-line net income. Def. Br. at 22-23. But *Yaroni* is inapposite because there, the restatement concerned revenues that had actually occurred and increased upon a change to the revenue recognition method. *Id*. at 401–02. By contrast, here, the overstatements in sales of products and revenues were fictitious and therefore were completely erased upon the restatement, reflecting the significantly worse condition of next-day delivery and resulting in the business's indefinite termination. ¶92. Furthermore, SAB No. 99 squarely rejects Defendants' income-only materiality proposition. *See* SAB No. 99 (If revenue is materially overstated, "financial statements taken as a whole will be materially misleading even if the effect on earnings is completely offset by an equivalent overstatement of expenses.").

Indeed, were Defendants income-only theory correct, a company could report whatever fictitious revenues it desired, and remain immune from securities law liability so long as it offset those fraudulent revenues with comparable fictitious expenses—a result that defies common sense

---

[9] *See also City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 416–17 (S.D.N.Y. 2020) (rejecting defendants' immateriality argument on the misstatements concerning 0.37% of total revenue and $20,000 net income, noting that the misstatements concerned "a particularly noteworthy segment of" the company's overall business.)

and the law. Given the qualitative significance that Missfresh had attached to the Q1 2021 sales of products, the Q1 2021 net revenue and the next-day delivery business, Plaintiffs have established materiality. *See Sec. & Exch. Comm'n v. AT&T, Inc.*, 2022 WL 4110466, at *49-52 (S.D.N.Y. Sept. 8, 2022) (rejecting defendants' argument that the quarterly wireless equipment revenues accounting for 8.5% of the total revenue was immaterial because such revenues had no impact on the company's profit, noting that "it is established that revenues can be material even if not influencing earnings") (citing SAB No. 99); *see also SEC v. Monterrosso*, 768 F. Supp. 2d 1244, 1264-65 (S.D. Fla. 2011), *aff'd*, 756 F.3d 1326 (11th Cir. 2014) (rebuffing argument that revenue overstatement was immaterial because it had no impact on net income, noting that "there is no requirement that a misstatement improve a company's balance sheet in order to be material").

Defendants' argument that Missfresh's ADS price increased upon the July 1, 2022 disclosure of the restatement is without merit. *See* Def. Br. at 23. "[T]here is no requirement to allege or demonstrate any particular movement in a company's stock price in order to sustain the element of materiality on a Rule 12(b)(6) motion." *S.E.C. v. Penthouse Int'l, Inc.*, 390 F. Supp. 2d 344, 353 (S.D.N.Y. 2005) (finding 9% overstatement in quarterly revenue material). In fact, the Second Circuit has refused to dismiss a complaint based on the factual argument that stock price did not drop. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000) (finding misreported fees accounting for 1.7% of revenue material, vacating district court's immateriality decision based on no stock price movements).[10] In any event, Defendants' negative causation argument is "not properly raised on a Rule 12(b)(6) motion" and falls woefully short as a matter

---

[10] Indeed, the court in *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 161 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004), a case that Defendants here cite, states the same. *See id.* at 161 ("'[W]hether a public company's stock price moves up or down or stays the same' is irrelevant to materiality.) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991)).

of law. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 572 (S.D.N.Y. 2009). The Complaint alleges that investors had learned of the severity of the overstatements before the 2020 Annual Report when Missfresh's disclosed that the Company would not timely file its annual report due to an internal review of the "transactions between the Company and certain third-party enterprises" (the precise transactions that caused restatement) on April 29, 2022. ¶80. Missfresh's ADS price precipitously declined by 13.5% on May 2, 2022 as a result. *See* Def. Ex. B. Even if Plaintiff's bore the burden on loss causation—they do not (*see supra* Sec. III.B.)—this disclosure would "satisf[ies] the loss causation requirement." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010); *see supra* III.B.

