UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

JUAN CHEN, Individually and On Behalf of All   :    22-cv-9836 (JSR)
Others Similarly Situated,                       :

                            :

              Plaintiff,         :

v.                            :

                            :

MISSFRESH LIMITED, ZHENG XU, JUN     :
WANG, YUAN SUN, ZHAOHUI LI, COLLEEN  :
A. DE VRIES, HANSONG ZHU, J.P. MORGAN  :
SECURITIES LLC, CITIGROUP GLOBAL    :
MARKETS INC., CHINA INTERNATIONAL   :
CAPITAL CORPORATION HONG KONG     :
SECURITIES LIMITED, CHINA RENAISSANCE :
SECURITIES (HONG KONG) LIMITED,     :
HAITONG INTERNATIONAL SECURITIES   :
COMPANY LIMITED, CMB INTERNATIONAL  :
CAPITAL LIMITED, AMTD GLOBAL      :
MARKETS LIMITED, ICBC INTERNATIONAL  :
SECURITIES LIMITED, NEEDHAM &      :
COMPANY, LLC, CHINA MERCHANTS     :
SECURITIES (HK) CO., LIMITED, ABCI    :
SECURITIES COMPANY LIMITED, GF     :
SECURITIES (HONG KONG) BROKERAGE   :
LIMITED, FUTU INC., TIGER BROKERS (NZ)  :
LIMITED, and COGENCY GLOBAL, INC.,   :

                            :

              Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
MISSFRESH LIMITED, COLLEEN A. DEVRIES AND COGENCY GLOBAL, INC.'S
<u>MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT.........................................................................................................................2

I.   PLAINTIFFS FAIL TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION ..2

    A.   Missfresh Had No Duty to Disclose Unknown Internal Control Weaknesses ........2

    B.   Plaintiffs' Unsustainability Claim Is Based on Improper Hindsight Pleading ........4

    C.   The Restatement Was Immaterial..........................................................................7

II.  PLAINTIFFS' ALLEGED LOSSES WERE NOT CAUSED BY ANY
    MISSTATEMENT OR OMISSION IN THE OFFERING DOCUMENTS .......................9

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Adair v. Kay Kotts Associates Inc.*,
  No. 97 CIV. 3375(SS), 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) ...............................10

*Alpha Capital Anstalt v. Intellipharmaceutics International Inc.*,
  No. 19cv9270 (DLC), 2020 WL 3318029 (S.D.N.Y. June 18, 2020) .................................5

*Asay v. Pinduoduo Inc.*,
  No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ..................................................4

*In re Blue Apron Holdings, Inc. Securities Litigation*,
  No. 17-CV-4846 (WFK), 2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020)...........................4

*Coronel v. Quanta Capital Holdings Ltd.*,
  No. 07 Civ. 1405(RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ...............................3

*In re Duke Energy Corp. Securities Litigation*,
  113 F. App'x 427 (2d Cir. 2004) .......................................................................................10

*In re Hain Celestial Group, Inc. Securities Litigation*,
  20 F.4th 131 (2d Cir. 2021) ................................................................................................5

*Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings,
  Inc.*,
  422 F. Supp. 3d 821 (S.D.N.Y. 2019)..............................................................................4, 5

*In re HEXO Corp.Securities Litigation*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021)................................................................................5

*Horowitz v. Sunlands Technology Group*,
  No. 19-CV-3744 (FB) (SMG), 2021 WL 1224517 (E.D.N.Y. Mar. 31, 2021)...................4

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
  65 F.3d 1044 (2d Cir. 1995).................................................................................................9

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
  No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022).................................................7

*Meyer v. Jinkosolar Holdings Co.*
  761 F.3d 245 (2d Cir. 2014).................................................................................................4

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).................................................................................................5

*Peifa Xu v. Gridsum Holding Inc.*,
    No. 18 Civ. 3655 (ER), 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020)..........................7, 8

*SEC v. AT&T, Inc.*,
    No. 21 Civ. 1951 (PAE), 2022 WL 4110466 (S.D.N.Y. Sept. 8, 2022)..............................7

*SEC v. Monterosso*,
    768 F. Supp. 2d 1244 (S.D. Fla. 2011) ...............................................................................9

