UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :

JUAN CHEN, Individually and On Behalf of All     :    1:22-cv-09836-JSR
Others Similarly Situated,                         :

                                              :

               Plaintiff,              :    **ECF Case**
v.                                     :    **Electronically Filed**

                                              :

MISSFRESH LIMITED, ZHENG XU, JUN WANG,   :
YUAN SUN, ZHAOHUI LI, COLLEEN A. DE        :
VRIES, HANSONG ZHU, J.P. MORGAN           :
SECURITIES LLC, CITIGROUP GLOBAL         :
MARKETS INC., CHINA INTERNATIONAL      :
CAPITAL CORPORATION HONG KONG        :
SECURITIES LIMITED, CHINA RENAISSANCE     :
SECURITIES (HONG KONG) LIMITED, HAITONG  :
INTERNATIONAL SECURITIES COMPANY        :
LIMITED, CMB INTERNATIONAL CAPITAL      :
LIMITED, AMTD GLOBAL MARKETS LIMITED,  :
ICBC INTERNATIONAL SECURITIES LIMITED,   :
NEEDHAM & COMPANY, LLC, CHINA          :
MERCHANTS SECURITIES (HK) CO., LIMITED,  :
ABCI SECURITIES COMPANY LIMITED, GF      :
SECURITIES (HONG KONG) BROKERAGE       :
LIMITED, FUTU INC., TIGER BROKERS (NZ)      :
LIMITED, and COGENCY GLOBAL, INC.,       :

                                              :

               Defendants.            :

                                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Defendant Missfresh Limited*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................4

I.    LEAD PLAINTIFFS MUST FIRST MAKE REASONABLE ATTEMPTS AT
      SERVICE THROUGH THE HAGUE CONVENTION ........................................4

II.   LEAD PLAINTIFFS' PROPOSED ALTERNATIVE SERVICE METHODS ARE
      PROHIBITED UNDER THE HAGUE CONVENTION ........................................7

III.  CERTAIN OF LEAD PLAINTIFFS' PROPOSED METHODS OF SERVICE
      WOULD VIOLATE DUE PROCESS....................................................................9

IV.   THE COURT SHOULD REJECT PLAINTIFFS' REQUEST TO REQUIRE
      MISSFRESH AND SKADDEN TO PROVIDE CERTAIN PERSONAL
      INFORMATION TO MINIMIZE OFFENSE TO FOREIGN LAW ...............................10

CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Resource Ltd.*,
No. 15 CIV. 1671 (JSR), 2015 WL 6437384 (S.D.N.Y. Oct. 19, 2015) ...................6, 7, 12

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*,
385 F. Supp. 3d 212 (S.D.N.Y. 2019)...............................................................................5, 6

*Group One Ltd. v. GTE GmbH*,
523 F. Supp. 3d 323 (E.D.N.Y. 2021) ..................................................................................8

*Juul Labs, Inc. v. Chou*,
No. 2:21-cv-03056-DSF-PDX, 2022 WL 2161062 (C.D. Cal. Apr. 19, 2022).................11

*Kaws Inc. v. Individuals, Corps., Ltd. Liability Cos., Partnerships, & Unincorporated Ass'ns Identified on Schedule A*,
No. 22-CV-9073, 2022 WL 17404520 (S.D.N.Y. Dec. 2, 2022) .........................................8

*Klosin v. E.I. Du Pont de Nemours & Co.*,
No. 19-CV-00109, 2020 WL 12949469 (W.D.N.Y. July 17, 2020) ....................................8

*SEC v. China Northeast Petroleum Holdings Ltd.*,
27 F. Supp. 3d 379 (S.D.N.Y. 2014).........................................................................4, 5, 8, 9

*Safavieh Intl, LLC v. Chengdu Junsen Fengrui Technology Co.-Tao Shen*,
No. 23 Civ. 3960, 2023 WL 3977505 (S.D.N.Y. June 13, 2023) .......................................8

*Smart Study Co. v. Acuteye-Us*,
620 F. Supp. 3d 1382 (S.D.N.Y. 2022), *appeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*, No. 22-1810-CV, 2023 WL 3220461 (2d Cir. May 3, 2023) .................................................................................................................5, 7, 8

*Sulzer Mixpac AG v. Medenstar Industries Co.*,
312 F.R.D. 329 (S.D.N.Y. 2015) ....................................................................................8, 9

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988).............................................................................................................4

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017)........................................................................................................1, 8

