**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN CHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>                            v.<br><br>MISSFRESH LIMITED, ZHENG XU, JUN WANG, YUAN SUN, ZHAOHUI LI, COLLEEN A. DE VRIES, HANSONG ZHU, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, AMTD GLOBAL MARKETS LIMITED, ICBC INTERNATIONAL SECURITIES LIMITED, NEEDHAM & COMPANY, LLC, CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, ABCI SECURITIES COMPANY LIMITED, GF SECURITIES (HONG KONG) BROKERAGE LIMITED, FUTU INC., TIGER BROKERS (NZ) LIMITED, and COGENCY GLOBAL, INC.,<br><br>    Defendants. | Case No. 1:22-cv-09836-JSR |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION TO CERTIFY CLASS, APPOINT**
**<u>CLASS REPRESENTATIVES, AND APPOINT CO-CLASS COUNSEL</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   STATEMENT OF FACTS .............................................................................................4

      A.   Missfresh's False and Misleading Offering Documents..................................4

      B.   The Proposed Class Representatives ................................................................5

      C.   Procedural Status ............................................................................................6

III.  ARGUMENT..................................................................................................................7

      A.   This Action Satisfies the Requirements of Rule 23(a)....................................8

           1.   The Class Members Are Numerous ......................................................8

           2.   Questions of Law and Fact Are Common to the Class .......................10

           3.   Plaintiffs' Claims Are Typical of the Class .......................................11

           4.   Lead Plaintiff Will Fairly and  Adequately Protect the Interests of
                the Class .............................................................................................13

      B.   The Requirements of Rule 23(b) Are Satisfied.............................................15

           1.   Common Questions of Law and Fact Predominate .............................16

           2.   A Class Action Is Superior to  Alternative Methods for Resolving
                This Dispute .......................................................................................20

IV.   THE COURT SHOULD APPOINT CO-LEAD  COUNSEL AS CO-
      CLASS COUNSEL UNDER RULE 23(g)...................................................................21

V.    CONCLUSION.............................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................16, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).....................................................................................................16

*Banyai v. Mazur*,
  205 F.R.D. 160 (S.D.N.Y. 2002) ...................................................................................8

*In re Barclays PLC Sec. Litig.*,
  2016 WL 3235290 (S.D.N.Y. June 9, 2016) ...............................................................18

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) ....................................................................10, 12, 14

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) ...................................................................................20

*Califano v. Yamasaki*,
  442 U.S. 682 (1979).....................................................................................................21

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ...................................................................................18

*In re Coll. Bound Consol. Litig.*,
  1994 WL 236163 (S.D.N.Y. May 31, 1994) .................................................................9

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ...................................................................................9

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  296 F.R.D. 261 (S.D.N.Y. 2014) .................................................................................12

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) .....................................................................................18

*In re Dynex Cap., Inc. Sec. Litig.*,
  2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) .................................................................13

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976).......................................................................................................7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ...............................................................................7, 19, 21

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013).....................................................................................7

*Fogarazzo v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................................7, 22

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,
   172 F.R.D. 31 (E.D.N.Y. 1997)...............................................................................................9

*Globus v. Law Rsch. Serv., Inc.*,
   418 F.2d 1276 (2d Cir. 1969)...................................................................................................8

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983)..............................................................................................................3, 7

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   286 F.R.D. 226 (S.D.N.Y 2012) ................................................................................. *passim*

*Ira Holtzman, C.P.A. & Assocs. Ltd. v. Turza*,
   728 F.3d 682 (7th Cir. 2013) .................................................................................................19

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ......................................................................................17, 18

*In re Lehman Bros. Sec. & ERISA Litig.*,
   2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) ..........................................................................20

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................................................10

*McMahan & Co. v. Wherehouse Entm't Inc.*,
   65 F.3d 1044 (2d Cir. 1995)...................................................................................................18

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)..............................................................................................17

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ...........................................................................................11

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010)...................................................................................................17

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
   2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011).......................................................................11

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
  2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014) ................................................................7, 20

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  2013 WL 6839093 (S.D.N.Y. Dec. 27, 2013) .........................................................................19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  172 F.R.D. 119 (S.D.N.Y. 1997) ...........................................................................................12

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ....................................................................................7, 12, 14

*Pa. Ave. Funds v. Inyx Inc.*,
  2011 WL 2732544 (S.D.N.Y. July 5, 2011) .............................................................................9

*In re Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016) ......................................................................................13, 16

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ...............................................................................................10

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)..................................................................................................................20

*Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ...................................................................................... *passim*

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015).........................................................................................3, 16, 19

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993).......................................................................................................9

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004).....................................................................................................18

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015).................................................................................................16, 19

*Teachers Ret. Sys. of La. v. ACLN Ltd.*,
  2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ........................................................................12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007).............................................................................................................7

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)...........................................................................................................18

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
   283 F.R.D. 199 (S.D.N.Y. 2012) ...................................................................10, 11, 16, 21

*In re U.S. FoodService Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)......................................................................................18

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)......................................................................................19

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.,*
   838 F.3d 223 (2d Cir. 2016)...............................................................................8, 9, 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................................10

