**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN CHEN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br>        v. <br><br> MISSFRESH LIMITED, ZHENG XU, JUN WANG, YUAN SUN, ZHAOHUI LI, COLLEEN A. DEVRIES, HANSONG ZHU, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, AMTD GLOBAL MARKETS LIMITED, ICBC INTERNATIONAL SECURITIES LIMITED, NEEDHAM & COMPANY, LLC, CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, ABCI SECURITIES COMPANY LIMITED, GF SECURITIES (HONG KONG) BROKERAGE LIMITED, FUTU INC., TIGER BROKERS (NZ) LIMITED, and COGENCY GLOBAL, INC., <br><br>        Defendants. | Case No. 1:22-cv-09836-JSR |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT ZHAOHUI LI'S**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND.............................................................................................. 3

ARGUMENT...................................................................................................................... 5

    I.    Plaintiffs' claims against Mr. Li should be dismissed under Rule 12(b)(5) because Plaintiffs failed to properly serve Mr. Li.................................................... 5

        A.    Plaintiffs did not reasonably attempt to effectuate service. ....................... 6

        B.    The Court's intervention was not necessary. ............................................. 8

    II.    The Institutional Plaintiffs' claims must be dismissed because they sold their shares before any alleged corrective disclosure. ......................................... 10

    III.    Plaintiffs' Section 12(a)(2) claim should be dismissed against Mr. Li because they have failed to plead that Mr. Li was a statutory seller. .................. 12

    IV.    Plaintiffs' Section 15 claim against Mr. Li should be dismissed......................... 14

        A.    Plaintiffs fail to allege a primary Section 11 claim.................................. 14

        B.    Plaintiffs fail to allege that Mr. Li was a control person. ........................ 14

        C.    Plaintiffs fail to allege particularized facts as to Mr. Li's meaningful culpable participation............................................................ 15

CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Aerofoil Techs., AG v. Todaro*,
 2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ........................................................................... 8

*Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd.*,
 2015 WL 6437384 (S.D.N.Y. Oct. 19, 2015) ......................................................................... 9

*Asia Mar. Pac. Chartering Ltd. v. Comercializadora Columbia S.A. de C.V.*,
 2023 WL 372880 (S.D.N.Y. Jan. 23, 2023) ........................................................................... 6

*Atuahene v. City of Hartford*,
 10 F. App'x 33 (2d Cir. 2001) .............................................................................................. 13

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*,
 385 F. Supp. 3d 212 (S.D.N.Y. 2019).................................................................................. 10

*Cawthon v. Yaoyage*,
 2023 WL 2786826  (S.D.N.Y. Apr. 5, 2023)........................................................................ 10

*Cawthon v. Yaoyage*,
 2024 WL 95055 (S.D.N.Y. Jan. 9, 2024) ............................................................................... 9

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
 701 F. Supp. 2d 506 (S.D.N.Y. 2010)............................................................................ 12, 13

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
 928 F. Supp. 2d 705 (S.D.N.Y. 2013).................................................................................. 13

*DeMaria v. Andersen*,
 153 F. Supp. 2d 300 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003) ..................... 14, 15

*Gang Chen v. China Green Agric., Inc.*,
 2021 WL 103306 (S.D.N.Y. Jan. 6, 2021) ............................................................................. 6

*Hutchison v. Deutsche Bank Sec. Inc.*,
 647 F.3d 479 (2d Cir. 2011).................................................................................................. 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir.2009)..................................................................................................... 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................ 12

*In re Velti PLC Sec. Litig.*,
 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015).......................................................................... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re Veon Ltd. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018).......................................................................... 8

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
  504 F. Supp. 3d 224 (S.D.N.Y. 2020)................................................................................ 13, 15

*In re: Petrobras Sec. Litig.*,
  152 F. Supp. 3d 186 (S.D.N.Y. 2016).................................................................................... 14

*P. Stolz Family P'ship, L.P. v. Daum*,
  166 F. Supp. 2d 871 (2001) ................................................................................................... 15

*Pinter v. Dahl*,
  486 U.S. 622 (1988)............................................................................................................... 12

*Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  714 F. Supp. 2d 475 (S.D.N.Y. 2010).............................................................................. 11, 15

*Ramsaran v. Abraham*,
  2017 WL 1194482 (S.D.N.Y. Mar. 30, 2017) ...................................................................... 10

*Safavieh Int'l, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*,
  2023 WL 3977505 (S.D.N.Y. June 13, 2023) ......................................................................... 9

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
  2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ............................................................. 10, 11, 12

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*,
  941 F. Supp. 1369 (S.D.N.Y. 1996)....................................................................................... 14

*Smart Study Co. v. Acuteye-Us*,
  620 F. Supp. 3d 1382 (S.D.N.Y. 2022)............................................................................... 6, 10

*Yi Xiang v. Inovalon Holdings, Inc.*,
  254 F. Supp. 3d 635 (S.D.N.Y. 2017)..................................................................................... 13

**Statutes**

15 U.S.C. § 77l(a)(2)..................................................................................................................... 12

**PRELIMINARY STATEMENT**

Plaintiffs have put one over on this Court.  In this Securities Act case based on the IPO of China-based Missfresh Limited, they asked the Court to permit them to serve defendant Zhaohui Li, a Chinese citizen residing in China, by emails to third-parties rather than in accordance with the Hague Convention, as federal law requires.  They claimed the need for alternative service because their one attempt at properly serving Mr. Li through Hague Convention—made at Missfresh's headquarters—did not work and they could not find his home address.  They did not tell the Court, however, that the offering materials on which they sue explicitly stated that Missfresh's headquarters was not Mr. Li's business address and provided the correct one.  Plaintiffs offered no explanation for their failure to use the address they were given for Mr. Li.

Plaintiffs compounded this lack of candor by telling the Court that service on Mr. Li at Missfresh's headquarters was reasonable because he was still a Missfresh director when they began the service process for him.  In truth, Mr. Li had resigned from Missfresh's board a ***year earlier***.  And that resignation came eight months before this action was even filed, putting the lie to Plaintiffs' representation that Mr. Li did not resign until four months after this action was filed and thus "clearly had knowledge of this case."  (Dkt. No. 104 at 6.)  Plaintiffs' failure to give the Court a complete, accurate picture of the facts in their motion for alternative service alone warrants reconsideration—and denial—of the motion.

But Plaintiffs also failed to give the Court a complete, accurate picture of the law.  Plaintiffs did not discuss any of the cases requiring a plaintiff seeking to avoid the Hague Convention to actually show that he made a reasonable attempt at service through the Hague Convention first.  Attempting to serve a defendant only at a business address eight months after he has cut ties with that business does not qualify as "reasonable" under any circumstances.  Nor does failing to even ***attempt*** service on a defendant at the correct address he provided.  Plaintiffs

also failed to show the ***necessity*** of court intervention—not the mere desire to hurry things along. Courts routinely reject the notion that a plaintiff can take a shortcut around the Hague Convention procedures merely to get somewhere faster. The Hague Convention is a carefully crafted treaty about how to serve international judicial process, predicated on comity among sovereign nations. And federal law dictates that it be followed, without an exception for exigent circumstances, which did not exist here in any event. Had plaintiffs simply followed the Hague Convention procedure to serve Mr. Li at the correct address he provided, service could have been effectuated months ago. They did not tell the Court that fact, though.

It is no wonder, then, that the Court granted Plaintiffs' unopposed motion. But the Court should reconsider to hear Mr. Li's arguments in opposition and deny the motion. Mr. Li has therefore not been properly served, and the complaint must be dismissed against him for insufficient service of process under Rule 12(b)(5).

The claims brought by the three institutional Plaintiffs must also be dismissed under Rules 12(b)(1) and 12(b)(6) because those Plaintiffs have not pleaded an injury caused by the allegedly misrepresented financials and thus have neither standing to pursue their claims nor the requisite allegations to state it. Although they represented to the Court that they suffered significant damages as a result of alleged misleading offering materials, these three Plaintiffs admit that they sold all their shares before any corrective disclosure could have affected the market price. As courts do not hesitate to hold, this inability to establish an injury resulting from the alleged misrepresentations dooms a plaintiff's claim as a matter of law. It is properly considered at the pleading stage, and the claims are properly dismissed now.

