**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN CHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>                    v.<br><br>MISSFRESH LIMITED, ZHENG XU, JUN WANG, YUAN SUN, ZHAOHUI LI, COLLEEN A. DE VRIES, HANSONG ZHU, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, AMTD GLOBAL MARKETS LIMITED, ICBC INTERNATIONAL SECURITIES LIMITED, NEEDHAM & COMPANY, LLC, CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, ABCI SECURITIES COMPANY LIMITED, GF SECURITIES (HONG KONG) BROKERAGE LIMITED, FUTU INC., TIGER BROKERS (NZ) LIMITED, and COGENCY GLOBAL, INC.,<br><br>       Defendants. | Case No. 1:22-cv-09836-JSR |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT ZHAOHUI LI'S MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

Table of Authorities ..................................................................................................... ii

I.      PRELIMINARY STATEMENT ..........................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND ..........................................3

III.    LEGAL STANDARD...........................................................................................5

IV.     ARGUMENT ........................................................................................................6

        A.   The Methods of Alternative Service Were Proper and Remain
             Unchallenged by Defendant Li ..................................................................6

        B.   The Court Properly Authorized Service on Defendant Li's U.S.
             Counsel .......................................................................................................6

             1.   Service Via Hague or Any International Convention is Not
                  Required Before Granting Alternative Methods of Service...................6

             2.   The Standard of Reasonableness Is Inapposite When Evaluating
                  the Appropriateness of The Requested Alternative Service .................7

        C.   The Court Properly Ordered Service Via Email to the Two Hong Kong
             Corporate Emails .......................................................................................9

        D.   Unavailing Trading Arguments Have No Place in a Motion to Dismiss....................10

        E.   Defendant Li Was a Statutory Seller ........................................................12

        F.   Control Person Claims ..............................................................................14

V.      CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A*dvanced Aerofoil Techs., AG v. Todaro*,
2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ...............................................................................7

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
19 F.4th 145 (2d Cir. 2021) ....................................................................................................14

*In re APAC Teleservice, Inc. Sec. Litig.*,
1999 WL 1052004 (S.D.N.Y. Nov. 19, 1999) ........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................5

*Atlantica Holdings, Inc. v. BTA Bank JSC*,
2014 WL 12778844 (S.D.N.Y. Mar. 31, 2014) .......................................................................7

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012)......................................................................................15

*Briarwood Invs. Inc. v. Care Inv. Tr. Inc.*,
2009 WL 536517 (S.D.N.Y. Mar. 4, 2009) ............................................................................13

*Cawthon v. Yaoyage*,
2024 WL 95055 (S.D.N.Y. Jan. 9, 2024) (Motion ).................................................................9

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).....................................................................................................5

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010)...............................................................................13, 14

*Fisher v. Petr Konchalovsky Found.*,
2016 WL 1047394 (S.D.N.Y. Mar. 10, 2016) .........................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005).....................................................................................13

*Francisco v. Abengoa, S.A.*,
559 F. Supp. 3d 286 (S.D.N.Y. 2021).................................................................................14, 15

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)..................................................................................................................5

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................................11

*In GLG Life Tech Corp. Sec. Litig.*,
   287 F.R.D. 262 (S.D.N.Y. 2012) ....................................................................................7

*In re:NIO, Inc., Sec. Litig.*,
   No. 1:19-cv-01424-NGG-JRC (E.D.N.Y.) ......................................................................4

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   718 F.Supp.2d 495 (S.D.N.Y. 2010)..............................................................................13

*Jian Zhang v. Baidu.com Inc.*,
   293 F.R.D. 508 (S.D.N.Y. 2013) ....................................................................................7

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
   650 F.3d 167 (2d Cir. 2011)...........................................................................................14

*In re Lendingclub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) .........................................................................11

*Levine v. AtriCure*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007)............................................................................11

*Litwin v. Blackstone Grp., L.P.*,
   634 F.3d 706 (2d Cir. 2011).............................................................................................6

*McMahan v. Wherehouse Ent. Inc.*,
   65 F.3d 1044 (2d Cir. 1995).............................................................................................11

