**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN CHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>MISSFRESH LIMITED, ZHENG XU, JUN WANG, YUAN SUN, ZHAOHUI LI, COLLEEN A. DE VRIES, HANSONG ZHU, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, AMTD GLOBAL MARKETS LIMITED, ICBC INTERNATIONAL SECURITIES LIMITED, NEEDHAM & COMPANY, LLC, CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, ABCI SECURITIES COMPANY LIMITED, GF SECURITIES (HONG KONG) BROKERAGE LIMITED, FUTU INC., TIGER BROKERS (NZ) LIMITED, and COGENCY GLOBAL, INC.,<br><br>   Defendants. | Civil Action No. 1:22-cv-09836-JSR |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................... 3

I.      PROCEDURAL HISTORY................................................................................................. 3

II.     DISCOVERY AND CLASS CERTIFICATION ............................................................... 5

III.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE
        PROPOSED SETTLEMENT ............................................................................................. 6

ARGUMENT.................................................................................................................................. 7

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .................. 7

        A.      Standards for Preliminary Approval of a Proposed Class Action
                Settlement ................................................................................................................ 7

        B.      Rule 23(e)(2)(A): Adequate Representation............................................................. 9

        C.      Rule 23(e)(2)(B): The Settlement is the Product of Good Faith,
                Informed, and Arm's-Length Negotiations by Experienced Counsel .................. 10

        D.      Rule 23(e)(2)(C): The Settlement Provides Significant and Certain
                Benefits ................................................................................................................. 11

                1.      Despite Strong Claims, Many Risks to Recovery Remained ................... 11

                2.      The Effective Process for Distributing Relief to the Settlement
                        Class ........................................................................................................ 16

                3.      The Settlement Does Not Excessively Compensate Co-Lead
                        Counsel .................................................................................................... 17

        E.      Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably
                Relative to One Another ....................................................................................... 17

        F.      The Remaining *Grinnell* Factors Support Preliminary Approval......................... 18

II.     PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS......................... 20

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................... 22

IV.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS .......................... 23

CONCLUSION............................................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ...............................................................................15

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................12, 14, 19, 23

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) ...........................................................................23

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715(S.D.N.Y. May 13, 2011) .........................................................................20

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .........................................................................18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...............................................................................................8, 20

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................................................................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..........................................................................19

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ......................................................................................................8

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................................18, 21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .....................................................................10

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) .........................................................................10

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .....................................................................................18, 21

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)........................................................................15

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ..............................................................................7, 8, 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..................................................................................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................10, 13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................11, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................8, 9, 11

*In re Peabody Energy Corp. Sec. Litig.*,
    No. 1:20-cv-08024-PKC (S.D.N.Y. Feb. 7, 2023) ...................................................17

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ........................................................13

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................12

*In re Sundial Growers Inc. Sec. Litig.*,
    No. 19-cv-08913- ALC (S.D.N.Y. Oct. 6, 2022) ....................................................17

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)....................................................11, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................7, 10, 22

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)......................................................7, 10

**Statutes**

15 U.S.C. § 78u-4(a)(4) ....................................................................................................18, 21

15 U.S.C. §78u-4(a)(7)(A)-(F)................................................................................................22

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................................20

Fed. R. Civ. P. 23(a)(1)........................................................................................................24

Fed. R. Civ. P. 23(b)(3)..................................................................................................20, 24

Fed. R. Civ. P. 23(e) ...............................................................................................4, **7,** 11

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................................7

Fed. R. Civ. P. 23(e)(2)...............................................................................................8, 10, 11

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................................12

Fed. R. Civ. P. 23 (e)(2)(B) ..................................................................................................13

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................14, 18, 21

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................................20

## Other Authority

Samuel Francis, *Meet Two-Face: The Dualistic Rule 10b-5 and the Quandary of Offsetting Losses by Gains,*
77 Fordham L. Rev. 3045, 3047 (2009) ...........................................................................14

## PRELIMINARY STATEMENT

Plaintiffs[1], on behalf of themselves and all other members of the proposed Settlement Class,[2] submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed settlement reached in the above-captioned class action (the "Action"). The Settlement would provide a recovery of $4,903,900 in cash to resolve this securities class action brought against defendants Missfresh Limited ("Missfresh" or the "Company"); Zheng Xu ("Xu"); Cogency Global Inc. ("Cogency"); and Colleen A. De Vries (together with Cogency, the "Cogency Defendants"); and Underwriter Defendants.[3] The terms of the proposed settlement are set forth in the Stipulation, which was entered into by Plaintiffs and Settling Defendants.

