# EXHIBIT 5

# Investor Bulletin:  U.S.-Listed Companies Operating Chinese Businesses Through a VIE Structure

**Sept. 20, 2021**

*The SEC's Office of Investor Education and Advocacy, along with the Office of the Chief Accountant and the Division of Corporation Finance, is issuing this Investor Bulletin to educate individual investors about risks associated with investing in certain companies that provide exposure to China-based businesses.*

> **Chair's Statements.**  Review the SEC's Chair's statement on investor protection related to recent developments in China and his *Office Hours primer* on some of the risks discussed in this Investor Bulletin.

Over the past decade, U.S. investors have increased their exposure to businesses based in China or that have most of their operations in China.  In many cases, while their operations are in China, the issuer of the securities that are listed in the United States—the *U.S.-listed company*—is not the company based in or with operations in China. The U.S.-listed company often is a holding company that is formed outside of both the United States and China and may not own stock or other equity in the *China-based company.*

In these cases, the U.S.-listed company has *contractual* arrangements with the *China-based company*.  Even though the U.S.-listed company does not own any equity in the China-based company, the U.S.-listed company purports to exercise power over and obtain economic rights from the China-based company based on the contractual arrangements.  The China-based company often is structured as what's known under U.S. generally accepted accounting principles (GAAP) as a *variable interest entity*, or *VIE*, and the operations and financial position of the China-based company, or *China-based VIE*, are included in consolidated financial statements prepared by the U.S.-listed company.

> **Accounting Treatment.  *As long as the U.S.-listed company has a controlling financial interest as defined by U.S. GAAP in the China-based VIE, the disclosure and financial statements published by the U.S.-listed company will include the financial results of the China-based VIE as a consolidated subsidiary.***  This consolidation presents all entities (those that are VIEs as well as subsidiaries controlled through equity ownership) controlled by the U.S.-listed company as one reporting entity.  VIEs are used in many different business contexts. This Investor Bulletin only discusses the China-based VIE structures that seek investment via U.S.-listed companies, from U.S. investors.

These arrangements are often used because of Chinese governmental restrictions on non-Chinese ownership of companies in certain industries in China, such as

education or telecommunications.  By entering into contracts with the U.S.-listed company that sells shares to U.S. investors, the China-based companies indirectly raise capital from U.S. investors without distributing ownership of the China-based companies to U.S. investors.

A U.S.-listed company and its China-based VIE might appear to be the same company—because they are presented in a consolidated manner—but they are not.  The U.S.-listed company's control over the China-based company is predicated entirely on contracts with the China-based company, not equity ownership.  *If either the China-based company (or its officers, directors, or Chinese equity owners) breach those contracts with the U.S.-listed shell company, or Chinese law changes in a way that affects the enforceability of these arrangements, or those contracts are otherwise not enforceable under Chinese law, U.S. investors may suffer significant losses with little or no recourse available.*

> **SEC Regulation.**   The SEC does not assess or address the merits, or determine the appropriateness for investors, of any investment opportunity.  Instead, the SEC oversees a disclosure-based system designed to give investors information they need to make an informed decision.  For example, the SEC requires U.S.-listed companies to disclose any VIE relationships in their filings.

## How do these contractual arrangements work?

As noted above, the U.S.-listed company has contractual arrangements with the China-based company, rather than owning equity in the entity.  The U.S-listed company often is organized in a jurisdiction other than the United States or China (*e.g.*, the Cayman Islands), which likely will not have the same disclosure, reporting, and governance requirements as the United States.

The contracts are intended to give the U.S.-listed company the economic rights and power to direct the activities of the China-based company—akin to a parent company's control over its subsidiary, but without actual equity ownership.  *If the parties to these contracts do not meet their obligations as intended or there are effects on the enforceability of these arrangements from changes in Chinese law or practice, the U.S.-listed company may lose control over the China-based company, and investments in its securities may suffer significant economic losses.*

The following is a simplified diagram illustrating how a U.S.-listed company with a China-based VIE generally may be structured.  Often, the U.S.-listed company owns a subsidiary in China that was formed to enter into the contractual arrangements with the China-based VIE.  These contracts often include powers of attorney, equity pledge agreements, and exclusive services or business cooperation agreements.  Actual structures may involve multiple companies and persons.

## What are some risks with investing in these structures?

Investors should carefully consider the company's risk factor discussion in its prospectuses and annual reports when evaluating the risks of investing.  In addition to the general risks of an investment in any particular industry or region, there are specific risks to be aware of when considering an investment in a U.S.-listed company with contractual relationships with a China-based VIE structure.  As described above, if the parties to the contracts between the U.S.-listed company and the China-based VIE do not meet their obligations as intended or there are effects on the enforceability of these arrangements from changes in Chinese law or practice, the U.S.-listed company may lose control over the China-based company, and investments in these securities may suffer significant economic losses.

