**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUAN CHEN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

MISSFRESH LIMITED, ZHENG XU, JUN WANG, YUAN SUN, ZHAOHUI LI, COLLEEN A. DE VRIES, HANSONG ZHU, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, AMTD GLOBAL MARKETS LIMITED, ICBC INTERNATIONAL SECURITIES LIMITED, NEEDHAM & COMPANY, LLC, CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, ABCI SECURITIES COMPANY LIMITED, GF SECURITIES (HONG KONG) BROKERAGE LIMITED, FUTU INC., TIGER BROKERS (NZ) LIMITED, and COGENCY GLOBAL, INC.,

Defendants.

Civil Action No. 1:22-cv-09836-JSR

**MEMORANDUM OF LAW IN SUPPORT OF**
**CO-LEAD COUNSEL'S MOTION FOR AN**
**AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ....................................................................................................3

I. THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD ....................................................3

A. The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method ....................................................4

B. Fees Awarded in Comparable Cases Within this District ....................................5

C. The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method ....................................................................6

II. THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS ....................................................9

A. Co-Lead Counsel's Time and Labor ....................................................10

B. The Magnitude and Complexity of the Action Support the Requested Fee ..........10

C. The Risks of the Litigation Support the Requested Fee ....................................11

D. The Quality of Counsel's Representation Supports the Requested Fee ................13

E. The Requested Fee in Relation to the Settlement ....................................16

F. Public Policy Considerations Support the Requested Fee ....................................16

III. THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE REQUESTED FEE ....................................................16

IV. CO-LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................17

V. PLAINTIFFS SHOULD BE AWARDED THEIR REQUESTED REIMBURSEMENT UNDER 15 U.S.C. §77z-1 ....................................................19

CONCLUSION ....................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
*aff'd*, 272 F. App'x. 9 (2d Cir. 2008)....................15

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)....................3

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................7, 8

*In re BRF S.A. Sec. Litig.*,
No. 1:18-CV-02213-PKC, 2020 WL 10618214 (S.D.N.Y. Oct. 23, 2020)....................6, 20

*In re Bristol-Myers Squibb Sec. Litig.*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005)....................6, 7

*In re China Sunergy Sec. Litig.*,
No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)....................17

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
954 F. Supp. 2d 276 (S.D.N.Y. 2013)....................6

*City of Providence v. Aeropostale Inc.*,
No. 11-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*,
*Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015)....................4, 10, 11

*City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
No. 20-cv-02031, 2021 WL 2736135 (S.D.N.Y. June 30, 2021)....................20

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)....................8

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)....................8, 11, 16

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018)....................6

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................8, 13, 16

*Fogarazzo v. Lehman Bros. Inc.*,
No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ....................................5

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................................11

*Goldberger v. Integrated Res, Inc.*,
209 F.3d 43 (2d Cir. 2000)..................................................................................................4, 9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014).....................................5

*Hicks v. Morgan Stanley, et al.*,
No 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..........................................3, 16

*Lea v. Tal Educ. Grp.*,
No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................15

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997).....................................................................................................7

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................................16

*In re Marsh & McLennan Inc. Sec. Litig.*,
No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................8

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010).....................................................................................................4

*Missouri v. Jenkins*,
491 U.S. 274 (1989)................................................................................................................7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x. 760 (2d Cir. 2020) ..........................................................................................15

*Pearlstein v. Blackberry Ltd.*,
No. 13 Civ. 7060, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) .............................................9

*In re PPDAI Grp. Inc. Sec. Litig.*,
No. 18 cv 6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)..................................................15

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999)................................................................................................4, 5

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16 cv 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................10, 11

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................5, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................3

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)....................15

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)....................15, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)....................4, 6, 8

**Docketed Cases**

*Ark. Tchr. Ret. Sys. v. Bankrate*,
No. 13-cv-7183, slip op. (S.D.N.Y Nov. 25, 2014)....................6, 8

*In re Celestica Inc. Sec. Litig.*,
No. 07-cv-00312-GBD, slip op. (S.D.N.Y. July 28, 2015)....................6