Defendants' argument that risk warnings shield them from Section 11 liability is without merit. Def. Br. 22. Defendants' statements in Offering Documents—concerning potential risks relating to a material weakness in internal control and unspecified potential weaknesses that "could significantly hinder [Missfresh's] ability to prevent fraud," or "may also [] require [the Company] to restate [its] financial statements for prior periods"—were cautionary language of potential ***future*** errors and were false when made.[11] *Id.*; Def. Ex. A at 47-48. Defendants "may not use these words warning of future mistakes to seek refuge from errors that had already occurred and existed alongside the cautionary language." *Peifa Xu*, 2020 WL 1508748, at \*8 (rejecting defendants' reliance on disclosed material internal control weaknesses to discount historical

---

[11] Second Circuit precedent clearly states that the bespeaks caution doctrine applies only to "forward-looking, prospective" representations or omissions. *See P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 96-97 (2d Cir. 2004) (following other circuits in limiting the "bespeaks caution" doctrine to "forward-looking, prospective representations"); *Rombach* 355 F.3d at 172-176 (applying the bespeaks caution to statements of optimism concerning the future performance of newly acquired businesses, but not to alleged omissions of information concerning existing financial and operational difficulties).

material misstatements); *see also Rombach*, 355 F.3d at 173 ("Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired."). [12]

In short, the Complaint adequately alleges that the Offering Documents contained inaccurate statements of material fact because: (a) the Company overstated the Q1 2021 sales of products through online platforms by 11.7%; and the net revenue by 11.4%(b) the Company overstated  Q1 2021 financial figures in violation of GAAP; and consequently (c) the financial statements in the Offering Documents were not prepared in accordance to GAAP.

### ii.    The Offering Documents Omitted Material Internal Control Weakness

In the Offering Documents, Defendants disclosed that they conducted a preliminary assessment of the internal controls and discovered a material weakness in financial and accounting staffing. Def. Br. at 6. However, Defendants failed to disclose another internal control weakness that existed at the time of the IPO they were required to disclose.

On November 14, 2022, Defendants told investors that the Omitted Material Weakness "relate[ed] to our failure to design and implement effective controls … to prevent and detect misstatements related to our certain transactions within the Next-Day Delivery BU". ¶92. The Company also told investors that the material financial overstatements in the Offering Documents resulted from the Omitted Material Weakness and its consequential questionable transactions. The statement therefore confirmed that the Omitted Material Weakness existed at the time of the IPO, but Defendants failed to disclose it. *Id*.

---

[12] Confused of cause and effect, Defendants mistakenly states that Q1 2021 financials "were misleading because the Company later restated its net revenues" (Def. Br. at 22), when in fact the material overstatement led to the restatement. A warning of a potential restatement in the future cannot immunize an error "that has already occurred", regardless of whether the warned of restatement would occur. *Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 417 (S.D.N.Y. 2008)

Defendants had a duty to disclose the Omitted Material Weakness at the time of the Offering because (i) it was in existence, and (ii) they had initially disclosed an internal control weakness in the Offering Documents, thus putting internal controls at issue. ¶92; Def. Ex. A at 47. However, without the disclosure of the Omitted Material Weakness, it rendered the Offering Documents materially false on this topic. *See Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250–51 (2d Cir. 2014) ("[O]nce a company speaks on an issue or topic, there is a duty to tell the whole truth."). Moreover, Defendants purported risk statements in the Offering Documents that there may be additional deficiencies, are not sufficient, since the Omitted Material Weakness existed at the time of the IPO. *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 770, 772 (2d Cir. 2010) ("[R]isk factor" describing conditions that "might" occur actionable where adverse events already occurred).

*Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014) is instructive. In *Jinkosolar*, the Second Circuit held that based on a June 8, 2010 report submitted by JinkoSolar to a Chinese regulator *after* JinkoSolar's May 13, 2010 IPO about certain "existing problems", "a trier of fact, … [could] draw an ***inference*** that the problems 'existing' as of June 8, 2010, were both present and substantial at the time of the May 13, 2010, offering." *Id.* at 251. (vacating dismissal decision and remanding). Therefore, pursuant to *Jinkosolar*, the only relevant inquiry under Section 11 is whether plaintiffs can muster sufficient evidence to allow a trier of fact to infer the existence of a material omission at the time of the IPO. Contrary to Defendants' argument (Def. Br. at 18), Plaintiffs do not need to plead knowledge. [13]

---

[13] Defendants cite *Yaroni,* 600 F. Supp. 3d. at 393-94 to support their knowledge argument. Def. Br. at 16-17. But the *Yaroni* court, erroneously relying on *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617 (2d Cir. 2009), misapplied the standard for the duty to disclose a known trend under Item 303 (as set forth in *Panther*, 347 F. App'x at 619–20) to an omission case under Section 11. *See Yaroni*, at 397. Therefore, neither *Panther* nor *Yaroni* are inapposite to this case alleging material omissions under Section 11.