*Tabak v. Canadian Solar Inc.*,
    549 F. App'x 24 (2d Cir. 2013) ...........................................................................................7

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)................................................................................................9

*In re XP Inc. Securities Litigation*,
    524 F. Supp. 3d 23 (E.D.N.Y. 2021) ...................................................................................7

*Yaroni v. Pintec Technology Holdings Ltd.*,
    600 F. Supp. 3d 385 (S.D.N.Y. 2022).........................................................................3, 7, 8

**STATUTES**

15 U.S.C. § 77k(e) ..................................................................................................................10

15 U.S.C. § 77*l*(b) ..................................................................................................................10

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition (ECF No. 48) confirms that the Complaint is predicated on hindsight pleading and should be dismissed because the risks that later materialized were expressly disclosed and the Restatement had no impact on the Company's bottom line. *First*, the Opposition fails to establish that the Company had a duty to discover and disclose the internal control weaknesses that led to the Restatement sooner than it did. The Offering Documents expressly warned that the Company had not undertaken a comprehensive assessment of its internal controls (which it is exempt from having to do by SEC regulations) and that there could be existing issues the Company had not yet discovered. Plaintiffs do not even contend the Company was aware of the undisclosed issues as of the IPO, and the Company's later discovery and disclosure of those issues does not render the Offering Documents' warnings false or misleading.

*Second*, the Opposition similarly fails to establish that the Company had any obligation to declare in the Offering Documents that its business was "unsustainable." Plaintiffs' own allegations demonstrate that it was not until long after the IPO that the Company was forced to suspend operations after being unable to secure a needed capital infusion. While the Opposition asserts that "[t]he unsustainability of the Company's business model did not materialize overnight" (Opp. at 3), Plaintiffs do not—and cannot—point to any factual allegations demonstrating that the business was already unsustainable at the time of the IPO (more than a year before the Company suspended operations). This core failing defeats Plaintiffs' claim under any omission theory.

*Third*, the Opposition fails to establish that the Offering Documents were materially false or misleading simply because certain reported sales and revenue data was later restated. Plaintiffs

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 43) ("Opening Brief" or "Br."). All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

spill much ink arguing that sales and revenue are material metrics, but they fail to point to any factual allegations demonstrating that this particular overstatement of those metrics was material to investors.  To the contrary, it is undisputed that the Restatement (i) affected just 11% of sales and revenue for a single quarter reported in the Offering Documents, (ii) did not relate to the Company's primary business and (iii) had no impact on the Company's bottom line.  Indeed, Missfresh's ADS price increased slightly following the Restatement, confirming it was immaterial.

*Finally*, the Opposition's other arguments regarding causation and Sections 12(a)(2) and 15 are likewise meritless.  As demonstrated below and in the Opening Brief, the Complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION

#### A.    Missfresh Had No Duty to Disclose Unknown Internal Control Weaknesses

The Offering Documents, which included extensive risk disclosures detailing the limitations and uncertainties relating to Missfresh's internal controls, warned of the precise risks that materialized more than a year after its IPO.  (*See* Br. at 15–19.)  Contrary to Plaintiffs' assertion that "[n]o reasonable investors could deduce from Defendants' generic warnings[] that a . . . [material weakness] already existed at the time of the IPO" (Opp. at 16), Missfresh cautioned investors that neither it nor its auditor had completed "a comprehensive assessment of [its] internal control for purposes of identifying and reporting material weakness," and that "*[h]ad [it] performed a formal assessment . . . additional deficiencies may have been identified*." (Ex. A at 47.)  Investors were thus on notice that there may be *existing* material weaknesses that Missfresh had not yet discovered, which "could significantly hinder [its] ability to prevent fraud," cause it "to restate [its] financial statements for prior periods," "expose [it] to increased risk of fraud or

2

misuse of corporate assets and subject [it] to potential delisting." (*Id*. at 47–48.) [2]

The Offering Documents' warnings were not merely hypothetical. The Company disclosed certain instances of fraud it had uncovered (*id.* at 33) and a material weakness it had identified relating to its "lack of sufficient competent" personnel capable of designing and implementing adequate financial reporting policies and procedures (*id.* at 47). It also cautioned that it could not assure investors that such issues had been fully remediated or that it would be able to prevent similar issues in the future. (*Id.* at 33, 47.) Far from "generic," these disclosures were "extensive and reasonably specific . . . so as to constitute a real warning to investors." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 397 (S.D.N.Y. 2022).