*Zhang v. Baidu.com Inc.*,
932 F. Supp. 2d 561 (S.D.N.Y. 2013)..................................................................................4

*ZURU Inc. v. Individuals, Partnerships, & Unincorporated Ass'ns Identified on Schedule "A,"*
    1:23-CV-01852-ER, 2023 WL 2432477 (S.D.N.Y. Mar. 9, 2023) .....................................8

**RULES**

Fed. R. Civ. P. 4(f)(1), (3)..........................................................................................................4, 11

**OTHER AUTHORITIES**

*China – Central Authority & Practical Information*, Hague Conference on Private
    International Law,
    https://www.hcch.net/en/states/en/states/authorities/details3/?aid=243 (last
    updated Jan. 17, 2023) ......................................................................................................7

**PRELIMINARY STATEMENT**

Defendant Xu Zheng—the chief executive officer of Missfresh Limited ("Missfresh" or "the Company")—has authorized Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to accept service on his behalf, thereby mooting Lead Plaintiffs' motion for alternative service on him. Lead Plaintiffs' arguments with respect to the other individual Defendants—with whom Skadden has had no contact with respect to this Action—are meritless and should be rejected. Lead Plaintiffs acknowledge that Defendants Zhaohui Li, Jun Wang, Yuan Sun and Hansong Zhu (the "Former Directors") all left Missfresh *before* November 4, 2022, when Lead Plaintiffs tried to serve three of them at Missfresh's headquarters under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). Unsurprisingly, that service attempt was unsuccessful because the individuals were no longer affiliated with the Company. It appears that Lead Plaintiffs then waited nearly a year before even *attempting* to identify these Defendants' residential addresses. Lead Plaintiffs identify no reason for their failure to undertake reasonable, diligent efforts to identify these Defendants' addresses, and state only that on October 28, 2023, Lead Counsel contacted an unnamed investigator in China who represented, without any apparent basis, that identification of the relevant residential addresses "cannot be guaranteed." As demonstrated below, these meager "attempts" at Hague service are insufficient to justify alternative service and Plaintiffs' Motion for Alternative Service ("Motion") should be denied.

First, because Plaintiffs have not even attempted to identify the residential addresses of the Former Directors, they fail to make the requisite showing that they have undertaken reasonably diligent efforts to effectuate service and that the Court's intervention is necessary at this time. Second, Lead Plaintiffs' proposed methods of alternative service are prohibited under the Hague Convention. In light of the Supreme Court's holding in *Water Splash, Inc. v. Menon*, 581 U.S.

271 (2017), several courts in this Circuit have recently held that alternative methods of service not specifically authorized under the Hague Convention, including the methods proposed here, are not permitted wherever the Convention applies. Third, several of Plaintiffs' proposed methods of alternative service do not comport with due process, as they are not reasonably calculated to give notice to the relevant Defendants. Finally, Plaintiffs' request to compel Missfresh and Skadden to produce, within five days, certain personal information relating to these former employees would violate China's Personal Information Protection Law ("PIPL") and should be rejected pursuant to Rule 4 of the Federal Rules of Civil Procedure.

For these reasons, as explained in further detail below, Defendant Missfresh respectfully requests that Plaintiffs' Motion for Alternative Service be denied.

## BACKGROUND

On July 12, 2022, a purported shareholder initiated this putative securities class action. (ECF No. 1.)  On September 19, 2022, Plaintiffs served the initial complaint on Missfresh through its authorized U.S. representative.  On November 4, 2022, Plaintiffs first dispatched formal service requests pursuant to the Hague Convention on Defendants Li, Wang and Sun at Missfresh's headquarters.  (Kim Decl. at 5.)  However, all three individuals had already resigned from their roles at Missfresh: Defendant Li resigned on November 11, 2021 (*Id.* at 17) and Defendants Wang and Sun resigned on September 9, 2022 (*Id.* at 19-20.)

On December 28, 2022, Lead Plaintiffs filed the operative Amended Complaint, alleging that Missfresh's Offering Documents prepared for its June 2021 IPO contained material misstatements or omissions in violation of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933.  (ECF No. 34.)   On January 27, 2023, the served Defendants filed their respective motions to dismiss the Amended Complaint.  In their motion, Defendants Missfresh, Cogency Global, Inc.

and Colleen A. Devries argued that the Amended Complaint should be dismissed for failure to state a claim because (i) Plaintiffs failed to state a material misstatement or omission regarding the Company's internal controls, the sustainability of its business and a restatement of certain financials; and (ii) negative causation was apparent on the face of the Amended Complaint. (ECF No. 43.)  On January 30, 2023, Plaintiffs dispatched formal service requests on the Former Directors at Missfresh headquarters. (Kim Decl. at 6.) Like Wang and Sun, Zhu had also resigned from Missfresh on September 9, 2022 (*Id.* at 18), meaning all four individuals had resigned from Missfresh at the time of either attempted service.