*Wallace v. IntraLinks*,
   302 F.R.D. 310 (S.D.N.Y. 2014) .............................................................................13

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) .............................................................................14

## Statutes & Rules

15 U.S.C. § 77k.....................................................................................................3, 18

15 U.S.C. § 77*l*........................................................................................................3

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## Other Authorities

Newberg and Rubenstein on Class Actions (6th ed.) ....................................................17

## I.   PRELIMINARY STATEMENT

Court-appointed Lead Plaintiffs Chelsea Fan; Maso Capital Investments Limited, Blackwell Partners LLC – Series A, and Star V Partners LLC (the "Maso Plaintiffs," and together with Ms. Fan, "Lead Plaintiffs"); and named Plaintiff James Sannito (together with Lead Plaintiffs, "Plaintiffs") respectfully move, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, for an order: (i) certifying a class of all persons and entities that purchased or otherwise acquired Missfresh Limited ("Missfresh" or the "Company") American depository shares ("ADSs") pursuant or traceable to the Offering Materials,[1] and who were damaged thereby (the "Class"); (ii) appointing Plaintiffs as Class Representatives; and (iii) appointing Labaton Keller Sucharow LLP ("Labaton") and The Rosen Law Firm, P.A. ("Rosen") as Co-Class Counsel. Plaintiffs request that the following Class be certified in the above-captioned action against the Defendants:[2]

> All persons and entities who or which purchased or otherwise acquired publicly traded Missfresh ADSs pursuant and/or traceable to the Offering Documents, and were damaged thereby. Excluded

---

[1] Missfresh ADSs were registered with the Securities and Exchange Commission (the "SEC") pursuant to a registration statement filed with the SEC on Form F-1 (Registration No. 333-256903), which after an amendment on Form F-1/A dated June 22, 2021, was declared effective by the SEC on June 24, 2021 (the "Registration Statement"). On June 28, 2021, the Defendants filed with the SEC the final prospectus on SEC form 424B4 (the "Prospectus"), which forms part of the Registration Statement (the Prospectus and Registration Statement, as amended, are referred to collectively as the "Offering Materials"), and proceeded to conduct Company's initial public offering (the "IPO" or the "Offering"). The Registration Statement and Prospectus are attached to the Declaration of Alfred L. Fatale III ("Fatale Decl.") as Exhibits B and C, respectively.

[2] The "Defendants" consist of the following: (i) Missfresh; (ii) Cogency Global Inc.; (iii) Zheng Xu, Jun Wang, Yuan Sun, Zhaohui Li, Colleen A. De Vries, and Hansong Zhu, (the "Individual Defendants"); and (iv) J.P. Morgan Securities LLC, Citigroup Global Markets Inc., China International Capital Corporation Hong Kong Securities Limited, China Renaissance Securities, Haitong International Securities Company Limited, CMB International Capital Limited, AMTD Global Markets Limited, ICBC International Securities Limited, Needham & Company, LLC, China Merchants Securities (HK) Co., Limited, ABCI Securities Company Limited, GF Securities (Hong Kong) Brokerage Limited, Futu Inc., and Tiger Brokers (NZ) Limited (the "Underwriter Defendants").

from the Class are: (i) Defendants; (ii) the immediate family members of the Individual Defendants; (ii) any person was an officer, director, or control person of Missfresh, the Underwriter Defendants, or Cogency (at all relevant times), and members of their immediate families; (iii) the Company's employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they purchased or acquired Missfresh ADSs through any such plan(s); (iv) any entity in which any Defendant has or had a controlling interest; and (v) the legal representatives, heirs, successors, or assigns of any such excluded person or entity.

This action is ideally suited for class treatment under Rule 23.[3] Plaintiffs assert strict liability and negligence-based claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"). Plaintiffs' claims are based on false and misleading statements and omissions contained in the Offering Materials published in connection with Missfresh's IPO of 24,150,000 ADSs at a price of $13.00 per ADS, including the Underwriter Defendants' overallotment, for a total Offering price of approximately $314 million. As detailed in the Amended Class Action Complaint for Violations of the Securities Act of 1933 (the "Complaint") (Fatale Decl. Ex. A), Defendants violated the Securities Act by making false and misleading statements and omissions in the Offering Materials regarding the later-admitted overstatement of the Company's net revenues for the quarter ended March 31, 2021 by over 11%, or RMB 156,824,000.