Other claims fail on the merits as well. Plaintiffs cannot plead a Section 12(a)(2) claim against Mr. Li because they have not pleaded facts suggesting that he was a "statutory seller."

2

And their Section 15 claim fails against Mr. Li because they have pleaded none of its elements—a primary Section 11 violation, Mr. Li's control of the company, or any culpable conduct on his part. These claims should also be dismissed as to Mr. Li under Rule 12(b)(6).

## FACTUAL BACKGROUND

*The Lawsuit.* On June 25, 2021, China-based Missfresh undertook an Initial Public Offering ("IPO") of American depository shares ("ADSs"). (Compl. ¶ 61.)[1] In connection with the IPO, Missfresh filed with the SEC a Registration Statement and a Prospectus. (*Id.*) This action, alleging material omissions and misstatements in those offering materials, followed on July 12, 2022. Plaintiffs challenge three things in their amended complaint: (1) financial information that was subsequently restated; (2) omission of internal control deficiencies that allegedly led to the accounting restatement; and (3) failure to disclose the alleged unsustainability of Missfresh's business model. (*See* Dkt. No. 79 at 1–2.) Plaintiffs allege that they each purchased ADSs "pursuant and traceable to" the allegedly misleading offering materials. (Compl. ¶¶ 15–19.) Plaintiffs Maso Capital Investments Limited, Blackwell Partners LLC – Series A, and Star V Partners LLC (together, the "Institutional Plaintiffs") admit that they each sold all of their shares within two weeks of acquiring them. (*See* Dkt. No. 5-3.)

Although the Complaint names as defendants Missfresh and various of its executives, along with the IPO underwriters and authorized U.S. agent, Plaintiffs initially did not serve certain individuals, including Mr. Li, who is located in China. The defendants that were served moved to dismiss, challenging the claims on both falsity and loss causation grounds. (*See* Dkt. No. 43.) The Court dismissed the two omission claims but permitted Plaintiffs to pursue claims

---

[1] Citations to "Ex. __" are to the exhibits to the Declaration of Abby F. Rudzin. Unless otherwise noted, all emphasis is added in, and internal citations and quotation marks are omitted from, quoted passages.

based on the restated financials.  (Dkt. No. 69 at 1.)  The Court held that it could not find no loss causation as a matter of law because there were price drops that occurred after the alleged corrective disclosures and thus might have been caused by the alleged misstatement.  (Dkt. No. 79 at 18–20.)

*Mr. Li.*  Mr. Li sat on Missfresh's board at the time of the IPO and signed the Registration Statement.  (Compl. ¶ 25.)  The Registration Statement explicitly stated that the address of Missfresh's headquarters was not Mr. Li's business address and provided his correct business address.  (Ex. 1 at 181–82 & n.4.)  Mr. Li left the Board shortly thereafter, on November 11, 2021, eight months before this action was filed.  (*See* Ex. 2.)  Nevertheless, Plaintiffs requested a summons for Mr. Li listing his address as the Missfresh headquarters.  (*See* Dkt. No. 1-3 at 3.)  In November 2022, nearly four months after the summons for Mr. Li was issued, Plaintiffs sought to serve Mr. Li under the Hague Convention, asking the Chinese authorities to serve him at the incorrect address in the summons.  (*See* Decl. of Philip Kim in Support of Plaintiffs' Mot. for Alt. Service of Process ("Kim Decl.") (Dkt. No. 105) ¶¶ 4–5.)