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010)..............................................................................................5

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012).........................................................................................6, 15

*In re NIO, Inc. Sec. Litig.*,
   2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021).................................................................15

*In re OSG Sec. Litig.*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013).............................................................................13

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir.2002) ...........................................................................................7

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)........................................................................................6, 15

iii

*S.E.C. v. Anticevic*,
  2009 WL 361739 (S.D.N.Y. Feb. 13, 2009)................................................................6, 7

*In re Snap Inc. Sec. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) ...................................................................11

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
  2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)................................................................13

*Stone Fam. Tr. v. Credit Suisse AG*,
  2022 WL 954743 (S.D.N.Y. Mar. 30, 2022) ..................................................................16

*In re Veon Ltd. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) ..................................................................9

*In re Vertiv Holdings Co. Sec. Litig.*,
  2023 WL 7689961 (S.D.N.Y. Nov. 6, 2023) ...................................................................15

*Wang v. Cloopen Grp. Holding Ltd.*,
  661 F. Supp. 3d 208 (S.D.N.Y. 2023)..............................................................................15

*Youngers v. Virtus Inv. Partners Inc.*,
  195 F. Supp. 3d 499 (S.D.N.Y. 2016)..............................................................................11

**Statutes & Rules**

15 U.S.C. § 77k(e) .................................................................................................................11

15 U.S.C. § 77l......................................................................................................................12

Fed. R. Civ. P. 8 ..............................................................................................................1. 3. 6

Fed. R. Civ. P. 4 ..................................................................................................... *passim*

iv

Court-appointed Lead Plaintiffs Chelsea Fan; Maso Capital Investments Limited, Blackwell Partners LLC – Series A, and Star V Partners LLC (the "Maso Plaintiffs," and together with Ms. Fan, "Lead Plaintiffs"); and named Plaintiff James Sannito (together with Lead Plaintiffs, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Zhaohui Li's Motion to Dismiss the Amended Class Action Complaint (the "Motion").[1] ECF No. 128.

## I.    PRELIMINARY STATEMENT

Defendant Li seeks dismissal of the Amended Complaint as to him only. Having seen his fellow Defendants' best efforts to do the same soundly rejected by this Court (*see* Order and Opinion, ECF Nos. 69, 79), Defendant Li opts to justify a dismissal through rhetoric and little else. Pruning the Motion's thorny language, the actual substance underneath is nowhere near proximate to the burden required to dismiss the strict liability and negligence claims levied at Defendant Li under an undisputed Rule 8 pleading standard. For the reasons stated herein, the Motion serves as nothing more than a cumbersome procedural obstacle.

In their renewed Motion for Alternative Service ("MAS"), Plaintiffs adequately demonstrated that service on Defendant Li's U.S. Counsel and by emailing the documents required for service of process to the business email addresses of the two Hong Kong-listed companies where Defendant Li serves as an executive and a director does not violate the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") or due process. After carefully considering the burdens placed on Plaintiffs to satisfy the request for alternative service, the Court granted the

---

[1] Citations to "¶_" and "¶¶_" are to paragraphs of the Amended Class Action Complaint (the "Complaint"). ECF No. 34. All capitalized terms not defined herein have the meaning ascribed in the Complaint. Unless otherwise noted, emphasis has been added and internal citations and quotation marks have been omitted throughout.

MAS ("Order Authorizing Alternative Service," ECF No. 119) pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure ("Rule 4(f)(3)"). Plaintiffs subsequently served Defendant Li consistent with the Court's order.

In his Motion, Defendant Li refuses to address the well-standard law governing alternative service and instead urges the adoption of an alternative standard upon which no law, or sound reason, exists. In so doing, Defendant Li misconstrues the standards under which alternative service may be granted. It is undisputed that Plaintiffs need only demonstrate the method of alternative service lacks international law prohibitions and otherwise conform with due process. The Motion fails to point out any international law that prohibits service on the U.S. counsel or emailing to the Hong Kong email addresses. The Motion further fails to challenge that the means of alternative service did not conform with due process.