Plaintiffs respectfully submit that the Settlement warrants preliminary approval by the Court given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected mediator, represents a favorable recovery that falls well within the range of possible approval, and is likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent. If the Court grants preliminary approval, Plaintiffs will be

---

[1] Plaintiffs refer to Court-appointed Lead Plaintiffs Chelsea Fan ("Fan"), Maso Capital Investments Limited, Blackwell Partners LLC – Series A, and Star V Partners LLC and named plaintiff James Sannito.

[2] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated June 12, 2024 (the "Stipulation"). All capitalized terms used and not otherwise defined in this memorandum of law, which is attached as Exhibit 1 to the Declaration of Phillip Kim ("Kim Decl."), filed herewith.

[3] Underwriter Defendants include J.P. Morgan Securities LLC, Citigroup Global Markets Inc., China International Capital Corporation Hong Kong Securities Limited, China Renaissance Securities (Hong Kong) Limited, Haitong International Securities Company Limited, CMB International Capital Limited, AMTD Global Markets Limited, ICBC International Securities Limited, Needham & Company, LLC, China Merchants Securities (HK) Co., Limited, ABCI Securities Company Limited, GF Securities (Hong Kong) Brokerage Limited, Futu Inc., and Tiger Brokers (NZ) Limited. Missfresh, Xu, the Cogency Defendants, and Underwriter Defendants are the "Settling Defendants."

able to provide notice of the Settlement's terms and conditions to potential Settlement Class Members. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Plaintiffs' Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel, for purposes of the Settlement only; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), Summary Notice, and Postcard Notice attached as Exhibits 1, 2, 3 and 4 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Plaintiffs pursuant to the PSLRA; and (vi) appoint Verita Global, LLC ("Verita" or "Claims

Administrator")[4] which was selected after a competitive bidding process, to administer the Settlement process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PROCEDURAL HISTORY

On July 12, 2022, the Action was commenced in the Eastern District of New York on behalf of Missfresh investors alleging violations of the Securities Act of 1933 ("Securities Act") for alleged material misstatements and omissions in the Offering Documents for Missfresh's June 25, 2021 initial public offering (the "IPO"). ECF No. 1. After the filing of competing lead plaintiff motions, on October 3, 2022, pursuant to the PSLRA, Judge William F. Kuntz, II appointed Chelsea Fan, Maso Capital Investments Limited, Blackwell Partners LLC-Series A, and Star V Partners LLC (together, "Lead Plaintiffs") as Lead Plaintiffs and approved their selection of The Rosen Law Firm, P.A. ("Rosen Law") and Labaton Keller Sucharow LLP f/k/a Labaton Sucharow LLP ("Labaton") as Co-Lead Counsel to represent the proposed class. ECF No. 20. On November 18, 2022, the Action was transferred to this Court. ECF No. 28.

Plaintiffs engaged in a thorough investigation for the purpose of drafting a comprehensive amended complaint, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, Missfresh earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the Defendants both in English and Chinese-language sources; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses. Additionally, Plaintiffs retained

---

[4] Verita is formerly known as KCC Class Action Services, LLC.

private investigators based in China, as well engaged and consulted with experts on accounting and damages and causation issues.

On December 28, 2022, Plaintiffs filed the Amended Class Action Complaint (the "Complaint") asserting claims against Defendants under Sections 11, 12(a)(2), and 15 of the Securities Act. ECF No. 34. The Complaint asserts that in the Offering Documents for the IPO, Defendants materially overstated the sales of products through online platforms and net revenues for the first quarter of 2021, (ii) omitted material weakness in internal control over financial reporting, and (iii) omitted the unsustainability of Missfresh's Distributed Mini Warehouses business. The Complaint alleges that at the time this Action was filed, the price of Missfresh's American depository shares ("ADSs") had fallen 97% from its IPO price.