*The Chinese government has never approved these structures.*  Many U.S.-listed companies with contractual arrangements with China-related operating companies use VIE structures to bypass Chinese restrictions on foreign investment.  One significant risk of this structure is that the Chinese government has never expressly acknowledged it as a way to legally navigate the country's investment restrictions.  *The Chinese government thus could determine at any time and without notice that the underlying contractual arrangements on which control of the VIE is based violate Chinese law.*  Any such determination from the Chinese government could result in a significant loss in the value of an investment in a U.S.-listed company that utilizes this VIE structure.  In addition, China's legal system is substantially different from the legal system in the United States.  Should China's legal system explicitly address the enforceability of contracts with these VIE structures, there may be risks and uncertainties concerning the intent, effect, and enforcement of its laws, rules, and regulations on these contracts. This lack of certainty may result in the inconsistent and

unpredictable interpretation and enforcement of laws, rules, and regulations, which may change quickly.

> **Private Education Businesses.** In July 2021, the Chinese government banned for-profit educational tutoring. Included in the ban are guidelines that specifically prohibit foreign investment in educational companies by way of VIE structures.

*A breach of the contractual agreements between the U.S.-listed company and the China-based VIE (or its officers, directors, or Chinese equity owners) will likely be subject to Chinese law and jurisdiction.* All or most of the value of an investment in these companies depends on the enforceability of the contracts between the U.S.-listed company and the China-based VIE. Any breach or dispute under these contracts will likely fall under Chinese jurisdiction and law. For example, many agreements require that disputes be handled before a Chinese arbitration body. This raises questions about whether, and how, a U.S.-listed company or its investors could seek recourse in the event of an adverse ruling as to its contractual rights.

*Investments in the U.S.-listed company may be affected by conflicts of interest and duties between the legal owners of the China-based VIE and the stockholders of the U.S.-listed company.* The individual equity owners of the China-based company may have conflicting interests with the U.S.-listed company's investors. Officers and directors of these two entities may also have differing and conflicting fiduciary duties to act in the best interests of the respective companies because they are separate companies and also because of the differing laws and regulations in the jurisdictions in which the companies are organized. These conflicts of interest and diverging duties may create issues or circumstances that adversely impact the value of the investments in the U.S.-listed company.

## How do I find out whether a U.S.-listed company uses this type of structure?

Investors can determine whether a U.S.-listed company with significant Chinese operations uses this structure by reviewing the company's annual reports and other SEC filings, which are publicly available through the SEC's EDGAR database. If the company is listed on the New York Stock Exchange or NASDAQ, then it is required to file annual reports with the SEC. Investors can search for these annual reports by searching under the company's name and looking for either 20-F filings or 10-K filings.

The company may also have previously filed a registration statement on Form F-1 (or, in some cases, on Form S-1 or Form S-3) and a prospectus. These filings are made when a company is directly offering and selling securities to the public, such as in an initial public offering. Registration statements can be found by looking for F-1 or F-1/A filings (or S-1, S-1/A, S-3 or S-3/A filings) and for prospectuses by looking for 424B[#] filings in the EDGAR database.

In each annual report or registration statement, the company will include a Risk Factors section. A U.S.-listed company using this type of contractual structure with China-based VIEs may include several risk factors that are specific to its corporate structure in the context of doing business abroad. Some of these specific risk factors may discuss the risks inherent in a corporate structure of this type by referring to contractual arrangements, variable interest entity or VIE, or affiliated entities. These filings may also include a Corporate Structure section or something similar that details the China-based VIEs in the U.S.-listed company's corporate

structure, including a discussion of the contractual arrangements between the two entities.

The company's consolidated financial statements generally include a footnote that will detail how the company determines which entities should be consolidated for purposes of preparing and presenting the financial statements.  As a result, there may be a discussion of variable interest entities or VIEs in this footnote.

***Investors should always review a company's most recent annual report, registration statement, or prospectus before making a decision to invest. Disclosures in prior annual reports, registration statements, or prospectuses may no longer be up-to-date and the structure, contractual arrangements, and their enforceability may have changed.***

## Additional Information

See Chair Gensler's Statement on Investor Protection Related to Recent Developments in China dated July 30, 2021.

Learn more with Chair Gensler's Office Hours: The SEC, China and Offshore Companies.

For more information on the risks of investing in companies that are based in emerging markets, including China, see the Public Statement: Emerging Market Investments Entail Significant Disclosure, Financial Reporting and Other Risks; Remedies are Limited.

For more information on the risks associated with China-based issuers and related disclosure considerations, see the Division of Corporation Finance's Disclosure Considerations for China-Based Issuers – CF Disclosure Guidance: Topic No. 10.

For information on how to search for company documents, such as Forms F-1 and 20-F, in the SEC's EDGAR database, see Using EDGAR to Research Investments.

For more information on international investments broadly, see International Investing.

For additional investor educational information, see the SEC's website for individual investors, Investor.gov.

Call OIEA at 1-800-732-0330, ask a question using this online form, or email us at Help@SEC.gov.

Receive Investor Alerts and Bulletins from OIEA email or RSS feed.  Follow OIEA on Twitter.  Like OIEA on Facebook.

This bulletin represents the views of the staff of the Office of Investor Education and Advocacy.  It is not a rule, regulation, or statement of the Securities and Exchange Commission (the "Commission").  The Commission has neither approved nor disapproved its content.  This bulletin, like all staff statements, has no legal force or effect: it does not alter or amend applicable law, and it creates no new or additional obligations for any person.

*Modified: April 19, 2024*