*In re Mindbody Inc. Sec. Litig.*,
No. 1:19-cv-08331-VEC, slip op. (S.D.N.Y Oct. 27, 2022)....................5

*In re NQ Mobile Inc. Sec. Litig.*,
No. 1:13-cv-07608, slip op. (S.D.N.Y. Mar. 11, 2016)....................5

*In re Peabody Energy Corp. Sec. Litig.*,
No. 1:20-cv-08024-PKC, slip op (S.D.N.Y. Feb. 7, 2023)....................5

*The Penn. Ave. Funds v. INYX Inc.*,
No. 08-CV 6857-(PKC), slip op. (S.D.N.Y. May 4, 2012)....................5

*In re Salomon Analyst Metromedia Litig.*,
No 02-7966, slip op. (S.D.N.Y. Feb. 27, 2009)....................6

*In re Silvercorp Metals, Inc. Sec. Litig.*,
No. 12-cv-9456 (JSR), slip. op. (S.D.N.Y. Feb. 13, 2015)....................6, 20

*Stein v. Eagle Bancorp, Inc., et al.*,
Case No. 1:19-cv-06873-LGS, slip op. (S.D.N.Y. Feb 10, 2022)....................20

*In re Sundial Growers Inc. Sec. Litig.*,
No. 19-cv-08913-ALC, slip op. (S.D.N.Y. Oct. 6, 2022)....................5

**Statutes**

15 U.S.C. §77z-1 ....................19

**Rules**

Fed. R. Civ. P. 23(h) ....................1

Fed R. Civ P. 54 ....................1

**Other Authorities**

Samuel Francis, *Meet Two-Face: The Dualistic Rule 10b-5 and the Quandary of Offsetting Losses by Gains,* 77 Fordham L. Rev. 3045 (2009) ....................14

Court-appointed Co-Lead Counsel, Labaton Keller Sucharow LLP ("Labaton") and The Rosen Law Firm, P.A. ("Rosen Law"), respectfully submit this memorandum of law, on behalf of all Plaintiffs' Counsel, in support of their motion for an award of attorneys' fees in the amount of 25% of the Settlement Fund pursuant to Fed. R. Civ. P. 23(h) and 54.[1] Co-Lead Counsel also seek payment of $103,236.02 in Litigation Expenses that Co-Lead Counsel reasonably incurred in prosecuting the Action, as well as $17,500 in reimbursement to Plaintiffs directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[2]

**PRELIMINARY STATEMENT**

The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for a $4,903,900 cash payment pursuant to the terms of the Stipulation. The Settlement brings to a close, with a favorable and certain result, complex international litigation that included extensive motion practice and robust arm's-length negotiations between counsel. The Settlement will provide compensation to the Settlement Class, while avoiding the delay and significant risks of continued litigation.

The benefits of the Settlement are clear when weighed against the risk that the Settlement

---

[1] Unless otherwise indicated, capitalized terms have the meanings given to them in the Stipulation and Agreement of Settlement, dated June 12, 2024. *See* ECF No. 139. Plaintiffs' Counsel are Labaton, Rosen Law, and The Schall Law Firm. Lead Plaintiff Chelsea Fan retained Rosen Law and The Schall Law Firm to jointly represent her in this Action. Additionally, named plaintiff James Sannito is represented by The Schall Law Firm with the assistance of Rosen Law.

[2] Co-Lead Counsel are simultaneously filing herewith the Joint Declaration of Alfred L. Fatale III and Phillip Kim in Support of (i) Final Approval of Class Action Settlement and Plan of Allocation and (ii) an Award of Attorneys' Fees and Payment of Expenses (the "Joint Declaration") (cited below as "¶").

All exhibits referenced below are attached to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

Class might recover less (or nothing) if litigation continued. Defendants had substantial defenses to liability. Plaintiffs would have faced significant hurdles in connection with ultimately proving material falsity and the arguments advanced or likely to be advanced by Defendants at summary judgment, and trial. Even if Plaintiffs succeeded in establishing liability, Defendants would likely have appealed, which would have further delayed and threatened any recovery. This is in addition to the considerable discovery obstacles Plaintiffs would have continued to encounter, given that many Defendants and witnesses are located in China, and collectability risks. The Settlement eliminates these risks while providing a certain and favorable recovery to the Settlement Class.