15

Defendants mistakenly argue that their generic risk disclosures of potential "fraud" and "restate[ment of] our financial statements" eliminate their duty to disclose the Omitted Material Weakness, a present fact. Def. Br. at 16. A warning that is "framed in hypothetical terms does not apprise a reasonable investor of actual misconduct." *Horowitz v. Sunlands Tech. Grp.*, 2021 WL 1224517, at *3 (E.D.N.Y. Mar. 31, 2021)).[14] A material internal control weakness is a reason, among many other reasons (such as a computer glitch), that could cause material financial misstatements. No reasonable investors could deduce from Defendants' generic warnings, that a particular fact that could give rise to financial misstatements, *i.e.*, the Omitted Material Weakness, had already existed at the time of the IPO.

Similarly, the weakness of "lack of sufficient competent financial reporting and accounting personnel" identified in the Offering Documents (Def. Br. at 16) bears no resemblance to the Omitted Material Weakness which consists of six material deficiencies permeating throughout the entire next-day delivery business's operations and finance, such as "lack of formalized policies and procedures to monitor," "ineffective controls related to the shipping and delivery of products", "inadequate review and approval of products and price," "lack of effective monitoring … by internal audit and business unit," "lack of sufficient segregation of duties related to certain risk monitoring and whistleblower activities." The mere disclosure of the shortage of staff not only cannot adequately apprise investors of these material deficiencies, but also created a materially misleading picture about the Company's financial health. *See Meyer*, 761 F.3d at 251 ("[F]ailure to disclose then-ongoing [issues] would cause a reasonable investor to make an overly optimistic

---

[14] *See also Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 842 (S.D.N.Y. 2019) ("generic warnings about regional or country-specific business cycles" were insufficient to warn about quarterly performance); *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2020 WL 1950783, at *10 (E.D.N.Y. Apr. 22, 2020) (warning that shipping delays are possible when they are already happening).

assessment of the risk. A generic warning of a risk will not suffice when undisclosed facts …

would substantially affect a reasonable investor's calculations of probability.").[15]

Plaintiffs have sufficiently alleged Section 11 claim as to the Omitted Material Weakness.

### iii.    The Offering Documents Failed to Disclose the Company's Unsustainability

The Complaint sufficiently alleges that the Offering Documents failed to disclose that the

Company's net revenues from sales through online platforms were unsustainable with respect to

both next-day sales and sales through DMWs.

In seeking to rewrite the disclosure duties under the Securities Act, which impose strict

liability for material misstatements and omissions, Defendants contest that they were merely

required to disclose only the facts which they "knew or had reason to know" at the time of the

IPO.  Def. Br. at 19; *see also id.* at 20 ("knew or should have known"). Unfortunately for

Defendants, this is not the law. As a preliminary matter, any factual dispute concerning

Defendants' awareness at the time of the Offering "cannot be resolved on a motion to dismiss."

*Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*, 2020 WL 3318029, at \*3-4 (S.D.N.Y. June

18, 2020). Beyond this, the minimum standard is not that the Complaint must plausibly allege that

Defendants had a "reason to know" of the omitted material, adverse facts and materialized risks,

but merely that such facts and risks could have been "***knowable***" to Defendants if they had looked

hard enough when preparing to sell ADSs to the investing public. *See, e.g., AMC Entertainment*

*Holdings,* 422 F.Supp.3d  at 840 (sustaining Section 11 and 12(a)(2) claims because the adverse

---

[15] *Asay v. Pinduoduo Inc.*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) (Def. Br. at 17) is not apposite because there, "based on the specificity of the contemporaneous examples of anti-counterfeiting failures and risks", "a reasonable investor" would have naturally anticipated the materialization, ***in the future***, of the allegedly undisclosed risk of "substantial violations of [ ] Chinese regulations" on counterfeiting. *Id*. at \*3. But here, investors could not have reasonably inferred the ***existing*** Omitted Material Weakness from a completely ***unrelated*** weakness concerning the shortage of financial staff.

facts were alleged to be "plausibly knowable prior to the [offering]").Indeed, such a standard "reflects Congress' sense that underwriters, issuers, and accountants bear a 'moral responsibility to the public [that] is particularly heavy'" when availing themselves of the financial markets. *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 657 (S.D.N.Y. 2004); *see also Huddleston*, 459 U.S. at 381-82 (liability attaches to "even … innocent" misstatements and omissions). Here, because the undisclosed material adverse facts and materialized risks concerning the Company's sources of net revenues were in existence at the time of the Offering, they were necessarily "knowable" adverse facts and risks.