Contrary to Plaintiffs' argument (Opp. at 15), these accurate disclosures about the Company's preliminary assessment of its internal controls did not create a duty to uncover and disclose every existing internal control weakness. Newly public companies like Missfresh are expressly exempt from having to undertake a comprehensive assessment of internal controls, as the Offering Documents specifically warned. (*See* Ex. A at 47 (describing SEC Release No. 33-8760).) Plaintiffs assert that by "putting internal controls at issue," Missfresh had a "duty to tell the whole truth." (Opp. at 15.) But the duty to tell the whole truth requires only disclosure of facts "necessary to prevent existing disclosures from being misleading." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010). The Offering Documents accurately disclosed the Company's preliminary assessment of its internal controls, the limits of that assessment, the

---

[2]    The Opposition does not even contend that Missfresh was aware of any undisclosed internal control issues at the time of the IPO. (Opp. at 15.) *See Coronel v. Quanta Cap. Holdings Ltd.*, No. 07 CIV. 1405 (RPP), 2009 WL 174656, at *13 (S.D.N.Y. Jan. 26, 2009) ("The relevant inquiry under the Securities Act is . . . whether the facts alleged in the Complaint evince that the Company knew or had reason to believe, at the time the Prospectus and Registration Statement were filed, that the statement was untrue.").

material weakness it had identified, and the risk that there might be other then-existing material weaknesses that the Company had not yet discovered.  (Ex. A at 33, 47-48.)  None of that is rendered misleading by the existence of other undiscovered material weaknesses—precisely as the Offering Documents warned could be the case.  *See Asay v. Pinduoduo Inc.*, No. 20-1423, 2021 WL 3871269, at *3 (2d Cir. Aug. 31, 2021) (alleged failure to disclose existing but undiscovered counterfeiting was not misleading where offering documents disclosed the risk of counterfeiting, gave "contemporaneous examples of anti-counterfeiting failures and risks," and warned of "uncertainty as to the very possibility of maintaining adequate compliance").  By contrast, in *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014), on which Plaintiffs rely, the company misleadingly gave the impression that there were no existing pollution issues by stressing its "pollution-preventing equipment and 24–hour monitoring teams," which "gave comfort to investors that reasonably effective steps were being taken to comply with applicable environmental regulations."  *Id.* at 251.  Here, unlike *Jinkosolar* and like *Pinduoduo*, Missfresh expressed uncertainty, not comfort, regarding its internal controls.[3]

### B.    Plaintiffs' Unsustainability Claim Is Based on Improper Hindsight Pleading

The Opposition confirms that Plaintiffs' claim that the Offering Documents should have declared Missfresh's business "unsustainable" is based purely on hindsight—specifically, on the

---

[3]    Additionally, in *Jinkosolar*, the company reported substantial pollution issues to regulators three weeks after the IPO, 761 F.3d at 251, unlike here, where Missfresh did not discover the issues in its Next-Day Delivery unit until 10 months after the IPO.  Plaintiffs' other cases likewise involve allegations supporting an inference that defendants were aware of the undisclosed issues.  *See In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK), 2020 WL 1950783, at *8 (E.D.N.Y. Apr. 22, 2020) ("there is no question Defendants were aware of the existence of significant delays"); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 840 (S.D.N.Y. 2019) (defendant admitted issues began in December 2016, before March 2017 disclosure); *Horowitz v. Sunlands Tech. Grp.,* No. 19-CV-3744 (FB) (SMG), 2021 WL 1224517, at *3 (E.D.N.Y. Mar. 31, 2021) (alleging "pervasive" and "obviously illegal wrongdoing").