On September 12, 2023, this Court issued an order granting in part and denying in part Defendants' motion to dismiss.  Specifically, the Court dismissed all of Plaintiffs' claims except with respect to the Company's restatement of certain financials.  (ECF No. 69.)

On September 13, 2023, Plaintiffs' counsel claims to have received notices from the Chinese government, all dated July 19, 2023, informing them that none of the attempted services of process had been successful, because there was "no such person at the address provided."  (Kim Decl. at 7.)

On September 28, 2023, the Court issued a case management plan.  (ECF No. 76.)  In accordance with that plan, on October 26, 2023, Lead Plaintiffs served their First Set of Interrogatories and Requests for Production, which included requests for certain personal information regarding Individual Defendants.  The served Defendants' responses and objections to these discovery requests are due on November 27, 2023.

On November 6, 2023, the Court issued its full opinion detailing the basis for its earlier order.  (ECF No. 79.)  The same day, Lead Plaintiffs filed the instant Motion for Alternative Service.

## ARGUMENT

Defendant Xu Zheng has authorized Skadden to accept service on his behalf. Lead Plaintiffs' Motion for Alternative Service should be denied with respect to the Former Directors—all of whom left Missfresh over a year ago and with whom Skadden has had no contact with respect to this Action.

## I.   LEAD PLAINTIFFS MUST FIRST MAKE REASONABLE ATTEMPTS AT SERVICE THROUGH THE HAGUE CONVENTION

Rule 4(f) of the Federal Rules of Civil Procedure provides that any individual may be served outside the United States "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . or (3) by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3). As "both the United States and China are signatories to the Hague Convention, that pact governs service of process by transmittal of documents abroad in this case." *Zhang v. Baidu.com Inc.,* 932 F. Supp. 2d 561, 565 (S.D.N.Y. 2013). "[C]ompliance with the Convention is **mandatory** in all cases to which it applies . . . ." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705 (1988) (emphasis added).

"[D]istrict courts in this Circuit generally impose two additional threshold requirements before authorizing service under Rule 4(f)(3): (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *SEC v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014). Even where a plaintiff has made an initial attempt at service through the Hague Convention, "*significant efforts* to make service under the Hague Convention should be required by a court before alternative service is ordered." *Id*. (emphasis in original). This requires a showing that "plaintiffs have been unable, despite *diligent efforts*, to serve the defendant in the

4

[foreign country] according to the Hague [] Convention procedures." *Id.* (emphasis and alterations in original). "These requirements are imposed in order to prevent parties from 'whimsically seeking an alternate means of service.'" *Id.*

Lead Plaintiffs fail to show that they reasonably attempted service through the Hague Convention. Rather, their Motion suggests that they have not even ***attempted*** to locate the residential addresses of the Former Directors in China—a significant failing given their admission that these Defendants all left the Company ***before*** Lead Plaintiffs first attempted service at Missfresh's headquarters on November 4, 2022. (Mot. at 2; Kim. Decl. at 2-3.) Lead Plaintiffs contend only that on October 28, 2023—more than a month after receiving notice from the Chinese government that their initial attempts at service had failed—Lead Counsel contacted an unnamed investigator about "the *possibility* of locating the Individual Defendants' residential addresses in China," who purportedly informed Lead Counsel that identifying those addresses "cannot be guaranteed." (Kim Decl. at 2-3 (emphasis added).) This vague assertion does not specify whether this unnamed investigator even ***attempted*** to locate the residential addresses of these Defendants, let alone the basis for this statement, including how long it would take or how difficult it would be to obtain such information. *See Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (denying motion for alternative service where plaintiff failed to make an adequate showing regarding the "difficulty and delay of service of process in China"). Nor does it appear that Plaintiffs undertook "diligent efforts" to accomplish service by other means, including by "conduct[ing] a meaningful investigation to ascertain [these Defendants'] whereabouts." *China Ne. Petroleum*, 27 F. Supp. 3d at 398; *see also Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1391 (S.D.N.Y. 2022) ("Cases in which plaintiffs have been found to have exercised reasonable diligence to discover a physical address include where the plaintiff . . .