As several courts have observed, "suits alleging violations of … the Securities Act are '*especially amenable*' to class action certification." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 232 & n.40 (S.D.N.Y 2012). This action is no exception and readily satisfies all of the requisite elements of Rule 23(a) and Rule 23(b)(3). *First*, numerosity exists as there are likely

---

[3] Citations to "¶_" and "¶¶_" are to paragraphs of the Amended Class Action Complaint (the "Complaint"). ECF No. 34. All capitalized terms not defined herein have the meaning ascribed in the Complaint. Unless otherwise noted, emphasis has been added and internal citations and quotation marks have been omitted throughout.

hundreds (if not thousands) of geographically dispersed investors in this $314 million IPO of 24.15 million ADSs registered and traded on the NASDAQ. *See infra* Section III.A.1. ***Second***, commonality is established because the critical inquiry of all Class members' claims is whether the Offering Materials contained material misstatements. *See infra* Section III.A.2. ***Third***, typicality under Rule 23(a) is fulfilled as Plaintiffs, like all Class members, acquired Missfresh ADSs pursuant or traceable to the false and misleading Offering Materials and were damaged thereby, and thus advance the same legal arguments based on the same set of facts as the Class. *See infra* Section III.A.3. ***Fourth***, Plaintiffs will "fairly and adequately" protect the interests of the Class, as demonstrated by Plaintiffs' commitment to prosecuting this Action thus far. *See infra* Section III.A.4. Plaintiffs have retained experienced counsel to represent their interests and those of the proposed Class, have repeatedly consulted with counsel concerning the Action, and are willing to testify at deposition and trial.

Predominance under Rule 23(b)(3) is fulfilled here because common questions of law or fact predominate over individual questions. *See infra* Section III.B.1. To prove their claims on behalf of themselves and the Class, Plaintiffs must show ***only*** that the Offering Materials contained material misstatements and omissions, *i.e.*, falsity and materiality—reliance, scienter, and loss causation need not be proven under the Securities Act. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Proof on these limited issues will be the same for Plaintiffs as it will be for all other members of the Class. Moreover, while "certification pursuant to Rule 23(b)(3)" does not require "a finding that damages are capable of measurement on a classwide basis[,]" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015), it is nonetheless notable that class-wide damages are subject to a common methodology determined by statute and readily applicable to all Class members. *See* 15 U.S.C. § 77k(e); 15 U.S.C. § 77l(a)(2). Under Section 11, the measure of

3

damages is set as the difference between the price paid for a security purchased pursuant to the registration statement, and the price at the time suit was filed or the security was sold and under Section 12(a)(2) Class members are entitled to rescission, *i.e.*, recovery of the consideration paid plus interest. Finally, all four Rule 23(b)(3) factors considered in determining whether a class action is superior to alternate means heavily favor certification. *See infra* Section III.B.2.

Accordingly, Plaintiffs respectfully request that the Court: (i) certify a Class as defined above pursuant to Rule 23(a) and Rule 23(b)(3); (ii) appoint Plaintiffs as Class Representatives; and (iii) appoint Co-Lead Counsel, Labaton and Rosen, as Co-Class Counsel.

## II.    STATEMENT OF FACTS

### A.    Missfresh's False and Misleading Offering Documents

Missfresh sells groceries to customers in China through online portals. It went public in the United States on June 8, 2021 through the Offering, selling 24,150,000 ADSs for $13.00/ADS pursuant to the Offering Documents, raising gross proceeds of $314 million. ¶61.

At the time of the IPO, Missfresh touted itself as having "experienced rapid growth since we commenced our business in 2014." ¶74. Its revenues had grown from RMB 3.5 billion in 2018 to RMB 6.1 billion in 2020. ¶68. The last quarter reported in its Offering Documents was the quarter ended March 31, 2021 ("Q1 2021"), during which, the Offering Documents reported Missfresh had earned RMB 1.53 billion. ¶72.

Following the Offering on April 29, 2022, Missfresh announced that it would not be able to file its annual report for the year ended December 31, 2021 ("2021 Annual Report") on time because it was "in the process of conducting an internal review of certain matters, including those relating to transactions between the Company and certain third-party enterprise." ¶80. On May 24, 2022, Missfresh announced that it had received a non-compliance notification from NASDAQ because of the late filing. ¶81.

On July 1, 2022, Missfresh announced that its investigation was "substantially complete." ¶82. Based on the investigation, Missfresh disclosed that due to the Company's "questionable transactions," it "inaccurately recorded" and overstated RMB156 million sales of products through online platforms for Q1 2021, which resulted in 11.7% overstatement in sales of products through online platforms and 11.4% overstatement in Q1 2021 net revenue. ¶¶69, 82-83. Put differently, in restating the Q1 2021 net revenue figure as set forth in the Offering Documents, Missfresh admitted that the Offering Documents contained material false statements—the only elements needed for the Securities Act claims alleged in this action.

As of the commencement of this action, Missfresh ADSs have fallen from the Offering price of $13.00 per ADS to close at $0.39 per ADS on July 12, 2022, the date this action was filed, a decrease of 97%. ¶95.