In January 2023, after filing an amended complaint (Dkt. No. 34), Plaintiffs sent another service request under the Hague Convention to Mr. Li—at the same incorrect address.  (*See* Kim Decl. ¶ 6.)  Plaintiffs assert that they received notices from the Chinese government stating that service of both the original and amended complaint was unsuccessful because there was "no such person at the address provided."  (*Id.* ¶ 7.)  Plaintiffs claim that they then, in October 2023, "conducted a Google search to find the current home addresses of the Individual Defendants" but were "unable to locate such information."  (*Id.* ¶ 12.)  Plaintiffs also claim that they "engaged an investigator based in China with extensive experience in conducting investigations for U.S. litigations to search for the current home addresses of the Individual Defendants."  (*Id.*)  The

4

investigator was supposedly unable to locate a home address for Mr. Li.  He advised Plaintiffs that "further attempts could be made" but that he could not guarantee success.  (*Id.*)

Rather than taking the investigator up on his offer to make further efforts, Plaintiffs filed their first *ex-parte* motion for alternative service on November 6, 2023.  (Dkt. Nos. 80–82.)  On February 21, 2024, Plaintiffs filed a renewed *ex-parte* motion requesting to serve Mr. Li via email on his U.S. counsel in another litigation and through investor-relations email addresses at other companies with which they assert Mr. Li is affiliated.  (*See* Dkt. Nos. 103–05.)  Plaintiffs told the Court that Mr. Li was still a director of Missfresh when they sought to serve him under the Hague Convention at Missfresh's headquarters, though he had left the company eight months before this action was even filed.  (Kim Decl. ¶ 17)  They also told the Court that they could not locate an address for him, without disclosing that a correct one had been provided for him in the Registration Statement.  (*Id.* ¶ 12)  On March 5, 2024, the Court granted Plaintiffs' *ex-parte* motion for alternative service (Dkt No. 119), and Plaintiffs emailed the complaint to the recipients they had proposed for Mr. Li.  (Dkt. Nos. 120–21).

## ARGUMENT

All Plaintiffs' claims against Mr. Li should be dismissed because they failed to serve him in accordance with the Hague Convention, and the Court should not have permitted alternative service.  The Institutional Plaintiffs' claims should be dismissed because they could not have suffered any injury caused by the allegedly misleading financial statements.  And all claims under Sections 12 and 15 should be dismissed as to Mr. Li for failure to state a claim.

## I.    Plaintiffs' claims against Mr. Li should be dismissed under Rule 12(b)(5) because Plaintiffs failed to properly serve Mr. Li.

Plaintiffs' emails to third parties cannot constitute service on Mr. Li because the Court should not have permitted alternative service.  The "systemic comity interests embodied in the

5

[Hague] Service Convention shouldn't be sacrificed in the name of concrete case management concerns." *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1402 (S.D.N.Y. 2022). Although this Court granted Plaintiffs' motion for alternative service, that motion "was wholly unopposed, such that the court did not have the benefit of briefing that took an alternative position to that advanced by the plaintiff." *Id.* at 1396. Mr. Li respectfully requests that, now that he is before this Court, the Court reconsider and set aside its prior order and dismiss the claims against Mr. Li under Rule 12(b)(5).

Plaintiffs' motion for alternative service should have been denied because the "law is clear . . . that before the Court will authorize alternative service pursuant to Rule 4(f)(3), the moving party must make some showing of the need for judicial intervention." *Gang Chen v. China Green Agric., Inc.*, 2021 WL 103306, at *2 (S.D.N.Y. Jan. 6, 2021). "Effectively, this rule requires the moving party first to follow—or attempt to follow—international agreements and law in recognition of principles of comity and not to whimsically seek an alternate means of service." *Id.* Plaintiffs were thus required to make: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Id.*; *accord Asia Mar. Pac. Chartering Ltd. v. Comercializadora Columbia S.A. de C.V.*, 2023 WL 372880, at *2 (S.D.N.Y. Jan. 23, 2023) (same). Plaintiffs did not establish either of these two criteria.

**A.    Plaintiffs did not reasonably attempt to effectuate service.**

Plaintiffs' limited service attempts on Mr. Li were not reasonable. They did not even try to serve him at the address given for him in the Registration Statement on which they sue. Instead they attempted to serve him only at Missfresh's headquarters in China, long after he had left the company's board. (*See* Kim Decl. ¶ 5.) This was not a reasonable attempt to effectuate service for at least two independent reasons.