Plaintiffs have plainly satisfied their burden in seeking alternative service. The Court therefore properly authorized the service.

With respect to the Motion's attacks on the Maso Plaintiffs specifically, it is nothing more than a Trojan horse to relitigate negative causation arguments this Court has already held inappropriate at this stage. For that reason alone, such arguments fail. Indeed, damages calculations are not black and white as averred by the Motion, invoke a highly complex battleground of experts, and are entirely inappropriate for resolution on a barren record.

The Motion also argues that the Complaint fails to sufficiently allege Section 12(a)(2) liability. Not so. The Complaint alleges the direct participation in preparing and soliciting interest in the Offering and preparation of the Offering Documents which he signed. Further, the Complaint alleges that Defendant Li solicited participation in the Offering for the benefit of

himself, Missfresh, and certain selling shareholder defendants. This is sufficient at the pre-discovery pleading stage under Rule 8.

Finally, and after effectively conceding the Complaint has stated a primary violation against all Defendants under Section 11, the Motion levies an unmoored attack on control person liability unsupported by the vast majority of case law in this District. Namely that, to be a control person under Section 15, the Complaint must have pled scienter with particularity to meet a culpable participation standard at home in a securities fraud action—not a strict liability Securities Act case. Unless the Securities Act has been rewritten without Plaintiffs' knowledge, this argument fails on its face.

Accordingly, Plaintiffs request that the Motion be denied in full.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On December 28, 2022, Plaintiffs filed the Complaint (ECF No. 34), which then the served Defendants moved to dismiss. On September 12, 2023, the Court denied that motion to dismiss in part, allowing claims regarding the restatement of Q1 2021 net revenues to proceed. ECF No. 69. Thereafter, the Court issued a formal opinion to that effect on November 6, 2023 (the "Order") (ECF No. 79), which in part summarily rejected negative causation defenses at this stage in the litigation. *See* Order at 18-20. On March 26, 2024, Plaintiffs filed  their Motion for Class Certification, Appointment as Class Representatives, and Appointment of Co-Class Counsel. *See* ECF No. 123.

On November 6, 2023, Plaintiffs submitted a motion for alternative service on Defendant Li. *See* ECF Nos. 80-82.. After Defendant Missfresh revoked the settlement in principle previously agreed upon by the parties, Skadden, Arps, Slate, Meagher & Flom ("Skadden") withdrew its representation of Defendants Missfresh and Zheng Xu ("Xu"), and Plaintiffs renewed and resubmitted an amended motion for alternative service on February 21, 2024. ECF Nos.103-105.

Defendants Missfresh and Xu responded to the renewed motion for alternative service, stating that they were searching for the last known contact information of all Individual Defendants, including Defendant Li. ECF No. 118 at 2. On March 13, 2024, Defendants Missfresh and Xu represented to Plaintiffs' counsel that they do not have any contact information of any Individual Defendants[2] including Defendant Li. Shockingly, they failed to alert Plaintiffs to the fact that Missfresh's Registration Statement, signed by Defendant Xu, contains a business address in China that purportedly belongs to Defendant Li ("Chinese Address"). *See* Exhibit A to the Declaration of Alfred L. Fatale III ("Fatale Decl."). The Court approved Plaintiffs' renewed motion for alternative service in its entirety. (ECF No. 119.) On March 5, 2024, Plaintiffs promptly served Defendant Li according to the Court-approved methods of service. ECF Nos. 120-121.

Plaintiffs extensively set forth the factual background and supporting legal principles that support the Court's order granting alternative service on Defendant Li. (MAS at 1-9; Order Authorizing Alternative Service). As stated in the MAS (MAS at 1-4), Plaintiffs have repeatedly and continuously gone to great lengths to locate Defendant Li and serve him since the inception of this action. None of those efforts resulted in a valid address.

Subsequently, and going beyond the steps required for service upon the granting of the MAS, Plaintiffs have nonetheless prepared a request for service package under the Hague Convention and transmitted such request to the Chinese government on April 8, 2024 upon learning Defendant Li's purported Chinese Address on or about March 25, 2024.