On January 27, 2023, Defendant Missfresh and the Cogency Defendants filed their motion to dismiss the Complaint ("Motion to Dismiss"), which certain Underwriter Defendants joined. ECF Nos. 42-44, 47. The Motion to Dismiss was fully briefed on February 17, 2023. ECF No. 48-53. On July 14, 2023, a newly-served Underwriter Defendant filed a joinder to the Motion to Dismiss (ECF No. 64), to which Plaintiffs responded on July 18, 2023 (ECF No. 65).

On September 12, 2023, the Court granted in part and denied in part the Motion to Dismiss, upholding Plaintiffs' claims predicated upon the misstated revenue and sales of online products reported in Missfresh's Offering Documents but dismissing all other claims. ECF No. 69. On November 6, 2023, the Court entered its detailed opinion on the Motion to Dismiss. ECF No. 79.

On November 6, 2023, Plaintiffs filed a motion for alternative service of process on the Individual Defendants (ECF Nos. 80-82), which Defendant Missfresh opposed on November 13, 2023 (ECF Nos. 85-86). Also on November 6, 2023, Plaintiffs filed a motion for issuance of the letter of request pursuant to the Convention of 18 March 1970 on the Taking of Evidence Abroad

4

in Civil or Commercial Matters. ECF Nos. 83-84. Defendants did not oppose the motion.

On November 28, 2023, upon notification to the Court of an agreement in principle between Plaintiffs and Defendants Missfresh Xu to settle the claims against all of the defendants in the Action, the Court stayed the Action for 60 days pending filing the motion for preliminary approval of the settlement then being negotiated. However, as stated below, the agreement in principle did not result in a settlement agreement being reached before the stay expired.

Following the Court's approval (ECF No. 95), counsel for Missfresh and the Cogency Defendants withdrew from the Action. Missfresh and the Cogency Defendants each engaged new counsel thereafter. ECF Nos. 100-101. Missfresh's new counsel also appeared for Defendant Xu. ECF No. 97.

On February 21, 2024, Plaintiffs filed their renewed motion requesting to serve the Individual Defendants Zhaohui Li ("Li"), Hansong Zhu, Jun Wang, and Yuan Sun by alternative means. ECF Nos. 103-105. The Court granted this motion on March 5, 2024. ECF No. 119. Plaintiffs served Defendant Li accordingly and filed affidavits of service on March 7, 2024. ECF No. 120-21. On February 27, 2024, the Settling Defendants answered the Complaint. ECF Nos. 112, 114-115, 117. On March 27, 2024, Defendant Li filed a motion to dismiss (ECF Nos. 127-129), which was fully briefed on April 17, 2024. ECF Nos. 132-33.

## II.     DISCOVERY AND CLASS CERTIFICATION

In connection with formal discovery, which commenced in September 2023 when the PSLRA discovery stay was lifted, on September 28, 2023, the Court entered the case management plan with a trial ready date of June 17, 2024. ECF No. 76. On October 26, 2023, Plaintiffs served their initial disclosures and the first set of discovery requests on the Settling Defendants. On February 20, 2024, after the Action was resumed after the Court's November 28, 2023 stay expired, the Court issued a revised case management plan with a trial ready date of September 1, 2024.

ECF No. 102. Thereafter, Parties exchanged their initial disclosures and additional discovery requests. Additionally, the Underwriter Defendants served their responses and objections to Plaintiffs' first set of Requests for Production.

On March 26, 2024, Plaintiffs filed the Motion to Certify Class, Appoint Class Representatives, and Appoint Co-Lead Counsel ("Class Certification Motion"). ECF Nos. 123-126.

### III. NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE PROPOSED SETTLEMENT

In September 2023, counsel for Plaintiffs, Defendant Missfresh, and Defendant Xu agreed to explore a pre-trial resolution of the Action, retaining David Murphy of Phillips ADR to serve as mediator in the Action. Mr. Murphy is a well-respected mediator with substantial experience in securities class actions. In advance of the mediation, the Plaintiffs, Defendant Missfresh, and Defendant Xu exchanged detailed mediation statements that highlighted their respective best facts and arguments, and addressed both liability and damages issues. On October 18, 2023, counsel for Plaintiffs, Defendant Missfresh, and Defendant Xu participated in a full-day mediation session in person before Mr. Murphy. Although substantial progress was made, Plaintiffs, Defendant Missfresh, and Defendant Xu were unable to reach a resolution on that day. Over the course of the following weeks, the parties, with Mr. Murphy's assistance, continued to engage in settlement discussions. On November 20, 2023, Plaintiffs, Defendant Missfresh, and Defendant Xu accepted a Mediator's recommendation and reached an agreement in principle to settle the Action. On November 28, 2023, the parties notified the Court of an agreement in principle and the Court stayed the proceedings for sixty days.