In the face of these challenges—as well as the fully contingent nature of the case—Co-Lead Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel. Among the other work detailed in the Joint Declaration, Co-Lead Counsel: (i) conducted a comprehensive investigation involving, among other things, a review of publicly available information from both English and Chinese sources regarding Defendant Missfresh Limited ("Missfresh" or the "Company"); (ii) engaged an accounting expert and a damages and causation expert; (iii) prepared and filed an initial complaint and amended complaint; (iv) opposed Defendants' motions to dismiss, which the Court granted in part and denied in part; (v) conducted discovery, including drafting and serving discovery requests; (vi) retained an investigator in China; (vii) prepared and filed a motion for certification of the class; (viii) prepared and filed a motion for alternative service on the Individual Defendants and renewed such motion; (ix) prepared and filed a motion for issuance of a letter of request pursuant to the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Evidence Convention") to be served on PricewaterhouseCoopers Zhong

Tian LLP in China; and (x) engaged in an extensive arm's-length mediation process with the assistance of a well-respected mediator, David Murphy of Phillips ADR ("Mediator"), which was preceded by the exchange of detailed written mediation statements. *See generally* Joint Decl. at §§ III-V.

Against this backdrop, Co-Lead Counsel request a fee of 25% of the Settlement Fund, which would represent a negative lodestar "multiplier" of approximately 0.9, *i.e.*, 90% of Co-Lead Counsel's lodestar, payment of Litigation Expenses incurred by Co-Lead Counsel in the amount of $103,236.02, and reimbursement of $17,500 to Plaintiffs for the time and resources they dedicated to representing the class. As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class action settlements of this size, and the fee and expense requests are well supported by both case law and the facts of this case.

For the following reasons, Co-Lead Counsel respectfully submit that their efforts and the results achieved in the Action justify the requested fees and expenses.

## ARGUMENT

### I. THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement" of the securities laws and are 'a necessary supplement to [SEC] action"'). Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, *et al.*, No 01-cv-10071,

2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—25% of the Settlement Fund (*i.e.*, $1,225,975, plus accrued interest) is well supported under either the "percentage" or "lodestar" method.

### A. The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method

Co-Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained. Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale Inc.*, No. 11-7132, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014) *aff'd*, *Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also*, *Goldberger,* 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460

(2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[3]

**B. Fees Awarded in Comparable Cases Within this District**

The 25% fee requested by Co-Lead Counsel is well within the range of percentage fees awarded within the Second Circuit in securities class actions of a similar size. *See*, *e.g., In re Peabody Energy Corp. Sec. Litig.,* No. 1:20-cv-08024-PKC, slip op at 2 (S.D.N.Y. Feb. 7, 2023) (awarding 25% of $4.625 million settlement) (Ex. 10);[4] *In re Sundial Growers Inc. Sec. Litig*., No. 19-cv-08913-ALC, slip op. at 2 (S.D.N.Y. Oct. 6, 2022) (awarding 33 1/3% of $7 million settlement) (Ex. 10); *In re Mindbody Inc. Sec. Litig.*, No. 1:19-cv-08331-VEC, slip op. at 2 (S.D.N.Y Oct. 27, 2022) (awarding 30% of $9.75 million settlement) (Ex. 10); *The Penn. Ave. Funds v. INYX Inc.,* No. 08-CV 6857-(PKC), slip op. at 5 (S.D.N.Y. May 4, 2012) (awarding 33 1/3% of $1.1 million settlement) (Ex. 10); *In re Hi-Crush Partners L.P. Sec. Litig.,* No. 12-CIV-8557 CM, 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (awarding 33 1/3% of $3.8 million settlement and noting that "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund"); *Fogarazzo v. Lehman Bros. Inc*., No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); and *In re NQ Mobile Inc. Sec. Litig*., No. 1:13-cv-07608, slip op. at 1 (S.D.N.Y. Mar. 11, 2016) (awarding 30% of $5.1 million settlement) (Ex. 10).