In particular, the Complaint sufficiently alleges that Offering Documents misrepresented or omitted then existing facts and materialized risks in the following ways: (i) historic sales of products through online platforms and total net revenues were overstated by over 11% in the Offering Documents (¶73(a)); (ii) the Offering Documents failed to disclose that the risks of the Company's unsustainable business practices had begun to materialize prior to the Offering (¶73(b), (d)); (iii) Missfresh's internal controls over financial reporting were rife with inadequacies (¶73(c)); and (iv) absent a miracle, the Company would be forced to shutter its on-demand online sales for both next-day delivery and DMWs (¶73(e)). Further, the Complaint alleges more than a bare allegation that the Company's business practices were "unsustainable," rather the Complaint details statements in the Offering Documents and establishes that such statements were false at the time of the Offering premised on Defendants own post-Offering admissions, including: (i) the illicit sources of the Company's net revenues (¶¶68-73); (ii) the restatement of those net revenues (¶83); (iii) insufficient internal controls connected to those net revenues (¶92); and (iv) the elimination of those net revenues going forward (¶¶82, 85).

18

When Defendants spoke in the Offering Documents regarding Missfresh's net revenue, the failure to disclose the litany of attendant material adverse facts and risks associated therewith gives rise to Securities Act liability. *See In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 137 (2d Cir. 2021) (reversing dismissal where complaint alleged that when discussing company sales the Defendants actionably omitted that those sales were achieved in significant part through unsustainable business practices).[16]

Independent of the disclosure duties created by Section 11, Section 12(a)(2), and Rule 408 (¶¶64-65), Defendants were also under a duty to disclose the unsustainability of the Company's business under Item 105 (formerly Item 503) (¶¶66-67) ), which required them to disclose "the material factors that make an investment in the registrant or offering speculative or risky." ¶67 (quoting 17 C.F.R. § 229.105). Under Item 105, "courts typically analyze the sufficiency of Item [105] disclosures with the familiar materiality standard." *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 426 (S.D.N.Y. 2011) ("the inquiry involves 'whether the Offering Documents were accurate and sufficiently candid'"); *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *10 (S.D.N.Y. Sept. 27, 2020) ("Plaintiff need not allege Defendants' knowledge in order to plead an Item [105] violation."). As the Second Circuit has repeated made clearly "a district court may not dismiss for lack of materiality unless the alleged misstatements or omissions "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Moab Partners*, 2022 WL 17815767

---

[16] *see also Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2022 WL 17815767, at *3-4 (2d Cir. Dec. 20, 2022) ("Having chosen to speak … Defendants had a duty to speak accurately, giving all material facts … to permit investors to evaluate the potential risks"); *Freudenberg*, 712 F. Supp. 2d at 180 (once a company puts the topic of the cause of its financial success at issue, it is obligated to disclose information concerning the source of its success); *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 401 (S.D.N.Y. 2005) (same).

19

at *3. Here, the source of nearly all of the Company's net revenues and the Company's ability to function *at all* cannot plausibly be argued as immaterial to Missfresh investors.[17]

Finally, Defendants again gesture to boilerplate and generalized risk factors in attempting to elude near-absolute liability for their false and misleading statements and omissions regarding Missfresh's sustainability. These risk factors, which merely offer vague cautions regarding the need to "effectively manage the expected growth" and improve "operational and financial systems, policies, procedures and controls" do nothing anesthetize the Company's omission of the fact that it would need to terminate its next-day delivery business. Def. Br. at 19-20. Nor do they warn that all of the Company's online business would need to be shut down because the Company "may … require additional cash resources due to changed business conditions or other future