fact that Missfresh eventually suspended its delivery operations ***more than a year after the IPO***. (*See* Opp. at 17–21.)  Such hindsight allegations fail as a matter of law.  *See, e.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 (S.D.N.Y. 2021).  The Opposition's hairsplitting regarding what Missfresh knew, what it should have known, and what was "knowable" (Opp. at 17–18) not only misstates the law (*see supra* n.2) but also is beside the point.  Plaintiffs' claim fails under any of these tests, as Plaintiffs allege no facts whatsoever from which the Court could infer that, ***as of the IPO***, Missfresh's business was unsustainable and would be shut down—much less that anyone at the Company believed that to be the case (or should have).  To the contrary, Missfresh successfully continued operations for more than a year after the IPO before its critical cashflow shortage.  It is axiomatic that the federal securities laws do not require clairvoyance. *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).[4]

Grasping for any connection to facts existing as of the IPO, the Opposition suggests that the Company's eventual suspension of operations had something to do with the conduct underlying the Restatement.  (Opp. at 18.)  But Plaintiffs invent this purported connection out of whole cloth and fail to support it with any factual allegations.[5]  The Company never attributed the suspension of operations to the conduct underlying the Restatement.  (*See* Exs. J, M.)  Moreover, Plaintiffs allege no facts showing how or why isolated misconduct in the Next-Day Delivery business would

---

[4]   Plaintiffs' cases involved undisclosed facts known to defendants as of the offering.  *See, e.g.*, *Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*, No. 19-cv-9270 (DLC), 2020 WL 3318029, at \*3 (S.D.N.Y. June 18, 2020) (CEO allegedly admitted that he knew, as of the IPO, that CFO planned to resign weeks later); *AMC*, 422 F. Supp. 3d at 840 (CEO allegedly admitted on earnings call that he knew, as of secondary offering, of issues with recent acquisition).

[5]   Neither the Complaint nor the Opposition ever specifies exactly what business practices Plaintiffs believe rendered Missfresh's business unsustainable, unlike the cases on which Plaintiffs rely.  *See, e.g.*, *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 137 (2d Cir. 2021) (remanding to consider whether attribution of high sales to strong demand was misleading because sales allegedly were driven by undisclosed channel stuffing).

later require the Company to shutter its primary DMW business.  In reality, the shutdown had nothing to do with the Restatement.  As Plaintiffs acknowledge elsewhere, the unfortunate reality was simply that Missfresh "had run out of money as the previously announced funding of RMB200 million from Shanxi Donghui had failed to materialize."  (AC ¶ 86 (citing Ex. E); *see also* Ex. I at F-56 (explaining that the suspensions of the DMW and Next-Day Delivery businesses both were "as result of" the cashflow shortage and failure of the Shanxi Donghui deal).)[6]

Plaintiffs' failure to allege any facts tying the eventual suspension of operations to the Restatement or any other facts existing as of the IPO is fatal under any theory of omission.  To the extent Plaintiffs point to Items 303 and 105, the Offering Documents discussed at length the risks associated with Missfresh's business as of the IPO—including its limited operating experience and history of net losses, ongoing challenges from China's severe COVID-19 restrictions, and the substantial capital needed to operate, which was not guaranteed.  (*See* Br. at 20-21 (citing Ex. A at 20, 24–25, 42, 45).)  Plaintiffs fault these disclosures for not specifically warning that the Company "would need to terminate its next-day delivery business" and "that all of the Company's online business would need to be shut down" (Opp. at 20), but Plaintiffs do not and cannot allege that Defendants knew or had reason to know of these specific risks as of the IPO.  That the suspended business lines were material to the Company and discussed in the Offering Documents (Opp. at 19–20) does not mean Defendants had a crystal ball to foresee, at the time of the IPO, that those business lines would be beset by a confluence of internal and external challenges that

---

[6]    When the Company suspended its primary DMW delivery business in July 2022, it stated that it would "make every effort to maintain normal operations in its next-day delivery business." (Ex. M at 1.)  But this too proved unsustainable and was also suspended by time the Company issued its Form 20-F in November 2022.  (Ex. I at 13.)

rendered them unsustainable more than a year later.[7]