5

completed multiple Internet-based searched [sic], called known phone numbers, and conducted in-person visits, . . . where the plaintiff performed 'extensive investigation and [issued] subpoenas to the relevant domain registrars and email providers,' . . . and where a plaintiff has "attempted to obtain [the defendant's] address in a variety of ways." (alterations in original)), *appeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*, No. 22-1810-CV, 2023 WL 3220461 (2d Cir. May 3, 2023).

Lead Plaintiffs also fail to show that the Court's intervention is necessary. They contend that intervention is required "because service through the Hague Convention would unnecessarily delay this case." (Mot. at 4.) However, Lead Plaintiffs' "desire to move quickly" is "no excuse to flout procedural rules." *Baliga*, 385 F. Supp. 3d at 220. Indeed, this Court has denied motions for alternative service where, as here, plaintiffs were informed after their first attempt at service through the Hague Convention that defendants were no longer located at the address used, but obtained another address through the exercise of reasonable diligence. *Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd.*, No. 15 CIV. 1671 (JSR), 2015 WL 6437384, at *1, *3 (S.D.N.Y. Oct. 19, 2015) (Rakoff, J.) (denying alternative service given the "availability of this option" to serve defendants at another address through the Hague Convention). Because Lead Plaintiffs have not even attempted to locate a residential address for the Former Directors, they fail to show that the Court's intervention is necessary at this time.

Moreover, Lead Plaintiffs ignore their own contribution to any purported "delay." As they admit, Defendant Li left Missfresh on November 11, 2021—*a year before* Lead Counsel dispatched formal service requests on November 4, 2022—and Defendants Wang, Sun and Zhu left Missfresh on September 9, 2022, *two months before* Lead Counsel first attempted service through the Hague Convention. (Mot. at 2; Kim Decl. at 2-3.) Despite having adequate notice of

these Defendants' departure from the Company, Lead Counsel attempted service on those Defendants at Missfresh's headquarters in China at an address purportedly provided in the Company's SEC filings, and, as explained above, has made no effort to locate those Defendants' residential addresses in the year since this initial attempt.  (Kim Decl. at 2.)  Hence, the return of these service requests was a foreseeable consequence of Lead Plaintiffs' own lack of diligence, as they knew before attempting service that the Former Directors had left the Company and were unlikely to be found at Missfresh's business address.

Because Lead Plaintiffs fail to show that they made reasonable efforts to serve the Former Directors through the Hague Convention, and fail to show that the Court's intervention is necessary, their Motion should be denied.

## II.     LEAD PLAINTIFFS' PROPOSED ALTERNATIVE SERVICE METHODS ARE PROHIBITED UNDER THE HAGUE CONVENTION

The Hague Convention "permits alternative methods of service unless the receiving country objects." *Smart Study*, 620 F. Supp. 3d at 1392.  China has specifically objected to service "by postal channels." *See China – Central Authority & Practical Information*, Hague Conference on Private Int'l Law, https://www.hcch.net/en/states/en/states/authorities/details3/?aid=243 (last updated Jan. 17, 2023).  Although Lead Plaintiffs seek to serve Defendants Wang and Sun via FedEx at a residential address outside of China, they do not state where such service would take place, nor do they appear to have undertaken any investigation to ascertain where these Defendants may reside.  Because Plaintiffs fail to show that such methods would not violate any international agreement, this request should be denied.  *See Altos*, 2015 WL 6437384, at *3 (Rakoff, J.) (denying motion for alternative service as premature, but allowing plaintiff's counsel to contact the Court after they undertake reasonable efforts to properly effectuate service through the Hague Convention).

Moreover, "[a]s numerous courts have recognized, binding Supreme Court precedent indicates . . . that methods of service that are not specifically authorized are impermissible under the [Hague] Convention." *Smart Study*, 620 F. Supp. 3d at 1393. Specifically, in 2017, the Supreme Court held that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash*, 581 U.S. at 273. As several courts have recently recognized, the Supreme Court's holding in *Water Splash* indicates that service by email—which is not mentioned anywhere in the Hague Convention—is not permitted under the Convention, particularly where the relevant country has objected to service by postal channels. *Smart Study*, 620 F. Supp. 3d at 1394-96; *see Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, No. 23 Civ. 3960 (CM), 2023 WL 3977505, at *5 (S.D.N.Y. June 13, 2023) (collecting cases).[1] By the same logic, service by publication, text message or social media are also not permitted under the Hague Convention, which makes no mention of these forms of service. *See Smart Study*, 620 F. Supp. 3d at 1396 ("To infer that the Convention's silence as to a particular method [of service] equates to an implied permission to use virtually *any* method of service not proscribed by the Convention contravenes that purpose.");