## B.    The Proposed Class Representatives

On October 3, 2022, Ms. Fan and the Maso Plaintiffs were appointed as Lead Plaintiffs. ECF No. 20. Ms. Fan, the Maso Plaintiffs, as well as named Plaintiff Mr. Sannito all purchased Missfresh ADSs pursuant and/or traceable to the IPO and were damaged thereby. *See* ¶¶15-19; ECF No. 10-2 (certification of Ms. Fan); ECF No. 5-3 (certifications of the Maso Plaintiffs); ECF No. 34-1 (certification of Mr. Sannito).[4] Plaintiffs are aware that this class action lawsuit is brought not only on their own behalf but on behalf of other similarly situated Missfresh investors that are members of the Class, and that they are asking to be appointed as a representative party to act on

---

[4] *See* Fatale Decl. Ex. E (Declaration of Chelsea Fan in Support of Lead Plaintiffs' Motion to Certify Class, Appoint Class Representative, and Appoint Co-Class Counsel) ("Fan Decl.") at ¶2; Fatale Decl. Ex. D (Declaration of Manoj Jain in Support of Lead Plaintiffs' Motion to Certify Class, Appoint Class Representative, and Appoint Co-Class Counsel) ("Jain Decl.) at ¶2; Fatale Decl. Ex. F (Declaration of James Sannito in Support of Lead Plaintiffs' Motion to Certify Class, Appoint Class Representative, and Appoint Co-Class Counsel) ("Sannito Decl.) at ¶2.

behalf of those other members of the Class. Fan Decl. at ¶3; Jain Decl. at ¶3; Sannito Decl. at ¶3. Plaintiffs understand that as Class Representatives they will owe a fiduciary duty to all members of the Class to provide fair and adequate representation and have stated that they will work with Co-Lead Counsel to obtain the maximum recovery possible for the Class consistent with good faith and meritorious advocacy. Fan Decl. at ¶5; Jain Decl. at ¶5; Sannito Decl. at ¶5.

Following the appointment of Ms. Fan and the Maso Plaintiffs and the inclusion of Mr. Sannito, Plaintiffs have reviewed and monitored the progress of this litigation and regularly conferred with Co-Lead Counsel concerning the prosecution of the action. Fan Decl. at ¶4; Jain Decl. at ¶4; Sannito Decl. at ¶4. For example, Plaintiffs have received and reviewed periodic updates and other correspondence from counsel regarding all aspects of the case, *e.g.*, the progress of discovery and the filing of significant pleadings and court orders. Fan Decl. at ¶4; Jain Decl. at ¶4; Sannito Decl. at ¶4.

In sum, Plaintiffs are "committed to vigorously prosecuting this litigation" and "intend to obtain the largest recovery for the class consistent with good faith and sound judgment." Fan Decl. at ¶8; Jain Decl. at ¶8; Sannito Decl. at ¶8.

### C.    Procedural Status

On December 28, 2022, Plaintiffs filed the Complaint (ECF No. 34), which Defendants moved to dismiss. On October 30, 2017, the Court denied Defendants' motion to dismiss in part, allowing claims regarding the restatement of Q1 2021 net revenues to proceed. ECF Nos. 69, 79. Thereafter, the parties engaged in mediation, ultimately reaching an agreement in principle to settle this matter and receiving a stay of the action on November 28, 2023. Missfresh has since stated it cannot fund the agreed upon settlement (ECF No. 90 at 4-5), and litigation has resumed. In accordance with the Court's scheduling orders (ECF Nos. 76, 102), discovery is currently underway.

### III.    ARGUMENT

The Supreme Court has repeatedly recognized the importance of class actions in redressing wrongs committed under the federal securities laws. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313-14, 320 (2007); *Huddleston*, 459 U.S. at 380 n.10 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976). While the Court's class certification analysis must be "rigorous," "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation" and noted that "[i]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015); *see also, e.g.*, *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 178 (S.D.N.Y. 2005) ("The Second Circuit requires a 'liberal' construction of Rule 23 of the Federal Rules of Civil Procedure.").

Courts within this Circuit have observed that "class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws[,]" *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009), and that suits alleging Securities Act claims—like here—are "especially amenable to class action certification and resolution[]" because they largely depend on establishing that the misstatements and omissions contained in the offering materials were materially misleading. *IndyMac*, 286 F.R.D. at 232 & n.40; *see also N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2014 WL 1013835, at *4 (S.D.N.Y. Mar. 17, 2014) (same); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011) (same). Indeed, "[n]either scienter, reliance nor loss causation is an element of Section 11." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 506 (S.D.N.Y. 2013). As the Supreme Court has explained, "Section 11 places a relatively minimal burden on a plaintiff," with liability being "virtually absolute, even for innocent misstatements." *Huddleston*, 459 U.S. at 381-

7

83. The statute's aim is "not so much to compensate the defrauded purchaser as to promote enforcement of the [Securities] Act and to deter negligence by providing a penalty for those who fail in their duties." *Globus v. Law Rsch. Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969).

Accordingly, class certification is appropriate and the Court should grant this motion.

### A.      This Action Satisfies the Requirements of Rule 23(a)

There are four requirements under Rule 23(a) to certify a class: (i) the class must be "so numerous that joinder of all members is impracticable"; (ii) "questions of law or fact common to the class" must exist; (iii) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class"; and (iv) "the representative parties" must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). As described below, each of the requirements under Rule 23(a) is satisfied here.

### 1.      The Class Members Are Numerous

Rule 23 contemplates class certification where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity exists where "the number of class members is sufficiently large so that joinder of all members would make litigation needlessly complicated and inefficient." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002). Courts in the Second Circuit presume that the numerosity requirement is satisfied if a putative class has forty or more members. *See IndyMac*, 286 F.R.D. at 232 & n.42 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *see also Merrill Lynch*, 277 F.R.D. at 105 (recognizing that joinder or individual adjudication of even 100 investors' claims would be impractical). The precise quantification of class members, however, may be unnecessary "because a court may make common sense assumptions regarding numerosity." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016).