First, Plaintiffs' attempt to serve Mr. Li at Missfresh's headquarters was unreasonable because the Registration Statement explicitly stated that the address of Missfresh's headquarters was not a correct business address for Mr. Li and provided a different, correct business address for him.  (*See* Ex. 1 at 181–82 & n.4 (stating that Mr. Li's business address was different from Missfresh's address and providing correct one).)  Plaintiffs do not suggest that they attempted service at the business address they had for Mr. Li and did not tell this Court in their motion that they had been given his correct business address but chose not to use it.

Second, Plaintiffs only dispatched their service request to the Chinese authorities to serve Mr. Li at Missfresh's headquarters *a year after* he had left Missfresh's board.  (*See* Kim Decl. ¶¶ 5, 17; Ex. 2.)  Thus, even were attempting to serve him at Missfresh's headquarters a reasonable approach while he was on its board—despite being told in the Registration Statement that it was not his business address—it certainly was not after Mr. Li left the board.  As Plaintiffs acknowledge, Mr. Li resigned as a director of Missfresh on November 11, *2021*, yet they sent their Hague request to the Chinese authorities on November 4, *2022* (and on January 30, 2023, for the amended complaint), still using Missfresh's address.  (*See* Kim Decl. ¶ 17.)  Plaintiffs' sworn statement that Mr. Li was still a director of Missfresh when Plaintiffs dispatched their Hague service request (*id.*) is simply false.  The same goes for Plaintiffs' statement that Mr. Li "clearly had knowledge of this case" because by the time he resigned, this action has received media coverage in China.  (Dkt. No. 104 at 6.)  Mr. Li resigned eight months before this action was even commenced.  Attempting to serve Mr. Li at Missfresh headquarters thus was not only unreasonable, but Plaintiffs simply misrepresented the facts when asking this this Court for relief.

There can be no dispute that Plaintiffs' attempt to serve Mr. Li at an incorrect address when they had been told it was incorrect and had a correct one for him was not reasonable. *Cf. In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *9 (S.D.N.Y. Aug. 30, 2018) (finding that service attempts did "not constitute diligence or reasonable efforts" because, among other reasons, service was attempted at a company that defendant had already resigned from and plaintiff had other address). Nor was Plaintiffs' decision to mislead the Court about—if not outright misrepresent—the facts on their service attempt. This alone warrants dismissal of the action as to Mr. Li.

### B. The Court's intervention was not necessary.

Plaintiffs' motion for alternative service should also have been denied because they failed to show that the Court's intervention was necessary. They did not show that they could not serve Mr. Li under the Hague Convention. They showed only that—not surprisingly—they could not serve him under the Hague Convention at an incorrect address. "This is not a matter where the foreign state has refused to take action or where service has been unduly delayed by the foreign state." *Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) (denying request for alternative service). Plaintiffs did not show that they needed the Court's assistance to serve Mr. Li under the Hague Convention at the correct address, which they were given.

Plaintiffs' efforts to serve Mr. Li were minimal at best. As an initial matter, Plaintiffs unreasonably waited nearly four months before even starting the Hague Convention process for Mr. Li. (*See* Kim Decl. ¶ 5.) Then they dispatched service to the wrong address. And while Plaintiffs state that in October 2023 they hired an "investigator" who was unsuccessful at locating Mr. Li's home address, they concede that the investigator "advised Plaintiffs that further attempts could be made." (Kim Decl. ¶ 12.) Plaintiffs did not meet their burden to show that

8

service was not possible without Court intervention: they should have first been required to do more. *See Cawthon v. Yaoyage*, 2024 WL 95055, at *1–2 (S.D.N.Y. Jan. 9, 2024) (denying motion for alternative service where plaintiff had "not shown that he exercised reasonable diligence in investigating Defendant's physical address" and holding that plaintiff "must make a more robust effort to ascertain Defendant's address"). At a minimum, they should have been required to attempt service under the Hague Convention at ***the address they were given for him***.