Defendant Li retained Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Defendant Li's U.S. Counsel" or "Paul Weiss") in 2020 to defend him in the securities class action captioned *In re:NIO, Inc., Sec. Litig.*, No. 1:19-cv-01424-NGG-JRC (E.D.N.Y.), pending before Judge

---

[2] Individual Defendants are Li, Hansong Zhu, Jun Wang, and Yuan Sun.

Nicholas G. Garaufis in the Eastern District of New York (the "NIO Litigation"). *See* MAS at 6-7. The court record demonstrates that Defendant Li has maintained active communications with his U.S. Counsel for nearly four years. Fatale Decl. Ex. B.

According to the Court-ordered case management plan (ECF No. 102), discovery shall be completed by July 22, 2024. Even if Plaintiffs were able to successfully serve Defendant Li at the Chinese Address, it is highly unlikely that Plaintiffs would be able to meet all discovery cutoff dates in the case management plan.[3] It should be abundantly clear that Defendant Li's effort to challenge service are simply intended to delay the prosecution of this matter and avoid being bound by the same unfavorable decision issued by the Court on the appearing Defendants' Motion to Dismiss. *See* Order and Opinion, ECF Nos. 69, 79. Alternative service upon Defendant Li was proper. Defendant Li was served consistent therewith. And, Defendant Li is clearly now before this Court. Defendant Li's cynical efforts to hobble this Court's proper jurisdiction should be rejected.

## III.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

The Securities Act imposes a "***minimal burden***" on plaintiffs. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Under Section 11, the Complaint need only show "a material misstatement or omission to establish [a] *prima facie* case." *Id.*; *In re Morgan Stanley*

---

[3] As stated in the MAS (see MAS at 4 n.4), China's central authority has typically required nine months to a year, and in many instances several years, to effectuate service on defendants located in China.

*Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (same for Section 12(a)(2)). "Fraud is not an element[,]" the Complaint "need allege no more than negligence[,]" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), and thus the Complaint need only plead "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2); *see also Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). "Nor do the heightened pleading standards of the [PSLRA] apply to such non-fraud claims." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 157 (2d Cir. 2012).

## IV.    ARGUMENT

### A.    The Methods of Alternative Service Were Proper and Remain Unchallenged by Defendant Li

A method of alternate service is acceptable if it "(1) is not prohibited by international agreement[]; and (2) comports with constitutional notions of due processa[.]" *S.E.C. v. Anticevic*, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citation omitted). Plaintiffs plainly established that both means of alternative service ordered by the Court satisfied the law. (MAS 6-9; Order Authorizing Alternative Service). And, notably, Defendant Li nowhere argues that either method fails the two base requirements.

### B.    The Court Properly Authorized Service on Defendant Li's U.S. Counsel

#### 1.    Service Via Hague or Any International Convention is Not Required Before Granting Alternative Methods of Service

Beyond the pure vitriol cast upon the extensive efforts of Plaintiffs to serve Defendants Li, as set forth in the MAS, Defendant Li's position rests entirely upon the contention that Plaintiffs must first attempt to effectuate service via the Hague Convention under Rule 4(f)(1) before requesting the alternative method of serving his U.S. counsel. Motion at 6. Such a proposition is incorrect and simply misstates the law.

6

It is well established that "[a] plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Anticevic*, 2009 WL 361739, at *3(emphasis in original) (quoting *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir.2002) ("Rule 4(f)(3) is not ... in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing.... [N]o language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.").) Rule 4(f)(3) is "'merely one means among several which enables service of process on an international defendant' and 'is neither a 'last resort' nor 'extraordinary relief.''' *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 512 (S.D.N.Y. 2013) (quoting *Rio Props.*, 284 F.3d aat 1015)); A*dvanced Aerofoil Techs., AG v. Todaro,* 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) ("[T]here is no hierarchy among the subsections in Rule 4(f)."). In other words, Rule 4(f)(3) is "merely one means among several which enables service of process on an international defendant." *Rio Props.*, 284 F.3d. at 1015.