However, while the parties were negotiating the terms of a stipulation of settlement and related papers for the agreement in principle, they reached an impasse in December 2023. Thus,

the parties resumed litigating the Action, Plaintiffs and Settling Defendants continued negotiating a potential settlement with the assistance of the Mediator and reached a new agreement in principle to settle the Action against the Settling Defendants and signed a term sheet regarding such agreement on April 23, 2024. On the same day, the parties informed the Court of the agreement in principle, and, at the parties' request, the Court stayed the Action for fifty days. The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, in return for a cash payment on behalf of the Settling Defendants of $4,903,900 for the benefit of the Settlement Class.

## ARGUMENT

### I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

#### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation. *See Yang v. Focus Media Holding Ltd.,* 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements[.]")[5] This is especially so in securities class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). Rule 23(e) of the Federal Rules of Civil Procedure specifies that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering "the four factors outlined in Rule 23(e)(2) holistically." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *see also* Fed. R. Civ. P. 23(e)(1)(B). Rule

---

[5] All internal quotations and citations are omitted, unless otherwise noted.

23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A)     class representatives and counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

        (i)     the costs, risks, and delay of trial and appeal;

        (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, courts in the Second Circuit may also consider the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), many of which overlap with the Rule 23(e) factors. *See Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement.").[6] The proposed Settlement here readily satisfies all these factors and should be preliminarily approved. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc.*

---

[6] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit*, 495 F.2d at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors that are not duplicative of Rule 23(e)(2) are factors (2), (3), (7), (8) and (9).

*Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

**B.      Rule 23(e)(2)(A): Adequate Representation**

Plaintiffs and Co-Lead Counsel have adequately prosecuted this Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits. As demonstrated in their declarations in support of the Class Certification Motion filed on March 26, 2024, Plaintiffs were active and informed participants in the litigation, regularly communicating with their counsel and reviewing significant pleadings and orders, as well as supervising discovery and settlement efforts. ECF Nos. 126-6, 126-7, 126-8. Faithfully executing their duty, Plaintiffs were engaged in each step of the litigation.

Likewise, Co-Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information in both English and Chinese sources regarding the Company; (ii) engaging an accounting expert and a damages and causation expert; (iii) defeating, in part, the Motion to Dismiss; (iv) commencing in discovery; (v) preparing the Class Certification Motion; (vi) drafting amotion for alternative service; (vii) drafting a motion for the letter of request pursuant to the Hague Evidence Convention; and (viii) engaging in arm's-length negotiations between experienced counsel with the assistance of a well-respected Mediator. The adequacy of Plaintiffs' and Co-Lead Counsel's representation is clearly demonstrated through their persistent and vigorous negotiations with the Settling Defendants over months while diligently prosecuting the Action. Given the likelihood that Missfresh has no assets in the U.S. subject to enforcement and the challenging circumstances where ongoing litigation was depleting the funds available for the Settlement Class to recover their damages, Plaintiffs and Co-Lead Counsel, through their tenacity, secured a favorable settlement which provides a guaranteed, immediate recovery to the

Settlement Class. Accordingly, the Settlement Class has been, and remains, well represented.

###### C.    Rule 23(e)(2)(B): The Settlement is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Moses*, 79 F.4th at 243 (arm's-length negotiations support approval, though they do not give rise to a presumption of fairness); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[M]ediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

The Settlement was achieved thorough arm's-length negotiations, which included a full-day mediation session in October 2023 before Mr. Murphy, followed by continued discussions between counsel, with the assistance of Mr. Murphy, until an agreement in principle was reached in November 2023. *See In re Lyft Inc. Sec. Litig*., 2023 WL 5068504, at *10 (N.D. Cal. Aug. 7, 2023) (approving settlement and noting Mr. Murphy's involvement as a third-party neutral). "[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable." *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). The October 2023 mediation session was preceded by the exchange of detailed mediation statements that addressed liability and damages issues.