---

[3] All internal quotations and citations are omitted unless otherwise stated.

[4] All unreported slip opinions are submitted in a compendium of cases, which is Exhibit 10 to the Joint Declaration.

Awards of 25% or more are also regularly awarded in cases with larger settlements. *See, e.g., In re BRF S.A. Sec. Litig*., No. 1:18-CV-02213-PKC, 2020 WL 10618214, at *1 (S.D.N.Y. Oct. 23, 2020) (awarding 25% of $40 million settlement); *In re Facebook, Inc. IPO Sec. & Derivative Litig*., 343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018) (awarding 25% of $35 million settlement); *In re Salomon Analyst Metromedia Litig*., No 02-7966, slip op. at 1 (S.D.N.Y. Feb. 27, 2009) (27% fee of $35 million settlement) (Ex. 10); *In re Celestica Inc. Sec. Litig*., No. 07-cv-00312-GBD, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% fee of $30 million settlement) (Ex. 10); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp*., 954 F. Supp. 2d 276 (S.D.N.Y. 2013) (Rakoff, J.) (awarding 25% of $19.5 million settlement); *Arkansas Tchr. Ret. Sys. and Fresno Cnty Emps.' Ret. Assoc. v. Bankrate, Inc*., No. 12-cv-7183 (JSR), slip op. at 2 (S.D.N.Y. Nov. 25, 2014) (Rakoff, J.) (awarding 25% of $18 million settlement) (Ex. 10); *In re Silvercorp Metals, Inc. Sec. Litig*., No. 12-cv-9456 (JSR), slip. op. at 9 (S.D.N.Y. Feb. 13, 2015) (Rakoff, J.) (awarding 25% of $14 million settlement) (Ex. 10).

Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2014-2023, the median attorneys' fee award for settlements of between $5 million and $10 million was 30%, and for settlements below $5 million, the median attorneys' fee award was 33%. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA 2023), Ex. 5 at 29.

### C. The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal–Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically,

courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Co-Lead Counsel spent more than 1,700 hours of attorney and other professional staff time on the case from inception through August 31, 2024. *See* Ex. 6-A and Ex. 7-A. Co-Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $1,343,386.00. *Id*. This lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of comparable skill, experience, and reputation.[5] *Luciano v. Olsten Corp*., 109 F.3d 111, 115 (2d Cir. 1997). Co-Lead Counsel's rates here range from $900 to $1,275 for partners, $850 to $925 for of counsels, $500 to $650 for associates. *See* ¶93; Ex. 6-A; Ex. 7-A. "[P]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Telik*, 576 F. Supp.2d at 589. Sample defense firm rates in 2023, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. ¶93; Ex. 9.

The requested fee of 25% of the Settlement Fund, *i.e.,* $1,225,975, therefore represents a negative multiplier of 0.9 (90%) of the total lodestar of Co-Lead Counsel. A 0.9 "multiplier" is slightly below the parameters used throughout district courts in the Second Circuit and is additional evidence that the requested fee is reasonable. *See*, *e.g*., *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig*., 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with a negative multiplier and noting that the negative multiplier was a "strong indication of the

[5] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

reasonableness of the [requested] fee"); *In re Marsh & McLennan Inc. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) (reasoning that where the multiplier is negative, the lodestar cross-check "unquestionably supports the requested percentage fee award.").

Fees representing multiples above a lodestar are frequently awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]"). Within the Second Circuit, lodestar multiples greater than 1.5 are regularly awarded. *See, e.g., Walmart Stores Inc. v. Visa USA Inc.*, 396 F. 3d 96, 123 (2d Cir. 2005) (upholding a multiplier of 3.5 as reasonable on appeal); *Ark. Tchr. Ret. Sys. v. Bankrate*, No. 13-cv-7183, slip op. at 2 (S.D.N.Y Nov. 25, 2014) (Ex. 10) (awarding 1.8 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2).

Here, Co-Lead Counsel carefully and efficiently staffed the Action from the beginning, and litigated the case with a targeted team. For instance, an attorney proficient in both Chinese and English, with law degrees from both China and the U.S., was assigned to the Action to ensure the quality of the investigation in support of the pleadings against the China-based Defendants and to address discovery matters involving Chinese regulations. *See* ¶90.