---

[17] Unlike all other disclosure duties discussed herein, Item 303 (¶66)—which is raised only as an alternative duty of disclosure in addition to Section 11, Section 12(a)(2), Item 105, and Rule 408—does require Plaintiffs to prove *at trial* that Defendants had knowledge of an undisclosed adverse trend. To sufficiently plead a claim under this alternative duty at this stage in the litigation, however, Plaintiffs need only plead an inference of such knowledge, again, that such facts were *knowable*. *See, e.g.*, *In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597, at *3 (S.D.N.Y. Oct. 30, 2017) (holding that factual allegation, such as post-Offering admissions and temporal proximity of an Offering to post-Offering adverse events, raise a plausible inference of pre-Offering knowledge); *In re The Honest Co. Sec. Litig.*, 2022 WL 2856024, at *4 (C.D. Cal. July 18, 2022), *reconsideration denied sub nom. In re Honest Co., Inc. Sec. Litig.,* 2022 WL 18584804 (C.D. Cal. Aug. 25, 2022). (finding Item 303 "knowledge" sufficiently alleged where complaint raised a plausible inference that adverse facts were "observable at the time of the offering"). Given the Offering Documents' at length discussions regarding the Company's business model and the given the allegation that admittedly unsustainable business practices had generated nearly all of Missfresh's pre-Offering net revenues (*see, e.g.,* ¶73(b)—each of which demonstrate Defendants' intimate knowledge of Missfresh's businesses at issue—the Complaint sufficiently alleges, at minimum, that the alleged omissions were knowable at the time of the Offering and should have been disclosed under Item 303, in addition to Sections 11 and 12(a)(2), Item 105, and Rule 408. Furthermore, the Defendants have not challenged the allegation that this undisclosed trend began in the first quarter of 2021 and continued for the rest of 2021 or that such a time period sufficiently constitutes a trend for pleading purposes. *See CPI Card*, 2017 WL 4941597, at *3 (rejecting defendants' argument that the adverse impact of an alleged trend must materialize prior to an offering and holding that "whether a pattern or occurrence is sufficiently lengthy to constitute a trend is a question that should not be resolved at the motion to dismiss stage").

developments." *Id.* at 21. Indeed, each of the risk factors pointed to by Defendants are so general and boilerplate that each amount to the *caveat emptor* the Securities Act was enacted to supplant with truthful disclosure. *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 315 (S.D.N.Y. 2013) (no defense for risk warning that "refer[s] generally to potential unexpected events or contingencies"). Thus, the risk factors identified, which speak only to future potentialities, are incapable of "insulat[ing] from liability the failure to disclose that the risk has transpired" as alleged in the Complaint. *See also Rombach*, 355 F.3d at 172-176.

### B. Defendants' Negative Causation Argument Fails

Contrary to Defendants' ardent wishes, loss causation is not an element of a Section 11 claim, the Complaint does not allege "corrective disclosures,"[18] and the damages prescribed under the formula found in Section 11(e) may only be reduced when and if Defendants meet the "heavy" burden of proving a negative causation defense "conclusively." *Adair v. Kay Kotts Assocs. Inc.*, 1998 WL 142353, at *3, *6-8 (S.D.N.Y. Mar. 27, 1998) (Sotomayor, D.J.); *see also Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) (Defendants face a "heavy burden" to address and refute each potentially viable means by which the omissions alleged could have caused any portion of the losses that are presumed by statute).

---

[18] Because the Complaint does not allege loss causation or "corrective disclosures," Defendants reliance on *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404 (S.D.N.Y. 2009), is misplaced since in that case the complaint affirmative plead loss causation which forced plaintiffs "to concede that the bulk of their losses [we]re not recoverable." *Id.* at 418-19; *see also Panther Partners Inc.*, 2020 WL 5757628, at *16 (finding allegations of "materialization of risk," rather than corrective disclosures, "preclude[s] Defendants from meeting their 'heavy' burden in arguing [a negative causation] affirmative defense, particularly on a motion to dismiss"). Even more afield is Defendants citations to *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 345 (2005), which addressed loss causation under Section 10(b) of the Exchange Act, and *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp 2d 584, 590-91, 595-96 (S.D.N.Y. 2011), which addressed a "loophole" in Section 11(e) which only applies to mutual funds with a price that is not determined by market securities trading.