### C.    The Restatement Was Immaterial

Finally, the Opposition fails to establish that the Offering Documents were materially false or misleading simply because certain financial data was later restated. (Opp. at 7-14.) Contrary to Plaintiffs' suggestion (*id.* at 7), the mere fact of a restatement does not establish their *prima facie* case. (*See* Br. at 22.) Rather, Plaintiffs must also plead materiality by alleging "why these changed line items would have been viewed by the reasonable investor as having significantly altered the total mix of information made available," which they have failed to do. *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020). Materiality is assessed "in the context of the company's total operations." *Id.*; *see also In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 36 (E.D.N.Y. 2021) ("It is the absolute effect on the company, not the relative change, that determines materiality."). Yet, Plaintiffs focus only on sales and net revenues, ignoring that "gross profit remained the same before and after the restatement." *Yaroni*, 600 F. Supp. 3d at 402. When the changes to sales and net revenues are viewed in the context of Missfresh's total operations, the quantitative impact is **zero**, because net revenues and costs of revenues were misstated by the same offsetting amount. (Ex. J at 2; Ex. I at 117.)[8]

---

[7]    Plaintiffs' cases mandate disclosure only of existing facts. *See, e.g.*, *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, No. 21-2524, 2022 WL 17815767, at *3–4 (2d Cir. Dec. 20, 2022) (disclosure of the presently-expected material impact of known impending regulation).

[8]    Plaintiffs try to distinguish *Yaroni* because here "the overstatements in sales of products and revenues were fictitious and therefore were completely erased upon restatement." (Opp. at 11.) But that does not change the fact that the overall impact on the Company's bottom line was zero. *See Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 27–28 (2d Cir. 2013) (0.9% restatement was immaterial even though caused by "improperly recorded sham transactions"). Even *SEC v. AT&T, Inc.*, No. 21 CIV. 1951 (PAE), 2022 WL 4110466 (S.D.N.Y. Sept. 8, 2022), which Plaintiffs cite, acknowledges that "profit neutral" changes can be immaterial. *Id.* at *49. There, unlike here, the SEC submitted evidence that the changes had in fact impacted the company's profit margins. *Id.* at *51–52.

Nevertheless, Plaintiffs contend that net revenues is a material metric "in the context of the company's total operations" because it was listed among the three "key components" of Missfresh's "results of operations." (Opp. at 9–10.) But the question is whether the Restatement was material, not whether the line item category was material. Moreover, costs of revenues was also listed among the "key components," confirming that both metrics must be considered together to assess any impact on the Company's total operations. (Opp. at 10 n.6.)

Plaintiffs' claim that "the restatement . . . virtually wipe[d] out the entire business's operations" (Opp. at 10) improperly conflates the Restatement relating to the Next-Day Delivery business (AC ¶¶ 82–83) with the unrelated shutdown of Missfresh's DMW operations due to lack of funding (*id.* ¶ 85). The Restatement had no impact on the primary DMW business, which accounted for 85% of total net revenues. (*Id.*)[9]

Viewed in the context of Missfresh's total operations, the Restatement of Q1 2021 financials did not change the "total mix" of information. This is particularly so because, unlike the cases Plaintiffs cite, the Offering Documents expressly warned that the Company could be required "to restate [its] financial statements *for prior periods*" due to compliance issues that the Company's still-developing internal controls systems might be unable to prevent and timely detect. (Ex. A at 47–48.) *See Yaroni*, 600 F. Supp. 3d at 397 (restatement of revenue insufficient to state a claim where company warned it might "be required to restate [its] financial statements from prior periods"); *Peifa Xu*, 2020 WL 1508748, at *8 (warning that errors "*will not* be prevented or

---

[9]    Unlike here, Plaintiffs' cases involve misstatements that had a material impact on an important segment, notwithstanding the relatively minor impact on overall financials. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 719–20 (2d Cir. 2011) (largest investment in "flagship segment" was material); *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 737–38 (S.D.N.Y. 2015) (loss of major client in "high margin segment" that "generate[d] large sums to reinvest in other areas of the business was material).

detected on a timely basis" insufficient to warn of restatement of past financials (emphasis in original)). The fact that Missfresh's ADS price ***increased*** on the day of the Restatement further supports that it was not material. *See SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1265 (S.D. Fla. 2011) ("[W]hether a public company's stock price moves up or down . . . may be relevant to materiality"). The price movements Plaintiffs cite all pre-date the Restatement (Opp. at 13), and thus cannot be used to assess the Restatement's materiality.[10]