[1]  Although this Court has held that service by email is permitted under the Hague Convention, *see Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. 329, 332 (S.D.N.Y. 2015), that decision predates the Supreme Court's holding in *Water Splash*. As the court noted in *Safavieh*, although some courts, particularly before *Water Splash*, have held that service by email is permitted under the Hague Convention, "recently, courts in this Circuit have begun to shift the other way." *See Safavieh*, 2023 WL 3977505, at *5 (collecting cases). Plaintiffs' cases are inapposite, as they either pre-date *Water Splash*, or fail to engage meaningfully or at all with the Supreme Court's holding. *See, e.g.*, *ZURU Inc. v. Individuals, P'ships & Unincorporated Assn's Identified on Schedule "A,"* No. 1:23-CV-01852-ER, 2023 WL 2432477 (S.D.N.Y. Mar. 9, 2023); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021); *Klosin v. E.I. Du Pont de Nemours & Co*., No. 19-CV-00109, 2020 WL 12949469, at *2 (W.D.N.Y. July 17, 2020); *cf. Kaws Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to Complaint*, No. 22-CV-9073 (JPO), 2022 WL 17404520, at *2 (S.D.N.Y. Dec. 2, 2022) (granting service by publication only as to defendants not domiciled in China).

*Safavieh*, 2023 WL 3977505, at \*4 ("[P]laintiff must serve the defendants via the Chinese central authority, the only method authorized by the Hague Convention."). Hence, Plaintiffs' proposed methods of alternative service are prohibited by international agreement.

## III.   CERTAIN OF LEAD PLAINTIFFS' PROPOSED METHODS OF SERVICE WOULD VIOLATE DUE PROCESS

In addition to the issues outlined above, Lead Plaintiffs' Motion should be denied because several of their proposed methods of alternative service do not comport with due process. "Service pursuant to Rule 4(f)(3) must comply with constitutional notions of due process and constitute 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *China Ne. Petroleum*, 27 F. Supp. 3d at 398. Even if Lead Plaintiffs proposed methods of service were permitted under the Hague Convention (they are not), where, as here, they "'present[] no evidence that [the proposed methods] are likely to reach Defendants,' then plaintiff's motion for alternative service . . . should be denied." *Id.* at 399; *see also Sulzer*, 312 F.R.D. at 331 (Rakoff, J.) ("[A]s a general matter, in those cases where service by email has been judicially approved, the movant supplied the Court with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.")

Here, although Lead Plaintiffs admit that the Former Directors all left Missfresh over a year ago, Lead Plaintiffs make no attempt to show that the contact information Missfresh or Skadden has on file is current or likely to reach those Defendants. (Mot. at 2.) Nor have Lead Plaintiffs presented any evidence demonstrating that service via the investor relations email addresses of companies not named in this Action are likely to reach Defendants, who serve as directors of those companies and are not alleged to have access to those email accounts or be in regular contact with any person who does access those accounts. *China Ne. Petroleum*, 27 F.

9

Supp. 3d at 399 (service by email "would only be permissible . . . if [plaintiff] provides evidence that an email to [a third party] would likely be relayed to [defendant].")  Because none of these proposed methods comport with due process, they should be rejected.

**IV.    THE COURT SHOULD REJECT PLAINTIFFS' REQUEST TO REQUIRE MISSFRESH AND SKADDEN TO PROVIDE CERTAIN PERSONAL INFORMATION TO MINIMIZE OFFENSE TO FOREIGN LAW**

Even if some form of alternative service were warranted here (it is not), the Court should reject Lead Plaintiffs' request to compel Missfresh or Skadden to provide certain personal information regarding Defendants Zhu, Wang and Sun within five days, as the production of this information without authorization from Chinese authorities and without the consent of the relevant individuals is prohibited by China's Personal Information Protection Law ("PIPL").