8

In particular, to satisfy the numerosity requirement, plaintiffs need not provide "a precise calculation of the number of class members," but instead "may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class." *Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000). Thus, numerosity is regularly inferred in cases brought by investors under the federal securities laws involving—as here—a large volume of outstanding ADSs at all relevant times. *See, e.g.*, *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (holding that "[c]ommon sense suggests" that case involving 13 million shares satisfied numerosity); *In re Coll. Bound Consol. Litig.*, 1994 WL 236163, at *2 (S.D.N.Y. May 31, 1994) (inferring numerosity where "20 million shares of College Bound stock traded publicly during the proposed Class Period," notwithstanding "a large percentage of College Bound shares allegedly were held by defendants"); *see also Pa. Ave. Funds v. Inyx Inc.*, 2011 WL 2732544, at *3 (S.D.N.Y. July 5, 2011) ("courts in this district have certified plaintiff classes based on the volume of outstanding shares") (collecting cases); *Vivendi*, 242 F.R.D. at 84 (holding that "the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period").

In this case, while the exact number of persons who purchased or acquired such shares cannot be determined without further discovery and a post-trial claims process, Missfresh sold 24.15 million ADSs at a price of $13.00 per share in the IPO. Thus, the proposed Class of investors in the Offering is likely to contain at least hundreds (and likely thousands) of investors and is thus presumptively numerous. Moreover, members of the Class can be presumed to be geographically dispersed institutions and individuals, as Missfresh's common stock trades on the NASDAQ. *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[r]elevant considerations include judicial economy aris[e] from the avoidance of a multiplicity of actions [and] geographic dispersion of

9

class members"). Any attempt to litigate this action outside of the Rule 23 context would be impractical. Certification therefore promotes judicial economy and uniformity of decision regarding Class members' claims.

### 2. Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "commonality" requirement of Rule 23(a)(2) "is generally considered a low hurdle easily surmounted." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *9 (S.D.N.Y. Dec. 23, 2009); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do[.]") (alteration in original); *Merrill Lynch*, 277 F.R.D. at 106 ("[T]he Supreme Court's clarifying language in *Wal-Mart* has no effect on the commonality determination in this [Securities] case. The common question presented by this case—essentially, whether the Offering Documents were false or misleading in one or more respects—are clearly susceptible to common answers."). Commonality "does not mandate that all class members make identical claims and arguments or that the circumstances of their securities purchases be identical." *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 206 (S.D.N.Y. 2012); *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) (same). Rather, "[c]ommonality is satisfied where a single issue of law or fact is common to the class." *IndyMac*, 286 F.R.D. at 233.

In securities cases, as the Second Circuit has stated, commonality is "plainly satisfied" where "the alleged misrepresentations in the prospectus relate to all the investors, [because the] existence and materiality of such misrepresentations obviously present important common issues." *Id.* (alteration in original) (quoting *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972)); *see also In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012) ("[W]here putative class

members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.").

The proposed Class satisfies the Rule 23(a) commonality requirement. Indeed, common questions of fact and law abound in this case and raise dozens of common questions, including, to name just a few:

1.      Do the Offering Documents contain any misrepresentations or omissions?

2.      Are those misrepresentations or omissions material?

3.      Did the Defendants violate the Securities Act?

4.      Can Defendants establish a class-wide defense of negative causation?

5.      Did the Underwriter Defendants perform adequate due diligence prior to the IPO?

6.      Are the Individual Defendants control persons of Missfresh?

Each of these questions are common to the members of the Class and readily satisfy Rule 23(a)(2)'s "commonality" requirement. *See, e.g.*, *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) (holding commonality requirement is "'plainly satisfied' in a securities case where 'the alleged misrepresentations in the prospectus relate to all the investors, [because the] existence and materiality of such misrepresentations obviously present important common issues'") (alteration in original); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2011 WL 3874821, at *2 (S.D.N.Y. Aug. 16, 2011) (finding commonality for Securities Act claims where "[t]he members of the proposed class were all allegedly damaged by the same alleged misstatements and omissions in the Offering Documents").

### 3.      Plaintiffs' Claims Are Typical of the Class

Like the commonality requirement, the "typicality" requirement of Rule 23(a)(3) is "not demanding." *Tsereteli*, 283 F.R.D. at 208; *see also Vivendi*, 242 F.R.D. at 84-85 ("While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses

11

on whether the claims of the putative class representatives are typical of the class sharing common questions."). Rule 23(a)(3) simply requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Billhofer*, 281 F.R.D. at 157 (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007)); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997) ("Typicality under Rule 23 requires that a class representative have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.").

When determining whether the claims are typical, "the focus must be on the defendants' behavior and not that of the plaintiffs." *Teachers Ret. Sys. of La. v. ACLN Ltd.*, 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *NYSE Specialists*, 260 F.R.D. at 73 (quoting *Robidoux*, 987 F.2d at 936-37); *accord Merrill Lynch*, 277 F.R.D. at 106. In fact, typicality "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 267 (S.D.N.Y. 2014).