Plaintiffs claimed in their motion that court intervention was necessary so as not to delay the case. (Dkt. No. 104 at 6.) As an initial matter, the delay was caused by Plaintiffs' failure to attempt service in 2022 at the correct address. But in any event, there "is neither any end-run around the rules of procedure nor any exigent circumstances exception to Rule 4." *Safavieh Int'l, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, 2023 WL 3977505, at *6 (S.D.N.Y. June 13, 2023) (denying motion for alternative service). And this Court has denied motions for alternative service where, as here, plaintiffs were informed after their first attempt at service through the Hague Convention that defendants were no longer located at the address used but obtained another address through the exercise of reasonable diligence. *See Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd.*, 2015 WL 6437384, at *1, *3 (S.D.N.Y. Oct. 19, 2015) (Rakoff, J.) (denying alternative service given that plaintiff "could still seek to serve" defendant at another address through the Hague Convention because the "availability of this option bears on the issue of whether alternative means of service are warranted" and plaintiff therefore "has not shown that the circumstances render the Court's intervention necessary"). Here too, Plaintiffs have always been able to—and still could—use the Hague Convention procedures to serve Mr. Li at the correct address given for him in the Registration Statement. They just did not tell the Court that fact.

A "desire to move quickly" is "no excuse to flout procedural rules." *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019). And if Plaintiffs had given this Court an accurate picture—i.e., that the offering materials provided a correct address for Mr. Li—the Court presumably would have denied the motion for alternative service. It should reconsider and do so now, find that Plaintiffs have failed to properly serve Mr. Li, and dismiss the claims against him under Rule 12(b)(5). *See Ramsaran v. Abraham*, 2017 WL 1194482, at *10 (S.D.N.Y. Mar. 30, 2017) (dismissing claims under Rule 12(b)(5) against defendant where service was not properly effectuated).[2]

## II.    The Institutional Plaintiffs' claims must be dismissed because they sold their shares before any alleged corrective disclosure.

Having sold all of their shares approximately a year before any alleged corrective disclosure occurred, the Institutional Plaintiffs cannot show an injury caused by the allegedly false financials and therefore lack standing to bring any claim. The Court previously found a fact issue on causation because price drops occurred after corrective disclosures and thus might have affected a person who still held her shares on that date. (*See* Dkt. No. 79 at 18–20.) But there is no fact issue for the Institutional Plaintiffs because they admit they sold their shares in July 2021 (Dkt. No. 5-3), and the first alleged corrective disclosure did not occur until the following year (Compl. ¶¶ 80–83). Their claims are therefore appropriately dismissed at the pleadings stage for lack of standing. *See, e.g.*, *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *10 (S.D.N.Y. Mar. 12, 2013); *In re Velti PLC Sec. Litig.*, 2015 WL

---

[2] The Court should also dismiss the claims against Mr. Li because the insufficient service of process means that the Court does not have personal jurisdiction over Mr. Li. *See Smart Study*, 620 F. Supp. 3d at 1397 ("[D]efendants were not properly served pursuant to Rule 4(f)(3), and Plaintiff has not established that the Court has personal jurisdiction over Defendants on that basis."); *see also Cawthon v. Yaoyage*, 2023 WL 2786826, at *2 (S.D.N.Y. Apr. 5, 2023) (recognizing that if "service was improper" court "lacked personal jurisdiction over the Defendant").

5736589, at *29 (N.D. Cal. Oct. 1, 2015).  Indeed, standing "is a threshold question—antecedent to class certification—that requires plaintiffs to have been personally injured."  *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 480–81 (S.D.N.Y. 2010) (Rakoff, J.).  The Institutional Plaintiffs were not.

*Schuler* is instructive.  There, as here, the complaint alleged a "corrective disclosure-price drop theory of causation."  2013 WL 944777, at *9.  The defendants argued that the plaintiff could not plausibly have suffered losses based on a misstatements in the offering documents because the plaintiff had sold his shares months before any corrective disclosure.  The *Schuler* court agreed, dismissing the plaintiff's claims because "[i]n these circumstances, [the plaintiff's] losses may not be attributed to the misrepresented facts that became generally known in March 2011."  *See id.* at *10.  In other words, the plaintiff, "having sold all his stock well prior to the corrective disclosures, cannot benefit from" the "corrective disclosure-price drop theory of causation."  *Id.* at *9–10.