### 2. The Standard of Reasonableness Is Inapposite When Evaluating the Appropriateness of The Requested Alternative Service

In his Motion, Defendant Li urges the Court to adopt a standard essentially equivalent to requiring Plaintiffs to be omniscient before they could request the Court to have considered authorizing alternative methods of service.

At the outset, any form of a reasonableness prerequisite has explicitly been rejected by courts in this district. "The law is clear that [showings of reasonableness and necessity for the court's intervention] are not mandated by the Rule [4(f)(3)] itself." *Atlantica Holdings, Inc. v. BTA Bank JSC*, 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014). Rule 4(f)(3) "requires only that service be '(1) directed by the court; and (2) not prohibited by international agreement.'" *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (quoting *Rio Props.*, 284 F.3d

at 1014). Additionally, Plaintiffs should show the proposed alternative method comports with due process. *See Fisher v. Petr Konchalovsky Found.*, 2016 WL 1047394, at \*2 (S.D.N.Y. Mar. 10, 2016) (quoting *S.E.C. v. China Intelligent Lighting & Elecs., Inc.*, 2014 WL 338817, at \*1 (S.D.N.Y. Jan. 30, 2014)). The only prerequisites for authorizing alternative service have clearly been established and Defendant Li does not challenge this fact in his Motion.

Even if a reasonableness prerequisite exists, Plaintiffs have plainly established that they made reasonable efforts. In fact, the efforts of Plaintiffs were herculean: (1) attempting service of the initial complaint and the operative Amended Complaint at Missfresh's headquarters in China in accordance with the Hague Service Convention (*see* MAS at 1-2); (2) requesting Defendant Missfresh's former counsel Skadden, which also served as Defendant Missfresh's counsel on the IPO and closely worked with Defendant Li in the IPO, for Defendant Li's address over a period of four months before Skadden's withdrawal (*see* MAS at 2); (3) requesting Skadden to accept service on behalf of Defendant Li (*see* MAS at 2); (4) performing online searches, including researching on numerous companies associated with Defendant Li (*see* MAS at 3); (5) hiring an investigator in China to ascertain Defendant Li's home address (*see* MAS at 3); (5) seeking Defendant Li's last known contact information in Plaintiffs' first set of interrogatories (due by February 9, 2024) (*see* MAS at 3-4); and (6) requesting Defendant Li's contact information from Mr. Richard Lomuscio, Defendants Missfresh and Xu's current counsel (*see* MAS at 2).

Ultimately, Defendant Li's entire argument rests not just upon the erroneous imputation of a reasonableness standard, a standard that is not required in this Circuit, but one of omniscience by suggesting that the failure of Plaintiffs to find a single address amidst a multiple-hundred-page document single-handedly renders all the other efforts of Plaintiffs of no value. This standard defies logic and turns the concept of reasonableness into one demanding of omniscience.

Defendant Li's purported Chinese Address is buried in a footnote in a font size much smaller than the remaining text of the Registration Statement. While this address exists in the Registration Statement, its obscurity is reflected by the failure of Skadden, who drafted the Registration Statement, to provide the address to Plaintiffs despite Plaintiffs' repeated requests and formal interrogatories. Also reflecting the obscure placement of the address in the Registration Statement is the fact that Defendants Missfresh and Xu's current counsel, seemingly equally familiar with the Registration Statement, subject of this action, as is Plaintiffs' counsel, has represented that neither the Company nor CEO had any information pertaining to a serviceable address of Defendant Li. Fatale Decl. Ex. A. Given the representations of the other Defendants regarding their lack of knowledge of a known address for Defendant Li, it would have been entirely unreasonable for Plaintiffs to believe that the address in the Registration Statement that Defendant Li now points to would be considered an active address.