Although the November 2023 agreement in principle did not result in a settlement agreement, Plaintiffs and the Settling Defendants continued to discuss possible settlement while the litigation continued. At all times, the discussions were between well-informed and experienced

counsel on both sides.[7] *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]"). Here, Plaintiffs are represented by experienced and skilled firms in securities class litigation. *See* ECF Nos. 5-7 and ECF No. 10-4.

Second, Plaintiffs and Co-Lead Counsel only agreed to settle the claims after a rigorous factual investigation and consultation with experts, and after testing the claims and defenses at issue through a mediation process including the exchange of mediation statements. Plaintiffs and the Settling Defendants engaged Mr. Murphy who oversaw an in-person mediation session as well as months of ongoing settlement negotiations after the initial agreement in principle did not result in a settlement.

Finally, the Settlement was also negotiated with the oversight of Plaintiffs, several of whom are sophisticated institutional investors which recommended that the Settlement be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

### D.    Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits

#### 1.    Despite Strong Claims, Many Risks to Recovery Remained

To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. Although Plaintiffs and Co-Lead Counsel believe the claims to be strong, they acknowledge that Defendants could advance several substantial arguments which could have reduced, or altogether eliminated any recovery for Missfresh investors. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for

---

[7] During the course of the litigation, Defendants' Counsel included Skadden, Arps, Slate, Meagher & Flom LLP, Stinson LLP, Allen Overy Shearman Sterling US LLP f/k/a Shearman & Sterling LLP, and K&L Gates LLP.

plaintiffs to meet." *In re Advanced Battery*, 298 F.R.D 171, 177 (S.D.N.Y. 2014); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that [s]ecurities class actions are generally complex and expensive to prosecute.").

Protracted litigation posed several risks for Missfresh investors. First, although the Court denied, in part, the Motion to Dismiss, Plaintiffs would have faced significant hurdles in connection with ultimately proving falsity and materiality which is necessary for their Securities Act claims. Moreover, Plaintiffs would have to succeed on their pending Class Certification Motion and anticipated summary judgment motions. Indeed, Defendants had not yet submitted their opposition to Plaintiffs' Class Certification Motion.

Second, although discovery was initiated, Plaintiffs faced considerable obstacles if discovery were to continue. Many Defendants and witnesses are located in China which creates significant hurdles to obtain the necessary documents and testimony to prove a case. According to Chinese law, productions of information and data maintained by a company such as Missfresh outside of China must first be reviewed and approved by the necessary Chinese government officials. *See* Kim Decl., ¶2. Not only does this requirement slow down litigation, but it introduces potential risk to protracted litigation. Additionally, China does not permit depositions on the mainland or virtual depositions which would require the cooperation of Defendants and witness to travel out of China for depositions. *Id*. Moreover, documents produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review. *Id*. Therefore, there is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention

and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.,* 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). Thus, the complexity, expense, and likely duration discovery favor approval of the Settlement.

Third, many of the Defendants are located in China. There is a risk that they may not continue to engage in the litigation and thus there would be no real source of recovery for Missfresh investors. Here, Missfresh's original counsel withdrew because the Company was not paying them and was unable to fund a settlement under the initial agreement in principle to settle the Action. Fortunately, new counsel was retained and this Settlement was reached, but not without great risk that Settling Defendants would no longer engage in litigation and delay.

In *Vanderhoef v. China Auto Logistics, Inc., et al.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), after the plaintiffs overcame motions to dismiss, U.S. counsel for China-based defendant CALI and the individual defendants withdrew due to non-payment. Consequently, the plaintiffs had to voluntarily dismiss their claims as the defendant did not retain new counsel and disappeared. Kim Decl., ¶4; Ex. 3. Similarly, in *In re ChinaCast Education Corporation Securities Litigation*, 2:12-cv04621-JFW-PLA (C.D. Cal.), after seven years of litigation, including plaintiffs' successful reversal to the Ninth Circuit on a motion to dismiss decision, plaintiffs recovered nothing from the China-based defendants due to ChinaCast's bankruptcy and its insurers refusal to cover the litigation. *See Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters*, 2:17-cv05523-GW-RAO (C.D. Cal.); *see also* Kim Decl., ¶5.