Additional work will be required of Co-Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms. However, Co-Lead Counsel will not seek payment for this additional work. *See Pearlstein v. Blackberry Ltd.*, No. 13 Civ. 7060, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (noting the lodestar multiplier would be lowered even further due to counsel's "significant additional tasks relating to the settlement" after final approval).

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

* * *

In sum, Co-Lead Counsel's requested fee award is well within the range of what courts regularly award in comparable class actions, whether calculated as a percentage of the fund or in relation to Co-Lead Counsel's lodestar.

## II. THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Co-Lead Counsel's requested fee would be reasonable.

**A. <u>Co-Lead Counsel's Time and Labor</u>**

The time and effort expended by Co-Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Joint Declaration, Co-Lead Counsel, among other things: (i) conducted a comprehensive investigation involving, among other things, a review of publicly available information from both English and Chinese sources regarding the Company; (ii) engaged an accounting expert and a damages and causation expert; (iii) prepared and filed an initial complaint and amended complaint; (iv) opposed Defendants' motions to dismiss, which the Court granted in part and denied in part; (v) conducted discovery, including drafting and serving discovery requests; (vi) retained an investigator in China; (vii) prepared and filed a motion for certification of the class; (viii) prepared and filed a motion for alternative service on the Individual Defendants and renewed such motion; (ix) prepared and filed a motion for issuance of a letter of request pursuant to the Hague Evidence Convention; and (x) engaged in an extensive arm's-length mediation process with the assistance of the well-respected Mediator, which was preceded by the exchange of detailed written mediation statements. *See generally* Joint Decl. at §§ III–V.

As noted above and discussed further in the Joint Declaration, Co-Lead Counsel expended more than 1,700 hours prosecuting the Action with a lodestar value of $1,343,386.00. *See* Ex. 6-A; Ex. 7-A; and Ex. 8. At all times, Co-Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

**B. <u>The Magnitude and Complexity of the Action Support the Requested Fee</u>**

The magnitude and complexity of the Action also support the fee request. Courts regularly recognize that securities class action litigation is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re Signet Jewelers Ltd. Sec. Litig.,*

No. 16 cv 06728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("securities class actions are generally complex and expensive to prosecute").

As detailed in the Joint Declaration, this Action raised difficult questions concerning—among other things—whether Missfresh's accounting restatement revealed that the Offering Documents were materially false. In particular, while the Offering Documents overstated the Company's revenue, the net effect of the revenue overstatement and the understatement of costs and expenses resulted in no change to the Company's bottom-line profit, which Defendants have and would continue to argue rendered the alleged accounting misstatement immaterial to investors. Also, many of the Defendants and witnesses in the Action are located in China, creating significant hurdles to obtaining the necessary documents and testimony to prove liability. Prosecuting the class's claims required skill and perseverance, including the marshalling of extensive evidence in China. Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable. *See In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (magnitude and complexity supported fee where "counsel faced the additional challenges that many documents needed translation, that evidence, witnesses and depositions were overseas…"); *see also City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### C. The Risks of the Litigation Support the Requested Fee

The risks associated with this contingency fee case also support the requested fee. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5; *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee.").

Although the Court denied, in part, the motions to dismiss, Plaintiffs would have faced significant hurdles in connection with summary judgment challenges and ultimately proving material falsity and overcoming Defendants' negative causation defense. This is in addition to the substantial burdens of class certification, and prevailing at trial, as well as in likely appeals – a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, in recent years, securities class actions that survive pleading-stage motions to dismiss have faced increasing risk of failure at class certification, Daubert motions, summary judgment, trial, and appeals.