21

To meet that heavy burden, Defendants are required to affirmatively disprove causation for *every* decline in value of the Company's stock after the Offering. *Adair*, 1998 WL 142353, at *7 (Defendants must "prove that other factors caused the decline in price of plaintiffs' stock."); *see also McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048-49 (2d Cir. 1995) (Under Section 11, "any decline in value is presumed to be caused by the misrepresentation," and the "defendant ... bears the burden of proving that the price decline was not related to the misrepresentations"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35-36 (2d Cir. 2009) (same, and noting that defendants' burden is a "heavy" one). As then Judge Sotomayor has made clear, the mere "presence or absence of price movement immediately after disclosure is not per se dispositive under Section 11(e). *Id*.[19] In other words, Defendants do not prove negative causation, *i.e.*, disprove presumed loss causation, by claiming that only price declines on certain days could have a causal connection. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 2015 WL 685159, at *4 (S.D.N.Y. Feb. 18, 2015) ("to make out a successful [negative causation] defense [the defendant] must prove not the mere possibility that some other factor caused the plaintiff's loss but rather that all or an identified portion of plaintiff's loss was caused by that other factor"). Yet, that is all Defendants have done here.

Moreover, Defendants conveniently ignore two price declines showing that their negative causation argument flatly fails as a matter of law. ***First***, upon Missfresh's disclosure of the late filing of its 2021 Annual Report on April 29, 2022, Missfresh's ADS price precipitously declined by 13.5% to close at 0.45/ADS on the next trading day. Def. Ex. B. In the late filing notice,

---

[19] Unlike any argument put forward by Defendants in this case, the complaint in *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010) (Def. Br. at 25), itself "establish[ed] that the decline in ACA's stock was not caused by the allegedly false and misleading statements" since the stock traded above the IPO price while disclosing increased exposure to subprime mortgages. *Id.* at *11; *see also Bauer v. Prudential Fin., Inc.*, 2010 WL 2710443, at *8 (D.N.J. Jun. 29, 2010) (finding *Blackmoss* and analysis of causation unpersuasive).

Missfresh partially revealed that the Company was conducting "an internal review of certain matters", including "transactions between the Company and certain third-party enterprises." ¶80; *cf. Freudenberg*, 712 F. Supp. 2d at 202 ("[P]artial disclosures can satisfy the loss causation requirement."). As the subsequent 2021 Annual Report confirmed, these exact transactions resulted from the Omitted Material Weakness existing at the time of the Offering and caused the material overstatement in the sales of products from online platforms and the net revenues for Q1 2021 contained in the Offering Documents. ¶¶82, 92.[20] ***Next***, on May 24, 2022, in Missfresh's disclosure of its receipt of Nadaq's noncompliance notice, Missfresh again disclosed that its internal review, including the review of those questionable transactions existing at the time of the IPO, was still ongoing, preventing the Company from filing 2021 Annual Report. ¶81. Upon this disclosure, the market, again, reacted strongly over the next two days and Missfresh's ADS price fell by 10.5% to close at 0.17/ADS on May 26, 2021. Def. Ex. B.[21]

Importantly, Defendants concede that upon the disclosure of shutting down the DMW segment—a fact pled by Plaintiffs as part of their allegation on Missfresh's business unsustainability at the time of the IPO, Missfresh's ADS price fell by 14.3% on the next trading day. Def. Br. at 13. This concession alone defeats Defendants' negative causation argument.

Furthermore, Defendants claim that any price decline before April 29, 2022, must be disregarded because no "alleged misrepresentation was revealed to the market" yet. Def. Br. at 25.

---

[20] Defendants' proposition to measure the price drop upon the April 29, 2022 disclosure by reference to May 2, 2022's opening price is improper and should be rejected. Def. Br. at 10. *See In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 253 (S.D.N.Y. 2007) (noting that "whether to measure the price drop ... by reference to the ... intra-day high price or the closing price" should not be resolved on the pleadings.); *see also In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 596 (S.D.N.Y. 2010) (same).
[21] *See* Madge S. Thorsen, Richard A. Kaplan, Scott Hakala, *Rediscovering the Economics of Loss Causation*, 6 J. Bus. & Sec. L. 93, 111–12 (2006) (Event studies to evaluated price impact and damages "may consider 'event windows' or several days over time.").