## II.    PLAINTIFFS' ALLEGED LOSSES WERE NOT CAUSED BY ANY MISSTATEMENT OR OMISSION IN THE OFFERING DOCUMENTS

Dismissal also is warranted because Plaintiffs' alleged losses were not caused by the alleged misstatements or omissions. (Br. at 24–25.) Contrary to Plaintiffs' insistence (Opp. at 21–22), Defendants do not have to prove what caused the loss, only that it was not caused by the alleged misstatements or omissions. 15 U.S.C. § 77k(e) (barring recovery if defendant "proves that . . . such damages represent[] other than the depreciation in value of such security resulting from [the alleged misstatements or omissions]"); *id.* § 77*l*(b) (same). Defendants did just that by showing, on the face of the Complaint, that Missfresh's ADS price had already declined 96% from its $13.00 IPO price to $0.52 ***before*** the Company announced the delay of its 2021 Form 20-F filing and the Internal Review that led to the Restatement. (Ex. B at 5.) As a matter of law, any "losses" before the alleged "truth" was revealed cannot be charged to Defendants. *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995). The absence of loss causation is

---

[10]    Plaintiffs' reference to GAAP rules requiring a restatement for material changes does not establish that the Restatement here was material. (*See* Opp. at 9.) Nothing in GAAP prevents a company from issuing a restatement for even immaterial revisions in the interest of accuracy and transparency. Notably, the Restatement does not say the changes were material. (Ex. J.) To the extent Plaintiffs argue that these GAAP rules render false Missfresh's statement that its disclosures were "prepared and presented in accordance" with GAAP, these allegations are not in the Complaint, and Plaintiffs cannot "amend [their complaint] through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

confirmed by the lack of any price drop when Missfresh announced the Restatement and underlying misconduct on July 1, 2022.  (*See* Br. at 25.)[11]

The Opposition points instead to the price drops following (i) the April 29, 2022 announcement of the delayed 2021 Form 20-F filing and the Internal Review, and (ii) the May 24, 2022 announcement of the NASDAQ noncompliance notice.  (Opp. at 22–23.)  But, on their face, these announcements did not reveal the purported truth that Plaintiffs claim was concealed or misrepresented.  The April 29 announcement merely stated that the Audit Committee was "conducting an internal review of certain matters including those relating to transactions between the Company and certain third-party enterprises."  (AC ¶ 80; Ex. H.)  The May 24 announcement did not reveal any new material information; it simply reported NASDAQ's acknowledgment of the Company's already-disclosed delay in filing its Form 20-F.  (AC ¶ 81; Ex. K.)

### CONCLUSION

For the reasons demonstrated above and in the Opening Brief, Defendants respectfully request that the Amended Class Action Complaint be dismissed in its entirety with prejudice.  *See In re Duke Energy Corp. Sec. Litig.*, 113 F. App'x 427, 427 (2d Cir. 2004) (affirming dismissal with prejudice "where plaintiffs failed to file a proper motion to amend or a proposed amendment and where they have already had one opportunity to amend").[12]

---

[11]  *Adair v. Kay Kotts Associates Inc.*, No. 97 CIV. 3375(SS), 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998), on with Plaintiffs rely, did not involve an attempt to recover pre-disclosure losses, as Plaintiffs seek here.

[12]  Defendants did not waive any challenge to Plaintiffs' Section 12(a)(2) claims.  (*See* Opp. at 25.)  The Motion seeks dismissal of the Complaint "in its entirety."  (*See* Br. at 2, 25; *see also* ECF No. 42 (Notice of Motion).)  The Opening Brief expressly argues that Plaintiffs' Section 11 and Section 12(a)(2) claims fail for the same reasons.  (*See* Br. at 15 (Sections 11 and 12(a)(2) both require a material misstatement or omission; *id.* at 25 (lack of causation is an affirmative defense under Section 11, 15 U.S.C. § 77k(e), and Section 12, 15 U.S.C. § 77*l*(b)).)

Dated:  New York, New York
       February 17, 2023

Respectfully submitted,


*/s/ Robert A. Fumerton*
Scott D. Musoff
  (scott.musoff@skadden.com)
Robert A. Fumerton
  (robert.fumerton@skadden.com)
Michael C. Griffin
  (michael.griffin@skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Defendants Missfresh Limited,*
*Cogency Global, Inc., and Colleen A. DeVries*