The PIPL prohibits companies from transmitting personal information[2] outside of the People's Republic of China ("PRC") for the purpose of foreign judicial proceedings without the approval of "competent authorities" in the PRC.  Specifically, Article 41 of the PIPL provides:

> Competent authorities of the People's Republic of China, according to relevant laws and treaties or international agreements that the People's Republic of China has concluded or acceded to, or according to the principle of equality and mutual benefit, are to handle foreign judicial or law enforcement authorities' requests regarding the provision of personal information stored domestically.  ***Without the approval of the competent authorities of the People's Republic of China, personal information handlers may not provide personal information stored within the mainland territory of the People's Republic of China to foreign judicial or law enforcement agencies***.

(Ex. A to the Declaration of Scott D. Musoff, dated Nov. 13, 2023, at Art. 41.)  Article 39 of the PIPL further requires that companies "obtain the individuals' separate consent" before transmitting personal information abroad.  (*Id.* at Art. 39.)

---

[2]    The PIPL defines "[p]ersonal information" as "all kinds of information, recorded by electronic or other means, related to identified or identifiable natural persons, not including information after anonymization handling."  (Ex. A at Art. 4.)  The PIPL was declared effective in November 2021.

"Service by methods that would violate foreign law is not generally authorized." Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment. Hence, a district court exercising its discretion pursuant to Rule 4(f)(3) should make "an earnest effort . . . to devise a method of communication that is consistent with due process and minimizes offense to foreign law." *Id.* Here, Plaintiffs' request that the Court compel Missfresh and Skadden to disclose, in five days, (i) all cellphone numbers, email addresses, or social media account information they have on file for Defendants Zhu, Wang and Sun; and (ii) the forwarding or home address they have on file for Defendants Wang and Sun, provided the addresses are not in China, would violate the PIPL, as this personal information, if in the possession of Missfresh at all, is stored in the PRC. (Mot. at 9-15.) Hence, such information is subject to the PIPL, and cannot be transmitted outside of the PRC without authorization from "competent authorities" in China and separate consent from the individuals, all of whom left Missfresh over a year ago and are not represented by Skadden.

Nor is it likely that Missfresh or Skadden would be able to obtain the requisite authorization from PRC authorities and consents from Defendants Zhu, Wang and Sun within five days, as Plaintiffs propose. Critically, the PIPL does not specify which PRC authorities are "competent" to authorize the transmission of personal information outside of the PRC. (Ex. A at Art. 41.) Such ambiguity in recently-enacted Chinese laws protecting personal information and other data has caused significant delay in the production of protected information in similar cases against U.S.-listed Chinese companies, and some courts have recognized that such Chinese laws requiring review by relevant PRC authorities "demonstrates the burden of [producing] discovery" located in China. *Juul Labs, Inc. v. Chou*, No. 2:21-cv-03056-DSF-PDX, 2022 WL 2161062, at *8 (C.D. Cal. Apr. 19, 2022).

Hence, Plaintiffs' request to compel Missfresh's and Skadden's disclosure of personal

11

information in five days should be rejected, as it would require Missfresh and Skadden to violate existing Chinese law by disclosing personal information without the prior approval of competent PRC authorities and without separate consent from the relevant individuals. Moreover, under Rule 1.9 of the New York Rules of Professional Conduct, it would be improper for Skadden to disclose a former client's confidential information without their informed consent. Nor is there any indication that Plaintiffs have made any attempt to locate the requested information themselves, including the residential addresses of Defendants as explained above, or their cellphone numbers, email addresses or social media accounts. To minimize offense to foreign law, Missfresh and Skadden respectfully request that this proposed method of alternative service be rejected.[3]

## CONCLUSION

For the foregoing reasons, Missfresh respectfully requests that Plaintiffs Motion for Alternative Service be denied with respect to the Former Directors.

---

[3] In the alternative, Missfresh and Skadden respectfully request that the Court require Lead Plaintiffs to undertake reasonably diligent efforts to identify such information through their own investigation, or, at the very least, allow sufficient time for Missfresh and Skadden to obtain authorization from the relevant PRC authorities and consent from the individuals to minimize offense to foreign law. *See Altos*, 2015 WL 6437384, at *2 ("[T]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court . . . .").

12

Dated:  New York, New York
         November 13, 2023

                                        Respectfully submitted,


                                        */s/ Scott D. Musoff*
                                        Scott D. Musoff
                                           (scott.musoff@skadden.com)
                                        Robert A. Fumerton
                                           (robert.fumerton@skadden.com)
                                        Michael C. Griffin
                                           (michael.griffin@skadden.com)
                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                        One Manhattan West
                                        New York, New York 10001
                                        Telephone: (212) 735-3000

                                        *Attorneys for Defendant Missfresh*
                                        *Limited*