Here, Plaintiffs' claims are typical of—if not identical to—the claims of the other Class members. As detailed above, Plaintiffs allege that Defendants violated the Securities Act by

issuing Offering Materials that misrepresented and omitted material facts. Namely, the overstatement of Q1 2021 net revenues, conceded as false by Missfresh by virtue of the post-Offering restatement. Plaintiffs also allege that they and the Class acquired Missfresh ADSs pursuant and/or traceable to the IPO. As set forth herein, those claims are based upon the same facts and legal theories and would be proven with the same evidence. Therefore, Plaintiffs' claims are typical of the claims of the Class. *See Merrill Lynch*, 277 F.R.D. at 109 ("As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish [the] necessary typicality.") (alteration in original); *In re Dynex Cap., Inc. Sec. Litig.*, 2011 WL 781215, at *3 (S.D.N.Y. Mar. 7, 2011) (finding proposed class representative's claims to be typical where legal theories and proof would be the same for the other class members' claims).

Nor are Plaintiffs somehow subject to any unique defenses that would likely become a major focus of litigation. Moreover, any deviation in the amount of damages between Plaintiffs and members of the Class does not present any unique issues. *See infra* Section III.B.1.

### 4. Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy entails inquiry as to whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 361 (S.D.N.Y. 2016) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). The "adequacy requirement is not demanding." *Wallace v. IntraLinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).

Here, based upon their purchases of Missfresh ADSs, Plaintiffs' interests are directly aligned with the interests of the Class: all were injured by the same materially untrue statements and omissions. *See Billhofer*, 281 F.R.D. at 157 ("none of Plaintiff's interests are antagonistic" when "all members of the proposed class allege claims arising from the same wrongful conduct that are based on the same legal theories as Plaintiff's claims"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (the "named plaintiffs' interests are directly aligned with those of the absent class members" because they all purchased the same WorldCom securities pursuant to the same defective offering materials). Here, there is a total overlap of Plaintiffs' interests with those of the Class: in proving their own claims, Plaintiffs will simultaneously prove those of the Class, thus satisfying the adequacy requirement. *See id.*; *NYSE Specialists*, 260 F.R.D. at 73-74.

Further, Plaintiffs are fully capable of monitoring the progress of this action and ensuring that it is being litigated so as to advance the interests of the Class. *See generally* Fan Decl. ¶¶2-8; Jain Decl. ¶¶2-8; Sannito Decl. ¶¶2-8. Plaintiffs have, to date, shown their commitment to supervising the prosecution of this action on behalf of the Class by actively monitoring and supervising experienced counsel, who have, among other things: (i) investigated claims; (ii) prepared and filed the Complaint; (iii) researched and briefed the opposition to Defendants' motion to dismiss; (iv) vigorously pursued discovery by, among other things, serving document discovery requests and interrogatories on Defendants; (v) continuously sought to navigate service issues on the Chinese defendants, including by filing motions to authorize alternative service (ECF Nos. 80, 103); (vi) engaged in mediation and drafted settlement papers having believed an agreement was reached; and (vii) preparing and filing this motion.

Plaintiffs are also adequate because they have retained attorneys with considerable experience in securities class actions and complex litigation. Co-Lead Counsel for the Class are competent and qualified to lead this action on behalf of the Class. Fatale Decl. Ex. G (Labaton resume); Ex. H (Rosen resume); *see also* Fan Decl. ¶6; Jain Decl. ¶6; Sannito Decl. ¶6. Labaton and Rosen are two of the preeminent law firms specializing in securities class actions, and through their appointment as Co-Lead Counsel, the firms have already been preliminarily determined as adequate counsel to represent the Class. *See* ECF No. 20. Indeed, as noted above, Co-Lead Counsel have committed substantial time and resources to representing the Class and have worked vigorously to prosecute this action. Plaintiffs' chosen counsel have and will continue to zealously and competently represent the interests of all Class members.[5] *See* Fan Decl. ¶6; Jain Decl. ¶6; Sannito Decl. ¶6.

In sum, the requirements of Rule 23(a) are satisfied.

## B.    The Requirements of Rule 23(b) Are Satisfied

Having met each of the four requirements of Rule 23(a), Plaintiffs seeks certification under Rule 23(b)(3), which provides that an action is maintainable as a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action satisfies Rule 23(b)(3) because "the interests of the class members are aligned and the same alleged misconduct underlies their claims" and the members who comprise the Class "have a minimal interest in controlling the course of the litigation; there are significant efficiency gains to be reaped from concentrating the

---

[5] These qualifications also satisfy Rule 23(g), which requires a district court to assess the adequacy of the proposed class counsel. *See infra* Section IV.

litigation in a single forum; and the likely difficulties in managing the class action are readily surmountable." *Petrobras*, 312 F.R.D. at 363.