Similarly, in *In re Velti*, the court held that a plaintiff could not bring Section 11 claims where its "sworn certification establishe[d] that it sold all of its [company] shares months before . . . the date of the only corrective disclosures alleged in the" complaint.  2015 WL 5736589, at *29.  Put differently, "'in-and-out traders'—investors who purchased shares during the class period but sold those shares before the misrepresentation was disclosed—would not 'even conceivably be able to prove loss causation.'"  *Schuler*, 2013 WL 944777, at *10 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir.2009)).

Because the Institutional Plaintiffs could not possibly have suffered any losses attributable to the allegedly misrepresented facts and this is obvious on the face of the Complaint, their claims are appropriately dismissed at the pleading stage.  *See, e.g.*, *Schuler*,

11

2013 WL 944777, at *10 ("Because [plaintiff]'s losses are not attributable to information that came to light in the corrective disclosures, Defendants have established their negative causation defense."); *see also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000) ("There is no allegation in the complaint that any corrective disclosures reached the market prior to April 1999.  Thus, the complaint reveals that the Section 11 defendants have an absolute 'negative causation' defense pursuant to Section 11(e) for any [] shareholders who disposed of their shares prior to the corrective disclosure.").

**III.    Plaintiffs' Section 12(a)(2) claim should be dismissed against Mr. Li because they have failed to plead that Mr. Li was a statutory seller.**

Because Plaintiffs do not allege that Mr. Li either passed title to or solicited Plaintiffs' purchase of securities, they have failed to plead that he was a statutory seller, and the Section 12(a)(2) claims against him should be dismissed.  "Section 12(a)(2) of the Securities Act imposes liability upon any person who 'sells' securities." *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010) (citing 15 U.S.C. § 77l(a)(2)).  Mr. Li is a seller under Section 12 "only if [he] (1) directly passed title to the securities, or (2) solicited the purchase of securities out of a desire to (a) serve their own interests or (b) serve the interests of the securities' owner." *Id.* (citing *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988)).  Plaintiffs do not adequately plead that Mr. Li did either.

First, it is undisputed that Mr. Li did not directly pass title to the securities to any plaintiff.  (Compl. ¶ 61 ("In the Offering, Missfresh, through the Underwriter Defendants*,* sold . . . .").)  As a matter of fact, Li owned no company stock at the time of the offering, and as such could not possibly transfer share title to Plaintiffs.  (*See* Ex. 1 at 181.)

Second, Plaintiffs have not pleaded how Mr. Li "solicited the purchase of securities out of a desire to (a) serve their own interests or (b) serve the interests of the securities' owner." *City*

*of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 719 (S.D.N.Y. 2013). Plaintiffs offer only a conclusory, boilerplate allegation that "[e]ach of the Individual Defendants . . . signed or authorized the signing of the Registration Statement . . . , prepared and disseminated the Offering Documents and Offerings' roadshow materials, participated in the Offering, and solicited the purchase of Missfresh ADSs to serve their financial interests and those of the Company." (Compl. ¶ 32.) That does not meet their pleading burden. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard" under Rule 8.) (affirming dismissal).

*Citiline* made clear that not only is "signing a registration statement [] insufficient to constitute solicitation" but even when "high ranking corporate officers [] allegedly made material misrepresentations directly to investors at a corporate investor day," they are "not statutory sellers." *City of Westland*, 928 F. Supp. 2d at 720 (citing *Citiline*, 701 F. Supp. 2d at 510, 512). Here, just as in *Citiline* and *City of Westland*, the Complaint is "largely silent as to the role played by the Individual and Director Defendants in the solicitation of the securities at issue." *City of Westland*, 928 F. Supp. 2d at 720. Dismissal of the Section 12(a)(2) claim is therefore appropriate.

"Courts in this District have consistently followed the rule from *Citiline*." *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 645–46 (S.D.N.Y. 2017); *accord In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 260–61 (S.D.N.Y. 2020) ("Following *Citiline*, numerous courts in this District have followed suit."). This Court should do the same and dismiss the Section 12(a)(2) claim against Mr. Li.