As stated above, there is no prerequisite of reasonableness in this District to grant alternative means of service and there certainly exists no requirement of omniscience. Defendant Li's position is not only unfounded in the law but would serve to undo the clear rules that govern the authorization of alternative service. It must be rejected. [4]

C.    **The Court Properly Ordered Service Via Email to the Two Hong Kong Corporate Emails**

In the MAS, Plaintiffs also requested to serve Defendant Li by emailing to Tencent Holdings Ltd. ("Tencent") at ir@tencent.com because he serves as a vice president of Tencent. Plaintiffs also requested to serve Defendant Li by emailing KE Holdings Inc. ("KE Holdings") at

---

[4] *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *9 (S.D.N.Y. Aug. 30, 2018) and *Cawthon v. Yaoyage,* 2024 WL 95055, at *1–2 (S.D.N.Y. Jan. 9, 2024) (Motion at 8, 9) and inapposite here because defendants there in both cases had no U.S. counsel or agents. The only means to serve them was via Hague Convention.

ir@ke.com because Defendant Li is a director there. Both companies are publicly listed on the Hong Kong Stock Exchange. The email addresses that Plaintiffs proposed to email are published by the two companies in their public filings for shareholders to contact.

As with serving Defendant Li via his U.S. Counsel, service by emailing the two email addresses does not violate the Hague Convention or any other international agreement; it also comports with due process. MAS at 8-9. In his Motion, Defendant Li does not argue to the contrary. The Court properly ordered such service.

Therefore, as stated in the MAS, service on Defendant Li's U.S. Counsel and service by emailing to the Hong Kong email addresses do not violate the Hague Convention or any other international agreement; it also comports with due process. The Court properly ordered the two alternative methods of service under Rule 4(f)(3).

#### D.      Unavailing Trading Arguments Have No Place in a Motion to Dismiss

Negative causation arguments have already been raised and rejected in this case. *See* Order at 18-20. Indeed, the Court has expressed stated that "proof of loss causation is not an element of a Securities Act claim under Section 11" and that it is "[D]efendants' burden to prove the alleged misrepresentation had no price impact at all" *Id.* In other words, such issues "cannot be resolved on a motion to dismiss." *Id.* at 20. Purposefully ignorant of this ruling, the Motion seeks to backdoor the very same legal arguments through attacks on the Maso Plaintiffs' trading, which, according to the Motion, is disqualifying insofar that the Maso Plaintiffs have failed to allege—drumroll—***loss causation***. Motion at 10-12.

It is undisputed that the Maso Plaintiffs purchased Missfresh ADSs pursuant and traceable to the Offering Documents. It is further undisputed that Missfresh ADSs precipitously declined in value from the date of the Offering through the date the Action was commenced, including by the time the Maso Plaintiffs had sold their shares. *See* ECF No. 5-3, 5-4. Given Section 11's "factual

presumption that any decline in value is ... caused by the misrepresentation in the registration statement[,]" nothing more needed to be alleged. *See Levine v. AtriCure*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007). And further, just like the unavailing arguments made by its predecessor, the Motion offers no evidence to show precisely what else could have cause Company shares to lose near-full value by the time suit was commenced. *See McMahan v. Wherehouse Ent. Inc.*, 65 F.3d 1044, 1048-49 (2d Cir. 1995) ("[D]efendant ... bears the burden of proving that the price decline was not related to the misrepresentations.").

Setting aside the foregoing, the post-disclosure damages methodology common to Section 10(b) claims does not apply here, and regardless of methodology, will "descend into a battle of experts." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012). For example, the text of Section 11's statutory damages formula does not reference dollar for dollar loss, but a decline in "value." 15 U.S.C. § 77k(e). "Value" does not always equate to "price[,]" and the determination thereof an inquiry of fact. *McMahan*, 65 F.3d at 1048–49. "In situations where a change in value is not necessarily represented by a corresponding change in price, a court must shift its focus to something other than price in determining whether a misstatement negatively affected the <u>value</u> of the security." *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 512-13 (S.D.N.Y. 2016).