Moreover, even if Plaintiffs were able to obtain a judgment, enforcing that judgment in China would be close to impossible as Missfresh's assets and the Individual Defendants are all located in China. Given there is no agreement between the United States and China to recognize

13

each other's judgments, the only potential way to enforce a judgment would be through reciprocity. Kim Decl., ¶3; Ex. 4. China's reciprocity system, however, is one of the most restrictive in the world, regularly denying enforcement of foreign judgments. *Id*. As of June 2022, Chinese courts have only recognized and enforced two judgments from the United States. *Id*. Neither of which were judgments from securities lawsuits. *Id*. Furthermore, the fact that Missfresh had only a contractual interest, and no ownership, in its Chinese operations increases the uncertainty of collecting a judgment from those operations. *Id* at ¶6; Ex. 5. Thus, Plaintiffs and their counsel undertook this litigation without a guarantee that the foreign defendants would participate in the litigation and any consideration could be recovered for Missfresh investors. *See In re Advanced Battery,* 298 F.R.D. at 179 ("[S]ettlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account").

Furthermore, even if Plaintiffs overcame the hurdles to establishing liability and recovering funds from Defendants, Plaintiffs would have to convince a jury to accept their damages calculation. Plaintiffs' expert estimated that maximum damages are approximately $285.5 million.[8] However, this "best case" scenario is subject to attack if Defendants were able to disaggregate other confounding factors which may have impacted the ADSs' declines or establish a negative causation defense. In their Motion to Dismiss, Defendants argued that before any alleged misrepresentation was revealed to the market, Missfresh's ADS price had already dropped *96%* from its $13.00 IPO price due to reasons unrelated to this Action—an argument Defendants would claim

---

[8] These damage estimates assume that gains on pre-class period purchases accrued during the class period are removed or "netted." *See* Samuel Francis, *Meet Two-Face: The Dualistic Rule 10b-5 and the Quandary of Offsetting Losses by Gains,* 77 Fordham L. Rev. 3045, 3047 (2009) ("Courts emphasizing the compensation objective have taken a netting approach to damages that offsets gains and losses stemming from different transactions.").

has been strongly bolstered by the fact that only Plaintiffs' allegations regarding the restatement were sustained at motion to dismiss. In continuing to argue that Plaintiffs were not damaged at all by the alleged misstatements leading to the restatement, Defendants would point to the fact that there was no drop in the ADSs price following the restatement. In particular, Defendants would argue that after the restatement was issued the ADSs' price *increased* by 11.5% and continued to increase through the filing of the Action. Plaintiffs' consulting damages expert analyzed Defendants' negative causation arguments and concluded, assuming the factfinder were to accept Defendants' defense, that maximum recoverable Section 11 damages would be approximately $9.6 million. The Settlement thus recovers approximately 51% of these estimated aggregate damages.

The Settlement represents approximately 1.7% of the total maximum potential damages or approximately 51% of maximum recoverable damages after considering Defendants' negative causation arguments. Because "there is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery," *Grinnell*, 495 F.2d at 455 n.2, for the reasons set forth herein, a certain recovery of approximately 2% of the "best case" damages recovery is fair and reasonable in light of the significant risks of continued litigation. *See, e.g., Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (E.D.N.Y. Jan. 4, 2024) (settlement representing approximately 1% of maximum damages approved as reasonable). In fact, over the past five years, the median settlement in securities class actions has hovered around 1.8% of investor losses. Kim Decl., Ex. 2 at 26 (National Economic Research Associates, Inc. Report, Fig. 22).

Furthermore, even if Plaintiffs were to convince a jury on liability and damages, there are considerable risks in ongoing litigation. Missfresh is not financially sound and has lost money

15

since its IPO, eventually causing the Company to shut down its business. In the Company's Form 20-Fs filed with the SEC, Missfresh's revenue and cash/cash equivalents keep declining, and net losses keep increasing. Given these financial impediments, the recovery the Settlement offers is substantial for investors.

### 2. The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶24. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶30. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶39) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to

16

conduct further distributions. If there are unclaimed funds, Plaintiffs request a *cy pres* beneficiary of Consumer Federation of America or another non-sectarian, not-for-profit charitable organization approved by the Court. *Id*. at ¶27.