Furthermore, as set forth in detail in the Joint Declaration (*see* Section VII.A.), as well as in the memorandum of law in support of Plaintiffs' motion for final approval of the Settlement, Plaintiffs faced considerable obstacles if discovery were to continue. Many Defendants and witnesses are located in China, and, according to Chinese law, productions of information and data maintained by a company such as Missfresh outside of China must first be reviewed and approved by the necessary Chinese government officials. Additionally, China does not permit depositions on the mainland or virtual depositions. Moreover, documents produced will likely be in Chinese, which would require translation or the retention of bilingual attorneys to facilitate document review. All of this would have made it extremely difficult and costly for Plaintiffs to obtain the necessary evidence to prove their case and, even if they could do so, it would take years for any recovery to reach Settlement Class Members. ¶70. This risk was particularly acute in this case where there was a very real possibility that the Defendants located in China, including Missfresh, would not continue to engage in the litigation. Missfresh's original counsel withdrew because the Company was not paying them, and the Company determined it was unable to fund a settlement under the initial agreement in principle to settle the Action.

Fortunately, new counsel was retained, and this Settlement was reached, but not without great uncertainty. Had a voluntary settlement not been reached and Plaintiffs were able to obtain a judgment, enforcing that judgment in China would be close to impossible as Missfresh and the Individual Defendants are all located in China[6] and there is no agreement between the United States and China to recognize each other's judgments. ¶73.

In the face of many uncertainties, Co-Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation would require the devotion of substantial time and expense with no guarantee of compensation. ¶¶99-100. Co-Lead Counsel's assumption of this contingency fee risk strongly supports the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

**D. <u>The Quality of Counsel's Representation Supports the Requested Fee</u>**

The quality of the representation by Co-Lead Counsel is another important factor that supports the reasonableness of the requested fee. Co-Lead Counsel are nationally recognized leaders in the field of securities class action litigation and have substantial experience litigating and trying securities class actions in courts throughout the country. ¶¶95-97; Ex. 6-C and 7-C. The attorneys who were principally responsible for prosecuting this case relied upon their skill to develop and implement sophisticated strategies to overcome myriad obstacles raised by Defendants throughout the litigation.

---

[6] Missfresh sold all its operations for consideration of $1 in September 2023, leaving no recoverable assets from Missfresh, globally, for the Settlement Class. In February 2024, Missfresh ADSs were delisted from the NASDAQ exchange. As of now, Missfresh ADSs have no value. ¶73 fn 7.

The quality of Co-Lead Counsel's representation is also evidenced by the progress of the litigation and the result achieved. The result is less than what Plaintiffs hoped for at the start of the litigation, but favorable when viewed in light of the serious challenges of continued litigation and obstacles to a larger recovery given Defendants' strong negative causation defense to damages and collectability concerns. ¶¶74-78.

Plaintiffs' consulting damages expert has estimated that maximum damages in the case are approximately $285.5 million.[7] However, this "best case" scenario would have been vigorously challenged by the Defendants, who were likely to argue that confounding factors needed to be "disaggregated" from the ADSs' price declines and who could have sought to establish a negative causation defense. In continuing to argue that Plaintiffs were not damaged *at all* by the alleged misstatements leading to the restatement, the Defendants would point to the fact that there was no drop in the ADSs price following the restatement. In particular, Defendants would argue that after the restatement was issued, the ADSs' price increased by 11.5% and continued to increase through the filing of the Action. Plaintiffs' consulting damages expert analyzed Defendants' negative causation arguments and concluded, assuming the factfinder were to accept Defendants' defense, that maximum recoverable Section 11 damages would be approximately $9.6 million. The Settlement thus recovers approximately 51% of these estimated aggregate damages. *Id*.

---

[7] These damage estimates assume that gains on pre-class period purchases accrued during the class period are removed or "netted" in connection with a recovery at trial. *See* Samuel Francis, *Meet Two-Face: The Dualistic Rule 10b-5 and the Quandary of Offsetting Losses by Gains,* 77 Fordham L. Rev. 3045, 3047 (2009) ("Courts emphasizing the compensation objective have taken a netting approach to damages that offsets gains and losses stemming from different transactions.").