However, Defendants base this claim on their own "say so" and offer no evidence to meet their burden of showing what did cause this 96% price decline. *Id.*; *see In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 523 (S.D.N.Y. 2013) (holding defendants must prove that "something other than the alleged omissions or misstatements … caused plaintiffs' loss"). [22]Indeed, in the rare cases where Defendants have been able to prove a negative causation defense at summary judgment or trial, "they have not only submitted expert testimony, but have provided and discussed evidence attributing the decline to factors other than their own disclosure of financial results." *Adair*, 1998 WL 142353, at *7. Again, Defendants have not yet done so. There is no event study or other evidence yet in the record discussing the cause of the ADS's price declines on any day prior to April 29, 2022.[23] Until Defendants present such evidence, "any decline in value is presumed to be caused by the misrepresentation in the registration statement." *In re WRT Energy Sec. Litig.*, 2005 WL 2088406, at *1 (S.D.N.Y. Aug. 30, 2005) (granting motion to reconsider an initial decision to limit any recovery of losses to the period after a purported corrective disclosure was made).

Likewise, as to Defendants reliance on the unanalyzed price increase "following the disclosure of the Internal Review findings in July 2022 and again after the release of its 2021 Annual Report in November 2022," even under Defendants' mistaken view of burden, "whether … [these] reports constituted corrective disclosures that revealed [the] alleged omissions or

---

[22] *See also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007) ("[T]he burden of disproving loss causation falls on defendants.").

[23] Professor Merritt B. Fox (Columbia Law School) and Professor Edward G. Fox (University of Michigan Law School) have correctly observed that since Section 11(e) shifts the burden of proving loss causation to defendants, it is defendants' burden to disprove causation through analysis of the "statistical significance" of unrelated price movements. E.G. Fox, M.B. Fox, et al., *Economic Crisis and the Integration of Law and Finance: The Impact of Volatility Spikes*, 116 COLUM. L. REV. 325, 396-97 (2016).

misrepresentations … are issues of fact [that] are not appropriate for resolution in the motion to dismiss stage." *In re Facebook*, 986 F.Supp.2d at 523.

### C.  Plaintiffs Have Sufficiently Pled Their Section 12(A)(2) Claim

Defendants do not dispute Plaintiff's Section 12(a)(2) claims and have therefore waived their right to challenge it.[24] Claims under sections 11 and 12(a)(2) "are Securities Act siblings with roughly parallel elements, notable both for the limitations on their scope as well as the *interrorem* nature of the liability they create. *Morgan Stanley* , 592 F.3d at 359 (citing *Pinter v. Dahl*, 486 U.S. 622, 646, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988); *Huddleston,* 459 U.S. at 381–82 & n. 12). Because Plaintiffs have sufficiently pled Section 11 claim, Plaintiffs therefore also have sufficiently pled Section 12(a)(2) claim.

### D.  The Complaint Adequately Pleads Control Person Liability Under Section 15

Defendants dispute Section 15 claim only on the ground that Plaintiffs fail to plead a primary violation. Def. Br. at 25. Because Plaintiffs sufficiently plead Sections 11 and 12 claims, Plaintiffs have therefore pled Section 15 claim. [25]

### IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. [26]

---

[24] *See Conn. Bar Ass'n v. United States,* 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived.").

[25] *See Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp. I,* 2012 WL 601448, at *20 (E.D.N.Y. Feb. 23, 2012) ("[O]fficers and directors of the primary violator who signed the [misleading] registration statements" liable under Section 15.).

[26] Alternatively, if the Court grants any part of the Motion, Plaintiffs respectfully request leave to amend. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (holding that courts should be especially liberal in granting leaves to amend in cases of dismissed securities fraud claims).

DATED: February 10, 2023

**THE ROSEN LAW FIRM, P.A.**
*/s/ Phillip Kim*
Phillip Kim
Laurence M. Rosen
Jing Chen
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com
jchen@rosenlegal.com


**LABATON SUCHAROW LLP**
*/s/ Alfred L. Fatale III*
Alfred L. Fatale III
David J. Schwartz
Charles Wood
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
dschwartz@labaton.com
cwood@labaton.com

*Lead Counsel for Plaintiffs and the
Proposed Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Fax: (877) 590-0482
Email: brian@schallfirm.com

*Additional Counsel*

26