### 1.    Common Questions of Law and Fact Predominate

As the Supreme Court has held, "[p]redominance is a test readily met in certain cases alleging … securities [claims]." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach*, 778 F.3d at 405; *Petrobras*, 312 F.R.D. at 364 (same). To satisfy the requirement, common questions merely need to "predominate"—they do not need to be exclusive or dispositive. *See Tsereteli*, 283 F.R.D. at 210 (finding the predominance test "does not require a plaintiff to show that there are *no* individual issues") (emphasis in original); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459-460 (2013). As courts in this District have explained, while individual issues arise "***in all class action cases, . . . to allow various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws.***" *Merrill Lynch*, 277 F.R.D. at 111; *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) ("Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.").

As discussed above, there are a number of questions common to members of the Class. *See supra* Section III.A.2. These common questions include, most notably, whether the Offering Materials contain untrue statements or material omissions. The common legal and factual questions are at the core of this litigation and are focused on Defendants' actions and issues of

liability. These questions predominate over any conceivable "individualized" issues. *See* The predominance requirement—Two-step analysis, *Newberg and Rubenstein on Class Actions* § 4:50 (6th ed.) (The predominance analysis is "more of a qualitative than quantitative analysis.").

Plaintiffs allege violations of Sections 11, 12(a)(2) and 15 of the Securities Act. Because Sections 11 and 12(a)(2) focus on the contents of the Offering Materials and do not require any showing of reliance, scienter, or loss causation, they are particularly well suited for class treatment. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010). Moreover, "[i]ssuers are subject to 'virtually absolute' liability under [S]ection 11, while the remaining potential defendants under [S]ections 11 and 12(a)(2) may be held liable for mere negligence." *Id.* at 359. As such, whether the Offering Materials contained a material misstatement or omission is susceptible to a common answer and will be the predominant issue in the case. *See Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008) (certifying class and finding that "proof of [defendant's] alleged misrepresentations and/or omissions are susceptible to generalized proof"). Accordingly, if Defendants are liable for the alleged conduct, they are liable to all similarly situated Class members.

In addition, whether certain Defendants were control persons is a common question affecting the claims asserted on behalf of the entire Class. *See Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 91 (D. Conn. 2010) ("[E]ach class member's control person claim should be identical given that Defendants' conduct alone is relevant to satisfying the applicable standard"). This issue will also predominate.

Another issue that will predominate is whether Defendants' statements and omissions were material. Because the issue of materiality is looked at objectively, it is also subject to generalized

proof.[6] *In re Barclays PLC Sec. Litig.*, 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016) (explaining that because materiality is objective the class is cohesive). "The test for whether a statement is materially misleading under . . . Section 11 is whether the defendants' representations, taken together and in context, would have misled a reasonable investor." *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004). Given this objective standard, the materiality of Defendants' misrepresentations and omissions can be proven class-wide. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976); *accord Merrill Lynch*, 277 F.R.D. at 114; *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 94 (S.D.N.Y. 1981).

Finally, the methodology for calculating damages is a common issue. Although specific damages may vary for each Class member, the prospect of having varying damages amounts "does not defeat certification if the **method** of calculating damages is common to the class." *Lapin*, 254 F.R.D. at 181. Indeed, the Securities Act provides a standard damages formula that is common to the Class. *See* 15 U.S.C. §77k(e); 15 U.S.C. §77*l*(a)(2). *McMahan & Co. v. Wherehouse Entm't Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) ("The plain language of section 11(e) prescribes the method of calculating damages … and the statutory scheme requires courts to apply the prescribed formula in every section 11 case").

The application of this statutorily prescribed common formula automatically satisfies any requirement set up by the Supreme Court's *Comcast* decision, since if "Plaintiffs' proposed measure for damages is … directly linked with their underlying theory of classwide liability" they are "in accord with the Supreme Court's recent decision in *Comcast*." *In re U.S. FoodService Inc.*

---

[6] "[I]n *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, the Supreme Court held that materiality does not need to be proven before a class can be certified, but is instead left to be addressed at the merits stage." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 77 n.40 (S.D.N.Y. 2015) (citing *Amgen*, 568 U.S. at 466-470).

18

*Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013); *see also Ira Holtzman, C.P.A. & Assocs. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (where statute provides uniform penalty, the "sort of problem that prevented class certification in [*Comcast*] does not arise."); *IndyMac*, 286 F.R.D. at 235 ("damages in Securities Act claims are calculated based on a statutory formula, so any differences in damages awards do not defeat class certification"); *N.J. Carpenters Health Fund v. Residential Capital, LLC¸* 2013 WL 6839093, at *5 (S.D.N.Y. Dec. 27, 2013) (*Comcast* is "inapposite here, where damages reflect liability by statutory formula").[7] And in any event, "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001).

This showing suffices to demonstrate that the predominance standard of Rule 23(b)(3) is satisfied, as these numerous common questions predominate over any perceived or potential individual issues. *Amchem Prods.*, 521 U.S. at 625. "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3)." *Facebook*, 312 F.R.D. at 346 (quoting *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)). In sum, except for the quantum of damages, which does not interfere with certification—and potential affirmative defenses which

---

[7] Utilizing the common, statutory formula to calculate damages will result in a different quantum of damages for each Class member depending on how much of the securities they purchased and sold and at what prices, but it is well established that these differences do not interfere with class certification. Specifically, "[t]he Supreme Court has explicitly determined that it is 'clear that individualized monetary claims belong in Rule 23(b)(3).'" *Sykes*, 780 F.3d at 82 (quoting *Wal-Mart*, 564 U.S. at 362). Even after *Comcast* it remains "well-established in this Circuit that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)." *Roach*, 778 F.3d at 405.