**IV.    Plaintiffs' Section 15 claim against Mr. Li should be dismissed.**

"In order to survive a motion to dismiss a claim under Section 15, plaintiffs must allege: (i) an underlying primary violation of the securities laws by the controlled person; (ii) control over the controlled person; and (iii) particularized facts as to the controlling person's culpable participation in the violation of the controlled person." *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 314 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003).  Plaintiffs fail to allege any of these three elements, so their Section 15 claims against Mr. Li should be dismissed.

**A.    Plaintiffs fail to allege a primary Section 11 claim.**

To the extent the Court dismisses the Institutional Plaintiffs' Section 11 claim, it should also dismiss their concomitant Section 15 claim.  *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) ("Because Plaintiffs failed to plead a § 11 claim, their § 15 claim necessarily fails.").

**B.    Plaintiffs fail to allege that Mr. Li was a control person.**

Plaintiffs fail to adequately allege that Mr. Li was a control person.  At most, they allege that he was an outside director who signed the registration statement.  But such allegations are insufficient to state a control-person claim because those are the allegations necessary to state a primary claim.  *See In re: Petrobras Sec. Litig.*, 152 F. Supp. 3d 186, 198 (S.D.N.Y. 2016) (Rakoff, J.) (defendant's "alleged primary violation cannot serve as the basis of a § 15 claim against him" because "[c]ontrol person liability is separate from § 11 liability"); *accord Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996) ("Director status alone does not establish control person liability.").

In any event, Plaintiffs allege that "Defendant Missfresh controlled all of the Individual Defendants" rather than the other way around.  (Compl. ¶ 129.)  Taking Plaintiffs' allegation as

14

true, Mr. Li could not have controlled Missfresh if Missfresh controlled him. As such, Plaintiffs fail to state a Section 15 claim against Mr. Li.

### C.   Plaintiffs fail to allege particularized facts as to Mr. Li's meaningful culpable participation.

Plaintiffs' Section 15 claims also fail because they do not plead particularized facts suggesting Mr. Li engaged in meaningful culpable conduct. As this Court has held, "to make out a Section 15 'control person' claim (as opposed to a strict liability claim under Section 11 for someone who signed the relevant regulation statements or was a director or officer at the time), plaintiffs must also allege . . . 'meaningful culpable conduct [by an individual defendant] beyond mere status as a director or officer.'" *Merrill Lynch*, 714 F. Supp. 2d at 485; *see also DeMaria*, 153 F. Supp. 2d at 314 (plaintiff must allege "particularized facts as to the controlling person's culpable participation").

The Complaint "does not remotely meet this standard. . . . [N]owhere is it alleged that [Mr. Li] knew of or was involved in the . . . misrepresentations on which" Plaintiffs' claim is based. *See P. Stolz Family P'ship, L.P. v. Daum*, 166 F. Supp. 2d 871, 873 (2001) (Rakoff, J.). To the contrary, Plaintiffs expressly disclaim any knowledge, fraud, or recklessness. (*See* Compl. ¶¶ 104, 119, 127 ("This cause of action does not sound in fraud. Plaintiffs do not claim that any of the Defendants committed intentional or reckless misconduct or that any of the Defendants acted with scienter or fraudulent intent. . . . Plaintiffs expressly disclaim any allegations of scienter or fraudulent intent in these non-fraud claims . . . .").) That precludes them from showing Mr. Li's culpable participation. *See In re Weight Watchers*, 504 F. Supp. 3d at 264 ("Most courts in this district have held that . . . culpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to

15

dismiss."). Because Plaintiffs fail to allege particularized facts regarding Mr. Li's meaningful culpable conduct, Plaintiffs' Section 15 claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Li's motion to dismiss for insufficient service, or in the alternative, motion to dismiss all claims of the Institutional Plaintiffs and all Section 12(a)(2) and Section 15 claims against him.

Dated: March 27, 2024
      New York, New York

Respectfully submitted,

   */s/ Abby F. Rudzin*
Abby F. Rudzin
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10026
Telephone: (212) 326-2000
Email: arudzin@omm.com

William K. Pao
(*pro hac vice* forthcoming)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 430-6000
Email: wpao@omm.com

*Counsel for Defendant Zhaohui Li*

16