In this regard, "[c]ourts recognize … that there are times where a stock price at IPO does **not** reflect the **true value** of the security." *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *8-9 (C.D. Cal. June 7, 2018) (emphasis in original). Thus, allegations that a security's value had been "overestimated … because of the alleged material omissions and misrepresentations … is a valid theory of damages." *Id.* at *9; *Virtus*, 195 F. Supp. 3d at 512-13 (pleading security price inflated as a result of misstatement sufficient at pleading stage); *see also, cf.*, *In re Lendingclub Sec. Litig.*,

11

282 F. Supp. 3d 1171, 1181–82 (N.D. Cal. 2017) (discussing "leakage damages model, under which a plaintiff may recover for interim manifestations of later-disclosed fraud.").

If there ever was a set of facts imploring the use of a "value-based" model this would be it. Without a doubt, Missfresh was a sham company from the start—meaning that, quite likely, its shares were grossly overvalued from the start as well. Further, what portion of said overvaluation relates back to the misstatements at issue is certainly not a question for the pleading stage. By mid-2022 the Company had restated its financials and indefinitely shut down the majority of its business. ¶¶80-94. By mid-2023, Defendant Xu purchased the Company's remaining assets for $1.00. The ADSs no longer trade. Moreover, the corporate address listed in the Offering Documents has been proven ***non-existent***. As such, discovery and expert testimony may very well prove that any ascribed "value" to Missfresh ADSs was illusory from the start.

Regardless, the Court has already rejected negative causation at the pleading stage. The Motion's arguments here should be similarly rejected.

### E. Defendant Li Was a Statutory Seller

The Motion's attempts to escape hatch Defendant Li—again, a director who signed the Offering Documents—out of Section 12(a)(2) liability also fails. Section 12(a)(2) creates a private right of action against anyone who "offers or sells a security ... by means of a prospectus or oral communication" that includes a material misstatement or omission. 15 U.S.C. § 77l. Under *Pinter v. Dahl,* the provision governs "statutory sellers" who either (1) directly passed title to the securities, or (2) solicited the purchase of securities out of a desire to (a) serve their own interests or (b) serve the interests of the securities' owner. 486 U.S. 622, 651 (1988).

Here, the Complaint alleges that Defendant Li, "reviewed, edited, approved, and disseminated to investors the Offering Documents and Offerings' roadshow presentations, talking points, and scripts," and "conducted the roadshows along with the Underwriter Defendants to

12

solicit the purchase of Missfresh ADSs in the Offering." ¶31. The Complaint further alleges that Defendant Li, "signed or authorized the signing of the Registration Statement …, prepared and disseminated the Offering Documents and Offerings' roadshow materials, participated in the Offering, and solicited the purchase of Missfresh ADSs to serve their financial interests and those of the Company." ¶32. In sum, "[i]n the absence of [such] efforts to publicize the Offering and solicit ADSs purchasers, the Offering could not have occurred." ¶120. Such allegations are sufficient at the pleading stage.

Defendant Li, signed the Registration Statement, a fact many courts in this District find dispositive in determining whether a Section 12(a)(2) has been sufficiently alleged.[5] However, the Complaint goes farther by alleging Defendant Li "prepar[ed] the defective and inaccurate Prospectus and participat[ed] in efforts to market the Offering to investors[,]" more than enough to "suggest the plausible inference that [he] played an active role in marketing the securities to [investors]." *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 403 (S.D.N.Y. 2013) (first and second alterations in original); *see also In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F.Supp.2d 495, 502 (S.D.N.Y. 2010). With respect to the Offering serving Defendant Li's own interests, or the interests of the owners of Missfresh ADSs, **clearly** the Offering was effectuated for the benefit of those who sold shares in the Offering, and arguably for Defendant Li's own interests in the context of continued employ and salary. *See OSG*, 971 F. Supp. 2d at 403.