### 3.     The Settlement Does Not Excessively Compensate Co-Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Co-Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Plaintiffs' Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. In connection with Co-Lead Counsel's Fee and Expense Application, Co-Lead Counsel will seek, on behalf of all Plaintiffs' Counsel, no more than 25% of the Settlement Fund, an amount that is well within, if not below, the percentages that courts in the Second Circuit have approved in class actions with comparable recoveries. *See, e.g.*, *In re Peabody Energy Corp. Sec. Litig.,* No. 1:20-cv-08024-PKC, slip op at 2 (S.D.N.Y. Feb. 7, 2023) (ECF No. 92) (awarding 25% of $4.625 million settlement); *In re Sundial Growers Inc. Sec. Litig.*, No. 19-cv-08913- ALC, slip op. at 2 (S.D.N.Y. Oct. 6, 2022) (ECF No. 117) (awarding 33 1/3% of $7 million settlement). Co-Lead Counsel will also seek payment of Litigation Expenses, including awards to Plaintiffs pursuant to the PSLRA, and the notices will report the maximum amount that will be sought. Co-Lead Counsel is aware of the Court's practice of awarding Litigation Expenses and 50% of awarded fees upon approval and the remaining 50% of fees when the Net Settlement Fund is distributed to eligible Claimants.

### E.     Rule 23(e)(2)(D): Settlement Class Members Are Treated <u>Equitably Relative to One Another</u>

The Settlement does not improperly grant preferential treatment to either Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation

approved by the Court.[9] The proposed plan was created by Plaintiffs' damages expert and is consistent with Plaintiffs' theories of damages under the Securities Act. All Settlement Class Members that were allegedly harmed as a result of the misleading Offering Documents, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").[10]

### F.  The Remaining *Grinnell* Factors Support Preliminary Approval[11]

*Grinnell* **Factor 3 (the stage of the proceedings and the amount of discovery completed):** The fact that the Parties have not completed discovery does not weigh against preliminary approval. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 190 (S.D.N.Y. 2012) ("The

---

[9] Plaintiffs will seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to its participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

[10] Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. Here, on April 22, 2024 the Parties entered into a Settlement Term Sheet and on June 12, 2024, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement"). Stipulation at ¶ 41(a). The Supplemental Agreement sets forth the conditions under which Settling Defendants have the sole option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

[11] The second *Grinnell* factor (the reaction of the class to the settlement) will be addressed in Plaintiffs' reply papers in connection with their motion for final approval, after notice of the Settlement is disseminated, and will address any objections and any additional for exclusion.

threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). As stated above, prior to agreeing to a settlement, Plaintiffs conducted a thorough and informed investigation, engaged in extensive motion practice including briefing on Defendants' motion to dismiss, and participated in many months of arms-length settlement negotiations. Accordingly, Plaintiffs and Co-Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

*Grinnell* **Factor 7 (the ability of the defendants to withstand a greater judgment):** This factor weighs in favor of preliminary approval. Heavily in debt, Missfresh sold all its subsidiaries for a consideration of $1 in September 2023, leaving no recoverable assets to the Settlement Class. Additionally, Missfresh is facing contract disputes and employment lawsuits against the Company in China with an approximately aggregated damage of over RMB 1 billion (approximately US$147 million). As such, even if Plaintiffs prevailed on trial or on appeal if the Settling Defendants appealed, substantial doubt exists that the Settling Defendants would be able to satisfy any judgment larger the Settlement Amount.

*Grinnell* **Factors 8 and 9 (the range of reasonableness of the settlement fund in light of the best possible recovery and to a possible recovery in light of all the attendant risks of litigation):** Courts typically analyze the last two *Grinnell* factors together, "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010).

As discussed above, if liability were established, Plaintiffs' expert has estimated class wide maximum aggregate damages at $285.5 million or $9.6 million considering Defendants' strong

19

negative causation arguments. The Settlement, therefore, represents approximately 1.7% of the total maximum recoverable damages or approximately 51% after considering Defendants' defenses. The recovery is within the range of reasonableness. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (average settlement ranges from 3% to 7% of total estimated losses). In light of these circumstances and all of the delay and uncertainty that would be inherent in continued litigation, the Settlement falls well within the range of possible recovery considered fair, reasonable and adequate.