Since the passage of the PSLRA, courts have regularly approved settlements that recover similar percentages of damages. *See, e.g., Lea v. Tal Educ. Grp.,* No. 18-CV-5480 (KHP), 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving $7.5 million settlement representing 5.3% of maximum estimated damages); *In re PPDAI Grp. Inc. Sec. Litig.,* No. 18 cv 6716, 2022 WL 198491, at *12 (E.D.N.Y. Jan. 21, 2022) (approving $9 million settlement representing 6.4% of aggregate damages and noting that the amount is within a reasonable range); *In re Patriot Nat'l, Inc. Sec. Litig*., 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P*., No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions").

The quality of Co-Lead Counsel's representation is further demonstrated by the fact that the Settlement was obtained after opposing an aggressive defense by highly skilled attorneys representing the Defendants. ¶98. Courts recognize that the strength of plaintiffs' counsel's opposition should be considered in assessing its performance. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) (among factors supporting 30% fee award was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

**E. <u>The Requested Fee in Relation to the Settlement</u>**

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in Section I, *supra*, the requested fee is well within the range of percentage fees that this Court and other courts have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

**F. <u>Public Policy Considerations Support the Requested Fee</u>**

A strong public policy favors compensating firms for bringing meritorious securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). This factor supports Co-Lead Counsel's fee and expense application.

## III. THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE REQUESTED FEE

The reaction of the Settlement Class to date also supports the fee request. Through September 4, 2024, 10,163 copies of the Postcard Notice or Notice Packet have been mailed or emailed to potential Settlement Class Members and nominees informing them that, among other things, Co-Lead Counsel intended to apply to the Court for an award of attorneys' fees in an

amount not to exceed 25% of the Settlement Fund and up to $200,000 in Litigation Expenses. *See* Declaration of Lance Cavallo Regarding: (A) Provision of Postcard Notice and Notice Packet; (B) Publication of Summary Notice; (C) Establishment of Telephone Hotline and Settlement Website; and (D) Report on Requests for Exclusion Received to Date (the "Mailing Declaration" or "Mailing Decl."), dated September 4, 2024, Ex. 4 at ¶¶2-9 and Ex. A & B thereto. While the time to object to the Fee and Expense Application does not expire until September 19, 2024, to date no objections have been received. Co-Lead Counsel will address any that are submitted in their reply papers, which will be filed on or before October 3, 2024.

Additionally, the requested fee of 25% is made with the full support of Plaintiffs. *See* Declaration of Manoj Jain, submitted on behalf of Lead Plaintiffs Maso Capital Investments Limited, Blackwell Partners LLC – Series A, and Star V Partners LLC ("Maso Plaintiffs"), Ex. 1 at ¶¶1, 5; Declaration of Lead Plaintiff Chelsea Fan, Ex. 2 at ¶¶1, 5; and Declaration of Plaintiff James Sannito, Ex. 3 at ¶¶1, 5. Plaintiffs' endorsement of the fee supports its approval. *See* *Veeco*, 2007 WL 4115808, at *8 ("Public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request[.]").

## IV. CO-LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Co-Lead Counsel's fee application includes a request for payment of Co-Lead Counsel's Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. *See* *In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

In total, Co-Lead Counsel incurred $103,236.02 in Litigation Expenses. *See* Ex. 6-B; Ex. 7-B. This amount is below the $200,000 cap that the Postcard Notice informed potential Settlement Class Members that counsel may apply for, and which—to date—there has been no objection to. The amount of Litigation Expenses is consistent with the stage of the litigation. Co-Lead Counsel have incurred expenses related to, among other things, expert fees, private international investigators, court and service fees, translation services, and mediation fees.

The largest expense relates to the fees assessed to Plaintiffs in connection with the mediation process and the retention of Mr. Murphy. Of the total amount of expenses, $49,600, or approximately 48% of the total, relates to these costs. ¶112.

Another significant expense relates to the retention of Plaintiffs' experts and consultants. These fees total $30,840, or approximately 30% of total expenses. ¶111. Principally, Plaintiffs retained a damages expert who contributed to the prosecution of the Action by analyzing damages and causation issues in connection with Plaintiffs' class certification motion, the Parties' settlement discussions, and developing the proposed Plan of Allocation. Co-Lead Counsel also retained an accounting expert to analyze Missfresh's alleged accounting misstatements, and hired an investigator based in China to locate certain of the Individual Defendants' work and residential addresses. *Id*.