19

exist only in theory, and which do not interfere with certification—every single issue is common.[8]

Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

### 2.  A Class Action Is Superior to Alternative Methods for Resolving This Dispute

Rule 23(b)(3) requires that a class action also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In general, "securities suits . . . easily satisfy the superiority requirement of Rule 23." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999); *see also Merrill Lynch*, 277 F.R.D. at 120 (same). Courts have found the superiority requirement met where: (i) many in the class of investors likely suffered only small losses, making it impracticable to proceed with their claims as individuals; (ii) use of the class vehicle will achieve judicial economy, as well as prevent inconsistent judgments; and (iii) there are no other actions against the company involving the same claims, and the court foresees no particular difficulties with adjudicating the class action. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action mechanism allows plaintiffs to pool claims that would otherwise be uneconomical to litigate individually). As noted above, it is well recognized that class actions are a particularly appropriate means for resolving securities claims.

There can be no dispute that in this case a class action is superior to any other available method of adjudication. Defendants' alleged violations of the federal securities laws caused

---

[8] It is well established, that any differences in secondary issues purportedly identified by Defendants cannot interfere with certification. *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 440622, at *3 (S.D.N.Y. Jan. 23, 2013) ("Numerous courts have held that potential affirmative defenses against individual plaintiffs do not preclude class certification for claims under Section 11.") (collecting cases); *IndyMac*, 286 F.R.D. at 236 n.73 (To permit "various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws."); *DLJ Mortg.*, 2014 WL 1013835, at *8 ("[C]ourts have been reluctant to deny class action status because affirmative defenses might be available against different class members as long as the defenses do not overshadow the primary claims") (alteration in original).

economic injury to a large number of geographically dispersed investors, making the cost of pursuing individual claims plainly impracticable. Fed. R. Civ. P. 23(b)(3)(A)-(C); *see also Facebook*, 312 F.R.D. at 352. Resolving the claims in this case on a class-wide basis will promote judicial economy since the alternative would be to have thousands of separate individual actions, which offers no practical recourse for most Class members, and would indisputably burden the judicial system. Fed. R. Civ. P. 23(b)(3)(A). Lastly, there is no reason to expect any difficulties in the management of this case as a class action. Fed. R. Civ. P. 23(b)(3)(D); *see also Tsereteli*, 283 F.R.D. at 218 (concentrating litigation helps eliminate "risk of inconsistent adjudication[s] and [promoting] the fair and efficient use of the judicial system, [and] the Southern District of New York is well known to have expertise in securities law"). As discussed above, all of the proposed Class members here were subject to the same alleged misstatements and omissions made by Defendants, thus requiring the same proof to establish Securities Act violations.

Because it is highly unlikely that absent class members possess sufficient resources or incentives to pursue individual actions, the alternatives to a class action are either no recourse for thousands of stock purchasers or a multiplicity of suits throughout the United States, which would result in the inefficient administration of justice and risk inconsistent judgments. This is precisely the "evil that Rule 23 was designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979). Thus, the class action device is superior to any other means to adjudicate this action.

## IV.     THE COURT SHOULD APPOINT CO-LEAD COUNSEL AS CO-CLASS COUNSEL UNDER RULE 23(g)

In addition to satisfying the adequacy prong of Rule 23(a)(4), Labaton and Rosen should be appointed as Co-Class Counsel pursuant to Rule 23(g). Fed. R. Civ. P. 23(g)(1) ("a court that certifies a class must appoint class counsel"). When appointing class counsel, a court "must consider" the following:

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *see also Fogarazzo*, 232 F.R.D. at 182.

As discussed above, Labaton and Rosen, in their capacity as Co-Lead Counsel, have performed substantial work in identifying and investigating the claims asserted in the action, have substantial experience handling class actions asserting claims of this type, have committed and will continue to commit substantial resources to representing the Class, and have worked vigorously to prosecute this action. *See supra* Section III.A.4.; *see also* Fatale Decl. Ex. G (Labaton resume); Fatale Decl. Ex. H (Rosen resume). Accordingly, Labaton and Rosen will fairly and adequately represent the Class and should be appointed as Co-Class Counsel pursuant to Rule 23(g).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court: (i) certify this action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (ii) certify Plaintiffs Class Representatives; and (iii) appoint Labaton and Rosen as Co-Class Counsel.

DATED: March 26, 2024

**LABATON KELLER SUCHAROW LLP**

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III
David J. Schwartz
Charles Wood
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
dschwartz@labaton.com
cwood@labaton.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
Jing Chen
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com
jchen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the
Proposed Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Fax: (877) 590-0482
Email: brian@schallfirm.com

*Additional Counsel*

23