Finally, the *Citiline* case is not as expansive as the Motion proports it to be. While the court in *Citiline* determined signing a registration statement alone is insufficient, it merely illustrates a

---

[5] *See, e.g.*, *Briarwood Invs. Inc. v. Care Inv. Tr. Inc.*, 2009 WL 536517, at *4 (S.D.N.Y. Mar. 4, 2009); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 454 (S.D.N.Y. 2005); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001); *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *11 (S.D.N.Y. Nov. 19, 1999).

divide between courts in this District and minority view. *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010). As stated, however, the Complaint alleges far more than that. Further, the Motion's reference to alleged misstatements made by "high ranking corporate officers" on an "investor day" in *Citiline* hides the ball. Motion at 13. The purported misstatements made in the investor conference did not specifically mention nor solicit interest in the Offering but were instead alleged in the context of a parallel Section 10(b) claim. *Id.* at 510.

Accordingly, the Motion's arguments regarding Section 12(a)(2) should be rejected.

**F.     Control Person Claims**

The Motion's arguments regarding Defendant Li's control person status are confusing at best—and effectively a red herring considering the Motion concedes his primary liability under Section 11. Motion at 15-16. To state a "*prima facie* case of [control person] liability," a plaintiff need only show "a primary violation by a controlled person." *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 152 (2d Cir. 2021); *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (same). "[W]hether a person is a 'controlling person' is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 322 (S.D.N.Y. 2021) (alteration in original).

Critically, the Court has already conclusively held that Plaintiffs have stated a primary violation against Missfresh for violations of the Securities Act in connection with the post-Offering restatement. Order at 11-20. Based on this undisputed primary violation, and because, as the Complaint alleges, the Individual Defendants including Defendant Li (a Missfresh director who signed the Registration Statement), "each were control persons of Missfresh by virtue of their positions as directors and/or senior officers and/or major shareholders of the Company," "participated in the preparation and dissemination of the Offering Documents," and "were able to, and did, control the contents of the Offering Documents," the Complaint has adequately stated a

violation of Section 15 against Defendant Li. ¶¶25, 130-31. At bottom, "[b]ecause the Complaint adequately alleges violations of Sections 11 … it also sufficiently pleads the primary liability required to state a claim under Section 15." *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 238 (S.D.N.Y. 2023).

With respect to any purported "culpable participation" requirement, the Motion shamelessly ignores the law in seeking to require that scienter be pled with particularity to state a control person claim under Section 15. Motion at 15-16. This is not a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934, and scienter in no way an element of the claim. It bears repeating: "[f]raud is not an element" here, the Complaint "need allege no more than negligence[.]" *Rombach*, 355 F.3d at 171. "Nor do the heightened pleading standards of the [PSLRA] apply to such non-fraud claims." *NECA-IBEW Goldman Sachs*, 693 F.3d at 157.

Given the foregoing, a longstanding and growing majority of courts in this District have held "[p]laintiffs are not required to allege culpable participation—and accordingly, scienter—as part of their claim pursuant to Section 15." *Abengoa*, 559 F. Supp. 3d at 323 (collecting cases and rejecting argument Section 15 claims should be dismissed for failing to allege scienter); *see also In re Vertiv Holdings Co. Sec. Litig.*, 2023 WL 7689961, at *12 (S.D.N.Y. Nov. 6, 2023) (same); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 773 (S.D.N.Y. 2012) (collecting cases and holding no culpable participation needed for Section 15). Thus, Courts in this Circuit frequently find the act of signing a registration statement, thereby ratifying its contents and personally assenting to its filing, sufficient to state a claim under Section 15. *In re NIO, Inc. Sec. Litig.*, 2021 WL 3566300, at *11-12 (E.D.N.Y. Aug. 12, 2021) (Section 15 claim against Defendant Li adequately pled where he signed the registration statement as a director); *see*

15

*also Stone Fam. Tr. v. Credit Suisse AG*, 2022 WL 954743, at *9 (S.D.N.Y. Mar. 30, 2022) (same and collecting cases). The Motion's argument on Section 15 should be rejected.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion in full.

DATED: April 10, 2024

**LABATON KELLER SUCHAROW LLP**

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III
David J. Schwartz
Charles Wood
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
dschwartz@labaton.com
cwood@labaton.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
Jing Chen
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com
jchen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Fax: (877) 590-0482

Email: brian@schallfirm.com

*Additional Counsel*

17