## II.   PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

In preliminarily approving the proposed Settlement, the Court must consider whether to certify the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). On March 26, 2024, Plaintiffs filed the Class Certification Motion. ECF Nos. 123-126. Although the Court has not had the opportunity to rule on that motion, many of the arguments Plaintiffs asserted there apply to this instant motion. Accordingly, Plaintiffs respectfully refer the Court to the Memorandum of Law in Support of Motion to Certify Class, Appoint Class Representatives, and Appoint Co-Lead Counsel (ECF No. 124) for a more detailed analysis. Here, Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of the Settlement only. The proposed Settlement Class, which has been stipulated to by the Parties, is "all persons and entities who or which purchased or otherwise acquired the publicly traded Missfresh ADSs pursuant and/or traceable to the Offering Documents, and were damaged thereby."[12] Stipulation at ¶1(ll).

---

[12] Excluded from the Settlement Class are: (i) Defendants; (ii) Immediate Families of the Individual Defendants; (ii) any person was an officer, director, or control person of Missfresh, the Underwriter Defendants, or Cogency (at all relevant times, and members of their Immediate

Pursuant to Rule 23(a): (1) the Settlement Class is so numerous that joinder of all members is impracticable (ECF No. 124 at 8-10); (2) there are questions of law or fact common to the Settlement Class (*id*. at 10-11); (3) the claims or defenses of Plaintiffs are typical of the claims or defenses of the Settlement Class (*id*. at 11-13); and (4) Plaintiffs and Co-Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 13-15).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate (ECF No. 124 at 15-20); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims (*id*. at 20-21).

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes. "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *IMAX,* 283 F.R.D. at 186. For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

---

Families); (iii) Missfresh's employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they purchased or acquired Missfresh ADSs through any such plan(s); (iv) any entity in which any Defendant has or had a controlling interest; and (v) the legal representatives, heirs, successors, or assigns of any such excluded person or entity. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a valid request for exclusion that is accepted by the Court. However, any Investment Vehicle (as defined in the Stipulation) will not be excluded from the Settlement Class.

### III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice, Summary Notice, and Postcard Notice attached as Exhibits 1, 3, and 4 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.* 396 F.3d at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a Claim Form; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion). The long form Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per ADS that would be recoverable; (iii) that Co-Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per ADS basis); (iv) the names, telephone numbers, and addresses of Co-Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §77z-1(a)(7)(A)-(F).

The proposed notice program uses the "gold standard" method in securities cases for

22

notifying class members: individual notice by mail, publication in *Investor's Business Daily*, a national newspaper focusing on investors, and dissemination over the internet using a wire service. To the extent email addresses are provided to the Claims Administrator, the Postcard Notice will also be emailed. Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Postcard Notice and Claim Form to all Settlement Class Members who can be identified and located, using information provided by Missfresh's transfer agent, as well as information provided by banks, brokers, and other nominees about their customers who may have eligible purchases. The Notice and Claim Form will be available on the Settlement website and Co-Lead Counsel's website. Courts routinely find these methods of notice sufficient. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2021 WL 345790, at *3-4 (E.D.N.Y. Feb. 1, 2021) (notice included emailed summary notice, mailed postcard notice, disseminating summary notice, and website).

Plaintiffs also request that the Court appoint Verita as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. Verita is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. *See* veritaglobal.com. Verita was chosen after a competitive bidding process.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Plaintiffs respectfully propose the following schedule for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Plaintiffs request

be approximately 100 days from entry of the Preliminary Approval Order in for the notices to be disseminated and to allow recipients of the notices sufficient time to act.

| Event | | Proposed Timing |
|---|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (the "Notice Date") | | *No later than 10 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and expenses | | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | | *Five (5) calendar days before the Settlement Hearing.* |
| Settlement Hearing | | *At the Court's convenience, approximately 100 days from entry of the Preliminary Approval Order.  The hearing can be held either in-person or remotely, in the discretion of the Court.  Any scheduling updates will be posted on the Settlement website and Co-Lead Counsel's website.* |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Verita as Claims Administrator; (iv) set a date and time for the Settlement Hearing to

24

consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

DATED: June 12, 2024 **LABATON KELLER SUCHAROW LLP**

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III
David J. Schwartz
Charles Wood
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
dschwartz@labaton.com
cwood@labaton.com

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim
Laurence M. Rosen
Jing Chen
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
philkim@rosenlegal.com
lrosen@rosenlegal.com
jchen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Proposed Settlement Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Fax: (877) 590-0482
Email: brian@schallfirm.com

*Additional Counsel*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III