The cost of providing notice of the pendency of the Action pursuant to the PSLRA, 15 U.S.C. § 77z–1 (a)(3)(A)(i)), totals $12,419.91, or approximately 12% of the total amount of expenses. ¶113.

Translation costs total $2,055.67, or approximately 2% of the total amount of expenses. These expenses were paid to translation agencies for: (i) translating complaints and summonses for purpose of serving them on Individual Defendants based in China; and (ii) translating the

letter of request pursuant to the Hague Evidence Convention served on PricewaterhouseCoopers Zhong Tian LLP in China. ¶114.

The remainder of the expenses sought are the types that are necessarily incurred in complex litigation and routinely paid by clients in non-contingent cases. It is respectfully submitted that the expenses are properly recoverable by counsel.

## V. PLAINTIFFS SHOULD BE AWARDED THEIR REQUESTED REIMBURSEMENT UNDER 15 U.S.C. §77z-1

Co-Lead Counsel also seek reimbursement of $17,500 in the aggregate on behalf of Plaintiffs, directly related to their representation of the class. *See* Ex. 1 at ¶¶3, 6-7; Ex. 2 at ¶¶3, 6; Ex. 3 at ¶¶3, 6. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of the class." 15 U.S.C.A. § 77z-1. Here, as described more fully in the Plaintiffs' respective declarations (*see* Exs. 1-3), each has been committed to pursuing the class's claims—and has taken an active role in so doing. Among other things, they: (i) regularly communicated with counsel regarding the progress of the Action; (ii) gathered and reviewed their trading; (iii) completed certifications and declarations in support of case filings; (iv) received and reviewed material court filings, in both draft and final form, including the Complaint, the briefing for defendants' motions to dismiss the Complaint, and the motion to certify the class; (v) assisted with responding to discovery requests; and (vi) were involved throughout the settlement process. Ex. 1 at ¶3; Ex. 2 at ¶3; Ex. 3 at ¶3. These efforts required Plaintiffs to dedicate time and resources to the Action that they would have otherwise devoted to their regular responsibilities.

The Maso Plaintiffs seek $10,000 in connection with the time their representative dedicated to the litigation. *See* Ex. 1 at ¶¶3, 6-7. Ms. Fan seeks $5,000 in connection with the

time she dedicated to the litigation. *See* Ex. 2 at ¶¶3, 6. Mr. Sannito seeks $2,500 in connection with the time he dedicated to the litigation. *See* Ex. 3 at ¶¶3, 6.

Courts within this District have approved payments to compensate representative plaintiffs under similar circumstances. *See, e.g., In re BRF S.A. Sec. Litig.,* 2020 WL 10618214, at *2 (awarding lead plaintiff $2,889.15 for time spent directly related to its representation of the class); *Stein v. Eagle Bancorp, Inc., et al.,* Case No. 1:19-cv-06873-LGS, slip op. at 3 (S.D.N.Y. Feb 10, 2022) (awarding individual lead plaintiff $7,500) (Ex. 10); *City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent., Inc.,* No. 20-cv-02031, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.40 to lead plaintiff pension fund); *In re Silvercorp Metals Inc. Sec. Litig.,* No. 12-cv-09456-JSR, slip op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding two individual lead plaintiffs $12,500 each) (Ex. 10).

## CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court award them attorneys' fees in the amount of 25% of the Settlement Fund, which includes accrued interest; $103,236.02 in Litigation Expenses incurred by Co-Lead Counsel, plus accrued interest; and $17,500 in reimbursement to Plaintiffs pursuant to the PSLRA. A proposed order will be submitted with Co-Lead Counsel's reply papers, after the deadline for objecting has passed.

DATED: September 5, 2024

**LABATON KELLER SUCHAROW LLP**

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III
David J. Schwartz
Charles Wood
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com

dschwartz@labaton.com
cwood@labaton.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
Jing Chen
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
philkim@rosenlegal.com
lrosen@rosenlegal.com
jchen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Proposed Settlement Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Fax: (877) 590-0482
Email: brian@schallfirm.com

*Additional Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III